ORIGINAL

CARLSMITH BALL LLP
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Intervenor
Inchcape Shipping Services Guam LLC

**FILED**
DISTRICT COURT OF GUAM
JUL 18 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARWAN SHIPPING & TRADING CO., FIVE SEAS SHIPPING CO., LLC, and S.J. GARGRAVE SYNDICATE 2724, *in personam*,<br><br>Defendants. | CIVIL CASE NO. 06-00011<br><br>**MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; EXHIBIT A** |

## MOTION TO INTERVENE

Inchcape Shipping Services Guam LLC ("Inchcape") moves to intervene as a Plaintiff in this action. Inchcape raises this Motion under Federal Rule of Civil Procedure 24, and supports the Motion with the attached Memorandum, and the pleadings and files in this case. While Rule 24(c) requires that a pleading accompany a motion to intervene, because Inchcape has briefed the basis for its intervention with sufficient specificity in the attached Memorandum, it does not attach a proposed pleading.[1]

---

[1] The Ninth Circuit approves intervention motions without a pleading where the court is otherwise apprised of the grounds of an intervention motion. *See Beckman Indus., Inc. v. Int'l. Ins. Co.*, 966 F.2d 470, 474-75 (9th Cir. 1992).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. SUMMARY OF GROUNDS OF INTERVENTION

If Inchcape is allowed to intervene in this case, it will present the following grounds and prayer for relief:

1.(a). Inchcape has been unlawfully appointed as Defendant Five Seas Shipping Co., LLC's ("Five Seas") agent for service of process in the United States without Inchcape's approval and written consent. Inchcape seeks a finding from the Court that it is not Five Seas' agent for service of process.

1.(b). Inchcape seeks a finding from the Court that its agency status is limited to a shipping agent responsible only for ordinary and routine port charges such as harbor entry fee, pilotage, wharfage fees, and like charges.

2.(a). Inchcape has incurred damages by way of attorneys fees, costs, and otherwise in opposing the unauthorized appointment as Five Seas' agent for service of process in the United States. Inchcape seeks recovery of these damages.

2.(b). Inchcape has incurred damages by way of attorneys fees, costs and otherwise in answering claims for damages which should have been entertained and paid by Five Seas and/or Defendant Marwan Shipping & Trading ("Marwan"). Inchcape seeks recovery of these damages.

2.(c). Inchcape has been exposed to potential liability in excess of $500,000 as a result of Five Seas' unlawful naming of Inchcape as its agent for service of process in the United States. Inchcape seeks indemnity from Five Seas to cover this contingent liability.

3. The AJMAN 2's owner secured insurance which should cover property damage of approximately $500,000, damages the Port Authority of Guam ("Port") is demanding that

Inchcape pay on the grounds that it is liable for such damages on an agency basis. Inchcape seeks leave of Court to intervene and by way of discovery, prove the existence of such insurance.

4. Information discovered by Inchcape will expose liability issues in this case and promote the conservation of judicial resources by allowing the discovered information to be similarly applied in and perhaps ward off imminent litigation by the Port against Inchcape to recover approximately $500,000 in property damages.

## II. INTRODUCTORY STATEMENT

In August 2004 the foreign flagged vessel AJMAN 2 was navigating near Guam on its way to another destination. The vessel was not scheduled to make a port call at Guam. However, threatened by an approaching typhoon, the vessel requested permission to enter the Port of Guam, a United States port. Authorities initially denied the request, but later reconsidered and approved, though not without conditions. Two key conditions were (1) that the vessel owner provide a Certificate of Financial Responsibility ("COFR") to respond to any threats to the environment (such as an oil spill), and (2) that the vessel appoint an agent for service of process in the United States. The two conditions are intertwined in that satisfying (1) required satisfying (2). To satisfy (2), Five Seas prepared and submitted paperwork to certain United States officials naming Inchcape as its agent for service of process in the United States. Though the applicable law required Five Seas to obtain Inchcape's acceptance and consent in writing to the appointment, Five Seas failed to do so, and Inchcape never accepted or consented.

In this case, the Government relied on Five Seas' so-called agency documents in serving Inchcape with the complaint and summons on behalf of Five Seas. The improper and unlawful appointment by Five Seas has been, and will continue to be, to Inchcape's direct detriment for a

number of reasons.

First, Inchcape has already incurred substantial attorneys fees and costs it ought to recover as damages from Five Seas. This is true not only with regard to the present action, but also with regard to several events pre-dating it.

Second, the Port has already alleged that Inchcape is liable for certain six-figure damages the AJMAN 2 caused to the Port's facilities on grounds that Inchcape is the vessel's agent, and thus responsible for such damages. Five Seas' unlawful appointment of Inchcape markedly undermines Inchcape's defenses to the Port's claim and, even worse, makes the Port's claim seem more plausible.

Third, with regard to the damage the AJMAN 2 caused to Port facilities, the vessel's owning and/or operating interests have denied having insurance to cover such damages, thus causing the Port to look to Inchcape for recovery of its damages. Inchcape expects that discovery in this action will prove the existence of such insurance thus reducing or eliminating altogether any liability Inchcape may have to the Port.

Ongoing claims and subsequent litigation regarding the Port's claims against Inchcape clearly share common issues of fact with the present case. Inchcape seeks to intervene to obtain a finding that Five Seas' agency documents are false, to recover as damages attorneys fees and costs expended to contest the agency documents and otherwise, and to prevent any opportunistic third parties from capitalizing on the documents to impose further unauthorized responsibilities upon Inchcape.

Moreover, as noted above, Inchcape has a direct interest in the discovery proceedings of this case. Inchcape will participate in discovery to prove that the agency documents are false,

that AJMAN 2 did indeed have insurance to pay for the damage the vessel caused to Port facilities, and that such coverage can be utilized to satisfy any potential liability against Inchcape as alleged by the Port. Such discovery will provide Inchcape with the information it needs to avoid liability to the Port.

The foregoing summary and following analysis demonstrate that Inchcape possesses the necessary interests to intervene in this case. Furthermore, no other party already involved in this case can adequately represent Inchcape's interests. Accordingly, Inchcape should be allowed to intervene.

### III. FACTUAL BACKGROUND

#### A. SUMMARY OF ALLEGATIONS OF THE PRESENT CASE

On April 19, 2006, the United States of America filed this lawsuit against Defendants Marwan, Five Seas, and S.J. Gargrave Syndicate 2724 ("Gargrave"). The Complaint's underlying factual basis revolves around the grounding of the AJMAN 2 on or around August and September, 2004. *See* Compl., ¶ 20. The Government claims that the AJMAN 2 posed a substantial threat of pollution to the navigable waters of the United States, and in order to alleviate the substantial threat of pollution, the Government incurred removal costs and damages within the meaning of the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et seq. See* Compl., ¶¶ 21, 23. The Government claims that both Marwan and Five Seas owned, operated, managed, chartered and controlled the AJMAN 2. *See* Compl., ¶¶ 5-17. Finally, the Government alleges it incurred costs and damages in excess of $829,051. *See* Compl., ¶ 24.

#### B. THE SCOPE OF INCHCAPE'S AGENCY

Inchcape acknowledges that it agreed to act as Five Seas' ***shipping agent*** for the particular Guam port call of the AJMAN 2 -- this is self-evident in that without such an agent,

the AJMAN 2 would have been denied entry into the Port of Guam. Such an agency is, however, by design of very limited duration and scope. For example, the typical shipping agent would be responsible only for ordinary and routine port charges incurred by the vessel while in port such as port entry fees, tug and pilotage, port wharfage, and like charges routinely incurred by a ship while in port. However, Inchcape denies that it consented to act as *a general agent or agent for service of process* for Five Seas. Rather obviously, the scope of responsibility of such an agent is substantially broader and imposes much greater risk than that which is imposed on a shipping agent.

For example, the Port has alleged that Inchcape, as Five Seas' general agent, is liable for all losses and damages attributable to the AJMAN 2, not only routine port charges. The Port measures such losses by hundreds of thousands of dollars. Also, the Government served process on Inchcape, relying on Five Seas' COFR. Ex. A. The COFR, which lists Inchcape as Five Seas' agent for service of process in the United States, is filled out and signed by Geoffrey Woodcock, apparently acting on behalf of Five Seas. Ex. A. Inchcape had no role in filling out the COFR and never consented to being Five Seas' agent for service of process, or for any purpose other than shipping agent. Though always denying the agency status stated in the COFR, Inchcape faced a difficult decision: if it had refused to accept service and transmit the summons and complaint to Five Seas it could face allegations by Five Seas. On the other hand, by accepting service and transmitting the papers, Inchcape may have undermined its defenses against the Port's claims which are based on Inchcape being the vessel's agent for liability far beyond routine port charges.

C. THE PORT AUTHORITY OF GUAM'S CLAIM AGAINST INCHCAPE

The Port has demanded $500,000 from Inchcape to pay for damage the AJMAN 2 caused

to Port facilities in August 2004. The Guam Attorney General, the Port's legal counsel, has informed Inchcape that, absent voluntary payment, the Port will sue Inchcape to recover such damages on grounds that Inchcape consented to act as the vessel's agent to answer for such damages. Inchcape seeks to intervene and participate in this lawsuit in order to obtain a ruling that it is not Five Seas' agent for any purpose other than for ordinary and routine port charges. At the least, Inchcape will seek a decision that it is not Five Seas' agent for service of process in the United States in that an agent for service of process could be looked upon as a general agent.

Furthermore, Inchcape has incurred substantial attorneys fees and related costs as a result of Five Seas' conduct, both before and since the Government's reliance on the COFR containing false representations regarding the scope of Inchcape's agency. Inchcape seeks to recover such attorneys fees and costs as damages proximately caused by Five Seas.

In addition to the above, Inchcape has yet another direct interest in the discovery proceedings and outcome of this case. As an intervening Plaintiff, Inchcape will seek to prove that Navigators, a London-based insurance organization, covered the AJMAN 2 for the sort of property damage being alleged by the Port. Navigators has repeatedly denied this. Inchcape will allege and seek to prove that the COFR, issued by Environmental Protection Group LLC and underwritten by Gargrave, a fact also alleged in the Government's Complaint, *see* Compl., ¶ 20, *was conditioned on the existence of such property coverage.* Documentation submitted in conjunction with the application for the COFR displays Navigators as such an insurer for the AJMAN 2. If this is true, Inchcape stands to benefit directly. Also, no other party to the action has an interest in proving this to be true. If discovery demonstrates that Navigators did *not* provide such coverage for the AJMAN 2, discovery may show that the AJMAN 2's owners

misrepresented such coverage which in turn lends credence and is relevant to Inchcape's contentions that Five Seas misrepresented that Inchcape was Five Seas' agent for purposes other than simple shipping agent. Furthermore, Inchcape will be able to utilize the discovered information to defend itself against the Port's half-million dollar claim. In particular, Inchcape can utilize findings by the Court to prove in that it is not Five Seas' agent for any purpose other than a shipping agent, and that some form of insurance coverage exists to answer to the Port's claims.

## IV. LEGAL DISCUSSION

Federal Rule of Civil Procedure 24 allows a nonparty to intervene either as a matter of right or upon the discretion of the Court (also known as "permissive intervention"). Fed. R. Civ. P. 24(a)(b). In either event, Rule 24 receives a liberal construction in favor of applications for intervention. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).[2] As will be discussed, Inchcape qualifies as an intervenor under both tests.

### A. INCHCAPE MAY INTERVENE AS A MATTER OF RIGHT

Rule 24(a) permits a nonparty to intervene

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a). Intervention of right involves a four part test: (1) a timely application; (2) the applicant has a significantly protective interest relating to the property or transaction involved in the pending lawsuit; (3) disposition of the lawsuit may adversely affect applicant's

---

[2] In evaluating the motion to intervene, the district court must accept as true nonconclusory allegations of the motion and proposed pleading. *Lake Investors Dev. Group, Inc. v. Egidi Dev. Group.*, 715 F.2d 1256, 1258 (7th Cir. 1983).

interest unless intervention is allowed; (4) the existing parties do not adequately represent the would-be intervenor's interests. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

1. <u>Inchcape has filed in a timely manner.</u>

Inchcape has timely submitted this application. The parties have not engaged in discovery and the Court has not entertained any substantive motions. This case currently stands at the earliest possible stage, and no party will suffer prejudice as a result of Inchcape's intervention at this stage.

2. <u>Inchcape Has a Significantly Protective Interest, and the Disposition of this Case Will Affect Inchcape's Interests.</u>

Inchcape has significant protective interests relating to its alleged role as Five Seas' agent for purposes other than shipping agent for routine port charges, and the disposition of this case will definitely impact and affect Inchcape's interests. "Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established." *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1493 (9th Cir. 1995). The "threshold inquiry" allows courts to dispose of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process. *Fresno County v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (organization of small group of farmers allowed to intervene in a case in which Department of Interior was a party but would not fully protect its interests).

Inchcape's interests are multiple, and will affect Inchcape not only in the present action with regard to its damages so far incurred, but likewise with regard to the ongoing dispute and imminent litigation with the Port. First, as noted above, the Port has demanded from Inchcape something on the order of $500,000 as damages caused by the AJMAN 2. It is clear the Port will

sue to recover this money because Inchcape has no intention of paying it, and has so informed the Port. The gravaman of the Port's claim is that Inchcape's agency is not limited to being a shipping agent. To substantially bolster this position, the Port will undoubtedly use the same agency documents in which Five Seas supposedly appoints Inchcape to serve as agent for service of process - a status far more encompassing than simple shipping agent. Already the federal government has, properly or not, utilized this alleged agency status to serve process on Inchcape. Inchcape seeks a finding from the Court on this issue in order prevent the Port and other third parties from capitalizing greatly on the unauthorized agency documents. Simply put, Five Seas has unlawfully caused Inchcape to be a much larger and easier target for claims and other bad things than it ought to be.

Second, if the Court makes a finding that Five Seas falsely represented that Inchcape was its agent for service of process, Inchcape will have been the victim of Five Seas' false representations, having suffered damages through attorneys fees and otherwise to contest the improper agency documents. Inchcape has an interest in recovering its attorneys fees and related costs, which the Court can award in the current litigation.

Third, an issue that is relevant to this case and to Inchcape's defense to the Port's claim is whether Inchcape, the vessel, or its insurer, is liable for paying damages. In the case of the Port's half-million dollar claim, Inchcape has an interest in proving that Five Seas had insurance coverage through Navigators (or otherwise), because such proof will significantly alleviate Inchcape's now real exposure to the Port. What's more, Inchcape's protective interests exist even in the absence of coverage by Navigators because it will lend credence to Inchcape's claims that Five Seas simply made up the agency documents to self-serve its own ends. Furthermore,

Inchcape's pursuit of this angle benefits the current litigation because, if indeed Five Seas had coverage with Navigators or otherwise, the scope of such coverage may be that it is answerable to the Government's claims in this action. In short, the insurance waters are at best now murky and Inchcape intends to clear them up.

There are two final important notes to consider with respect to Inchcape's interests in the current litigation and the subsequent litigation. First, it is quite proper for a court to consider the effect of current litigation on future litigation.

> A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.

*See* 66 F.3d at 1496 n.8. Judicial economy would therefore be served by resolving the issues of scope of agency and insurance coverages, both of which are relevant to this action and which will be raised again in pending and later litigation. Furthermore, if the Court makes a determination as to the agency and insurance issues, the parties will be bound by the doctrine of stare decisis. *See Greene v. United States*, 996 F.2d 973, 977 (9th Cir. 1993) ("Intervention may be required when considerations of *stare decisis* indicate that an applicant's interest will be practically impaired.").

Second, Inchcape need not have an interest as a full party to the litigation in order to intervene. A "nonparty seeking to intervene need not intervene as a full party to the litigation, but may intervene for a limited purpose." *LG Electronics Inc. v. Q-lity Computer Inc.*, 211 F.R.D. 360, 364 (N.D. Cal. 2002) (nonparty entitled to intervene as of right for limited purpose of opposing patentee's motion to amend its infringement contentions to include nonparty's

computer products); *Beckman Indus.*, 966 F.2d at 472 (approving intervention of nonparty who sought only to modify a protective order). Inchcape has no current interest insofar as the Government's claim against Five Seas is concerned. Even so, with its stated interests, Inchcape may properly intervene to utilize the present litigation to advance and protect its interests.

### 3. No Other Party Can Protect Inchcape's Interests.

No other party in this case can adequately represent Inchcape's interests. The burden of showing inadequacy of representation is not a heavy one. A minimal showing is all that is required. *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983); 6 F.3d at 1498.

> In determining adequacy of representation, we consider whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect.

6 F.3d at 1498-99.

It is self-evident that Five Seas cannot adequately represent Inchcape's interests because it is directly adverse to Inchcape on both the agency and insurance issues. Marwan is for all practical purposes in the same boat. Inchcape has no relationship to the Government or Gargrave which will compel any of those parties to represent Inchcape's interests against Five Seas (and perhaps Marwan), in pursuing Inchcape's damages in the form of attorneys fees and related costs, or in pursuing the insurance coverage issue to the extent necessary so that Inchcape can protect and further develop its defense to the Port's claim.

### B. PERMISSIVE INTERVENTION

As an alternative to intervention of right, Inchcape contends that it also meets the test for permissive intervention. Under the standards of permissive intervention, the Court may permit

Inchcape to intervene upon a showing that Inchcape's claims and the main action have a question of law or fact in common. Fed. R. Civ. P. 24(b). Courts liberally construe the existence of a common question of law or fact. *Bureeerong v. Uvawas*, 167 F.R.D. 83, 85 (C.D. Cal. 1996). The Court shall also consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b).

There are at least the following common questions of law and fact in this case:

1. Was Five Seas properly served with process through Inchcape? Inchcape contends no, but the Government contends yes. If Inchcape is correct and even if proper service has been waived by Five Seas, the outstanding agency documents substantially prejudice Inchcape's status as shipping agent only, as well as calling into question Five Seas' motives.

2. Did the AJMAN 2 have coverage to pay for damage to Port of Guam property? Inchcape contends yes, and that discovery will reveal such coverage in fact, which will directly benefit Inchcape in fighting the Port's claim. It may also benefit other parties to this litigation is a less direct way. Five Seas (and its alleged insurer) have repeatedly contended that no such coverage existed in August 2004. Inchcape's pursuit of these issues "will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

3. If the agency documents submitted by Five Seas are indeed false, what is Inchcape's true agent status? Is the COFR implicated?

Moreover, the intervention will of course not delay or prejudice the adjudication of the rights of the original parties. Indeed, the Government has suggested that the Court continue the

Rule 16 Conference until after the Court decides this motion to intervene, thereby giving all parties equal and simultaneous input for the Rule 16 Scheduling Order. Because Inchcape seeks to intervene at this very early stage of the proceedings, there will be no delay in the proceedings, and none of the parties will suffer prejudice by the intervention. To the contrary, judicial economy will be served if the intervention is permitted.

## V. <u>CONCLUSION</u>

Inchcape seeks to intervene for the reasons stated above. Inchcape's interests in these matters are protective, and no other party can adequately represent those interests. Therefore, Inchcape respectfully requests that the Court grant its motion to intervene.

DATED: Hagåtña, Guam, July 18, 2006.

CARLSMITH BALL LLP

*/s/ Elyze McDonald/*

DAVID P. LEDGER
ELYZE J. MCDONALD
Attorneys for Intervenor
Inchcape Shipping Services Guam LLC

| DEPARTMENT OF TRANSPORTATION<br>U.S. COAST GUARD<br>CG-5585<br>APPLICATION FOR VESSEL CERTIFICATE OF<br>FINANCIAL RESPONSIBILITY (WATER POLLUTION) | GENERAL<br>(PART 1 OF 4 PARTS) |
|---|---|
| 1. (a) Legal name of applicant (name of responsible operator of all vessels listed in Part II):<br><br>**FIVE SEAS SHIPPING CO. LLC** | INSTRUCTIONS<br><br>Please type or print and submit this application to Director, Coast Guard National Pollution Funds Center (cv), 4200 Wilson Boulevard, Suite 1000, Arlington, VA 22203-1804. The application is in four parts: Part I-General; Part II-Evidence of Financial Responsibility; Part III-Declaration; Part IV-Concurrence of Agent. Applicants must answer all applicable questions. If a question does not apply, answer "not applicable." Incomplete applications will be returned. If additional space is required, supplemental sheets may be attached. All information must be provided in the English language. |
| (b) English equivalent of legal name if customarily written in language other than English: | THIS SPACE FOR USE BY USCG ONLY |
| (c) Trade name, if any | |
| 2. Is this the first time the above-named applicant is submitting application Form CG-5585?<br><br>YES ✓     NO<br><br>If NO, what Coast Guard control number was assigned to the first application Form CG-5585? | |

3. State applicant's legal form of organization, i.e., whether operating as an individual, corporation, partnership, association, joint stock company, business trust, or other organized group of persons (whether incorporated or not) or as a receiver, trustee, or other liquidating agent and briefly describe current business activities and length of time engaged therein.

**LIMITED LIABILITY**

| (a) If a corporation, association, or other organization, indicate: | |
|---|---|
| State in the United States, or foreign country, in which incorporated or organized:<br><br>**UNITED ARAB EMIRATES** | Date of incorporation or organization:<br><br>**07/17/2000** |
| (b) If a partnership, provide name and address of each partner. | |

4. Name and address of applicant's United States agent or other person authorized by applicant to accept service of process and receipt of notices of designations and presentations of claims in the United States (collectively referred to as "service of process"). (See Part IV) (U.S. applicants may appoint themselves as agent, eliminating the need to complete Part IV.)

~~EPG, LLC~~
~~36 MILL PLAIN ROAD~~
~~SUITE 410   DANBURY CT 06811~~

INCHCAPE SHIPPING SERVICES
GUAM LLC.
SUITE 116 P.A.G. BLDG, 106 CABRAS
HIGHWAY, PITI,
GUAM 96915

P.I.C. MR DION CADIZ
PHONE - 1-671-687 2621

PREVIOUS EDITION IS OBSOLETE

1

**EXHIBIT "A"**

(30 min. per respondent)
Approved OMB No. 2118-0545

USCG-NPFC (VSSL CERT) 04 AUG 2 [?] 11:07

## EVIDENCE OF FINANCIAL RESPONSIBILITY (PART II OF 4 PARTS)

5. List all vessels which require Certificates of Financial Responsibility under 33 CFR 138.12. In column (f) indicate the number "1" if the operator is also the registered owner. Indicate "2" in column (f) if the operator is not the registered owner.

| NAME OF VESSEL (a) | TYPE OF VESSEL (See note below) (b) | COUNTRY OF REGISTRY (c) | US VESSELS: Documentation Number FOREIGN VESSELS: International Maritime Orgainzation (IMO) Number or Country of Registration Number if no IMO number has been assigned. (d) | GROSS TONS (e) | "1" OR "2" (f) |
|---|---|---|---|---|---|
| M.V. AJMAN 2 EX LORETO | RoRo | KOREA | IMO-7501302 | 6461 | 2 |

NOTE: Please designate the type of vessel by using a number from one of the following categories:

**CARGO VESSELS, SELF-PROPELLED**

Breakbulk freighter 10
Containership* 11
Roll on-roll off 12
Barge carrier (e.g., lash, seabee) 13
Combination breakbulk containership* 14
Combination roll on-roll off containership* 15
Combination barge carrier containership* 16
Tanker 17
Dry bulk carrier 18
All other self-propelled cargo vessels 19
Oil/bulk/ore carrier (OBO) 20

**PASSENGER VESSELS**

Passenger vessel** 30
Combination passenger/cargo vessel** 31
Ferry** 32

**RECREATIONAL VESSELS**

All types of pleasure craft 40

**UTILITY CRAFT**

Tank barge 50
Tug and towboat 51
Barge and scow 52
Drilling rig 53
Fishing vessel 54
Factory vessel 55
Research vessel 56
All other utility craft*** 57

**MISCELLANEOUS**

Vessels not otherwise specified 60

* Containership categories should be assigned only to vessels having fixed container cells or regularly carrying multi-tier container deckloads.
** Passenger categories should be assigned only to vessels carrying more than 12 passengers for hire.
*** Includes floating cranes, dredges, docs, etc.

5. (g) If applicant indicated "2" for any vessel listed above-in column 5(f), please indicate:

| NAME OF VESSEL | OWNER | OWNER'S MAILING ADDRESS |
|---|---|---|
| M.V. AJMAN 2 | MARWAN SHIPPING & TRADING FREE ZONE, AJMAN U.A.E. | KHANSAHEB BUILDING FLAT 1-F CORNICHE STREET OLD IRANIAN MARKET SHARJAH UAE (P.O. BOX 2499) |

## PART II (CONT'D)

**6.** Items 7 through 11 are methods of establishing financial responsibility. Check the appropriate box(es) below and answer only the item(s) which are applicable to this application:

| Insurance<br>(Answer item 7) | Surety Bond<br>(Answer item 8) | Financial Guaranty<br>(Answer item 9) ✓ | Self-Insurance<br>(Answer item 10) | Other Services<br>(Answer item 11) |
|---|---|---|---|---|

**7.** Name and address of applicant's insurance guarantor (evidence of insurance acceptable to the Director, Coast Guard National Pollution Funds Center on Insurance Guaranty Form CG-5586 or Master Insurance Guaranty Form CG-5586-1, must be filed before a Certificate will be issued):

**8.** Total amount of surety bond guaranty.

$ 5,000,000

Name and address of applicant's surety bond guarantor (*Surety Bond Guaranty Form CG-5586-2 must be filed before a Certificate will be issued*):

**9.** Name and address of applicant's financial guarantor (*Financial Guaranty Form CG-5585-3, or Master Financial Guaranty Form CG-5586-4 and all required financial data must be filed before a Certificate will be issued*):

EPG, LLC
36 MILL PLAIN ROAD
SUITE 410
DANBURY
CT 06811

203-730 8833
(GAIL REED).

Financial Guarantor's fiscal year.

AUGUST 1ST  to  JULY 31ST
(Month) (Day)        (Month) (Day)

USCG-NPFC (VSEL. CERT.)
04 AUG 25 AM 11:07

**10.** If applicant intends to qualify as a self-insurer attach all required financial data and indicate fiscal year.

_____ to _____
(Month) (Day)        (Month) (Day)

**11.** If applicant intends to qualify through other evidence, supply all information required by 33 CFR 138.80(b)(5).

## DECLARATION (PART III OF 4 PARTS)

| | |
|---|---|
| 12. Applicant's mailing address (street, number, post office box, city, state or country. Indicate ZIP code if in the United States):<br><br>KHANSAHEB BUILDING<br>(P.O. BOX 20499)<br>FLAT 1 F<br>CORNICHE STREET<br>OLD IRANIAN MARKET<br>SHARJAH  UAE | 14. Type or print in this space the name and title of the official who is signing the application:<br><br>GEOFFREY WOODCOCK |
| | 15. Address of principal office in the United States (if any): |
| 13. Telefax number and/or telex number and answerback:<br><br>00-971-6-7471708 | 16. Telephone no. (area code and number):<br><br>00-971-6-7471707 |

I declare that I have examined this application, including any accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete. Furthermore, the applicant named in item 1(a) of Part 1 above is the responsible operator of all vessels now listed in or later added to this application. I agree that in the event the agent designated in item 4 of Part 1 above, or that agent's replacement as may be designated later with the approval of the Director, Coast Guard National Pollution Funds Center, cannot be served due to death, disability, unavailability, or similar event, the Director, Coast Guard National Pollution Funds Center, is considered the agent for service of process. I have signed this application in my capacity as an authorized official of the applicant, or, if acting under a power of attorney, pursuant to the power vested in me by the applicant as evidenced by the attached *power of attorney.*

**IMPORTANT**



| DATE | SIGNATURE OF AUTHORIZED OFFICIAL |
|---|---|
| AUGUST 19TH 2004 | *[signature]* |

NOTE    Please be sure that Parts I, II, and III have been completed in full and that Part III has been dated and signed. Then proceed to Part IV, attached.

*NO CERTIFICATE WILL BE ISSUED UNLESS A COMPLETED APPLICATION FORM HAS BEEN RECEIVED, PROCESSED AND APPROVED.*

04 AUG 25 AM 11:07   USCG-NPFC (VSSL CERT)

**COMMENTS**

Any person who knowingly and willfully makes a false statement in this application is subject to the sanctions prescribed in 18 U.S.C. 1001

## CONCURRENCE OF AGENT (PART IV OF 4 PARTS)

### PART IV-A

It is hereby agreed that INCHCAPE SHIPPING SERVICES GUAM INC

shall serve as the applicant's United States agent for service of process for purposes of 33 CFR part 138. This designation and agreement shall cease immediately in the event the applicant designates a new agent acceptable to the Director, National Pollution Funds Center.

Date: _____

Signature of person signing on behalf of agent: MR DION CADIZ

Title: _____

Business address: SUITE 116 P.A.G. BUILDING
106 CABRAS HIGHWAY PITI,
GUAM 96915
TELE: 1-671-477 5921 FAX 477592x
MOBILE 1-671-687 2621

### PART IV-B (TO BE COMPLETED BY APPLICANT)

Name of applicant (from Item I(a)): FIVE SEAS SHIPPING CO. LLC

Signature of authorized official signing on behalf of applicant: _____

Date: AUGUST 19TH 2004

Type or Print Name and Title: GEOFFREY WOODCOCK.

## CONCURRENCE OF AGENT (PART IV OF 4 PARTS)

PART IV- A must be completed by the person designated in item 4 of Part 1 to serve as applicant's United States agent for service of process. Part IV-B must be completed by the applicant. After Parts IV-A and IV-B are completed, Part IV should be submitted to the Director, Coast Guard National Pollution Funds Center, by the applicant or by the agent, either separately or together with Parts I, II, and III. (*Part IV need not be completed if the agent designated in item IV of Part I already has submitted to the U.S. Coast Guard an acceptable blanket Concurrence of Agent, agreeing to serve on behalf of certain applicants who designate that agent. Part IV also need not be completed if the applicant is a United States entity and has appointed itself as agent in item 4 of Part I.)*

### PART IV-A

It is hereby agreed that **EPG, LLC** shall serve as the applicant's United States agent for service of process for purposes of 33 CFR part 138. This designation and agreement shall cease immediately in the event the applicant designates a new agent acceptable to the Director, National Pollution Funds Center.

Date: **AUGUST 19TH 2004**

Signature of person signing on behalf of agent:

Title:

Business address:

### PART IV-B (TO BE COMPLETED BY APPLICANT)

Name of applicant (from Item 1(a)): **FIVE SEAS SHIPPING CO. LLC**

Signature of authorized official signing on behalf of applicant

(Person signing here should also sign in appropriate place on Part III)

Date: **AUGUST 19TH 2004**

Type or Print Name and Title: **GEOFFREY WOODCOCK**

USCG-NPFC (VSSL CERT) 04 AUG 25 AM 11:07