THOMAS M. TARPLEY, JR.
A Professional Corporation
Bank of Hawaii Building
134 Soledad Avenue, Suite 402
Hagatna, Guam 96910
Telephone: (671) 472-1539
Facsimile: (671) 472-4526
Electronic mail: tarpley@guam.net

**FORREST BOOTH (Cal. Bar No. 74166) (Admitted *pro hac vice*)**
**RYAN C. DONLON (Cal. Bar No. 229292) (Admitted *pro hac vice*)**
**SEVERSON & WERSON**
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439
Electronic mail: fb@severson.com
Electronic mail: rcd@severson.com

Attorneys for Defendant, Cross-Claimant and
Counterclaimant S.J. GARGRAVE SYNDICATE 2724

FILED
DISTRICT COURT OF GUAM
FEB 20 2007
MARY L.M. MORAN
CLERK OF COURT

**IN THE DISTRICT COURT OF GUAM**

**TERRITORY OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil Case No.: 06-00011 |
| Plaintiff, | **TABLE OF FOREIGN AUTHORITIES IN SUPPORT OF S.J. GARGRAVE SYNDICATE 2724'S MOTION TO DISMISS CROSSCLAIM OF MARWAN SHIPPING & TRADING CO., LLC, AND FIVE SEAS SHIPPING CO., LLC, OR ALTERNATIVELY TO STAY THE CROSSCLAIM** |
| vs. | |
| INCHAPE SHIPPING SERVICES GUAM, LLC, | |
| Plaintiff in Intervention, | |
| vs. | |
| MARWAN SHIPPING & TRADING CO., FIVE SEAS SHIPPING CO., LLC, and S.J. GARGRAVE SYNDICATE 2724, *in personam*, | Accompanying Documents: Notice of Motion and Motion, Memorandum of Points & Authorities, Affidavit of Myles A. Sunley, Proposed Order |
| Defendants. | Date: [Fridays] |
| | Time: 9:30 a.m. |
| | Judge: Hon. Frances M. Tydingco-Gatewood |
| AND CROSS-CLAIMS, COUNTERCLAIM, AND CLAIM IN INTERVENTION | Complaint Date: April 19, 2006 |
| | Trial Date: May 12, 2008 |

| | 1 | Pursuant to rule 4.1 of the General Rules, Local Rules of Practice for the District Court of |
| | 2 | Guam, S.J. GARGRAVE SYNDICATE 2724 submits the following Table of Foreign |
| | 3 | Authorities, with true and correct copies of pertinent parts of the authorities appended hereto, in |
| | 4 | support of its Motion to Dismiss the Crossclaim of MARWAN SHIPPING & TRADING CO, |
| | 5 | LLC, and FIVE SEAS SHIPPING CO., LLC, or alternatively, to Stay the Crossclaim. |

**AUTHORITIES**

| | Citation | Sovereign Authority |
|---|---|---|
| Exhibit 1: | Arbitration Act, 1996, 45 Eliz. 2, ch. 23 [§§ 1-9 and Schedule A] | England |
| Exhibit 2: | Contracts (Applicable Law) Act, 1990, 39 Eliz. 2, ch. 36, sched. 1 (Rome Convention), [Articles I and II] | England |
| Exhibit 3: | *Akai Pty Ltd v. People's Ins. Co. Ltd*, [1998] 1 Lloyd's Rep 90 (Queen's Bench Division (Commercial Court)) | England |
| Exhibit 4: | *Arab African Energy Corp Ltd v. Olieprodukten Nederland BV* [1983] 2 Lloyd's Rep. 419 (Queen's Bench Division (Commercial Court)) | England |
| Exhibit 5: | *Hamed El Chiatry & Co. v. The Thomas Cook Group, Ltd (The "Nile Rhapsody")* [1994] 1 Lloyd's Rep 382 (Court of Appeal) | England |
| Exhibit 6: | *Mangistaumunaigaz Oil Prod. Ass'n v. United World Trade Inc.* [1995] 1 Lloyd's Rep. 617 (Queen's Bench Division (Commercial Court)) | England |
| Exhibit 7: | *Reliance Marine Ins. Co. v. Duder* [1913] 1 KB 265 (Court of Appeal) | England |
| Exhibit 8: | *Sirius Int'l Ins. Co. v. FAI Gen. Ins. Ltd.* [2005] 1 Lloyd's Rep. 461 (House of Lords) | England |
| Exhibit 9: | *Unterwester Reederei G.M.B.H. v. Zapata Off-Shore Co. (The "Chaparral")* [1968] 2 Lloyd's Rep. 158 (Court of Appeal) | England |
| Exhibit 10: | *Vitafood Products v. Unus Shipping Co.* [1939] AC 277 (Privy Council) | England |

- 1 -

DATED: February __20__, 2007

THOMAS M. TARPLEY, JR.
A Professional Corporation

By: _____
        Thomas M. Tarpley, Jr.

Attorneys for S.J. GARGRAVE SYNDICATE
2724

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I, Thomas M. Tarpley, Jr., hereby certify pursuant to Rule 5(d) Fed. R. Civ. P. that on February *20*, 2007, I caused to be served a true and correct copy of the **TABLE OF FOREIGN AUTHORITIES IN SUPPORT OF S.J. GARGRAVE SYNDICATE 2724'S MOTION TO DISMISS CROSSCLAIM OF MARWAN SHIPPING & TRADING CO., LLC, AND FIVE SEAS SHIPPING CO., LLC, OR ATERNATIVELY TO STAY THE CROSSCLAIM**, to the following:

R. Michael Underhill, Esq.
Attorney in Charge
c/o Mike W. Schwab, Esq.
OFFICE OF THE UNITED STATES ATTORNEY
108 Hernan Cortez Avenue, Suite 500
Hagatna, Guam 96910
*Attorneys for Plaintiff and Counterdefendant United States of America*

John E.D. Powell, Esq.
c/o Lawrence J. Teker, Esq.
TEKER TORRES & TEKER, P.C.
Suite 2-A, 130 Aspinall Avenue
Hagatna 96910-5018, Guam
*Attorneys for Defendants and Cross-Defendants Marwan Shipping & Trading Co.*
*and Five Seas Shipping Co., LLC*

David P. Ledger, Esq.
Elyze J. McDonald, Esq.
CARLSMITH BALL LLP
Bank of Hawaii Building
Suite 401
134 West Soledad Avenue
Hagatna, Guam 96910
*Attorneys for Intervenor Inchcape Shipping Services Guam LLC*

Dated this *20* day of February, 2007.

THOMAS McKEE TARPLEY,
Attorney for Defendant
S.J. GARGRAVE SYNDICATE 2724, *in personam*

- 3 -

# Exhibit 1

ORIGINAL

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

UK ST 1996 c 23 (Refs
United Kingdom Statute 1996 c 23 (Refs & Annos)

SWEET & MAXWELL UNITED KINGDOM LAW IN FORCE
**ARBITRATION ACT 1996 CHAPTER 23**
UK Statutes Crown Copyright. Reproduced by permission of the
Controller of Her Majesty's Stationery Office.


An Act to restate and improve the law relating to arbitration pursuant to an arbitration agreement; to make other provision relating to arbitration and arbitration awards; and for connected purposes.

[June 17, 1996]

BE IT ENACTED by the Queen's most Excellent Majesty, by and with the advice and consent of the Lords Spiritual and Temporal, and Commons, in this present Parliament assembled, and by the authority of the same, as follows:--

### s 1 General principles.

The provisions of this Part are founded on the following principles, and shall be construed accordingly--

(a) the object of arbitration is to obtain the fair resolution of disputes by an impartial tribunal without unnecessary delay or expense;

(b) the parties should be free to agree how their disputes are resolved, subject only to such safeguards as are necessary in the public interest;

(c) in matters governed by this Part the court should not intervene except as provided by this Part.

### s 2 Scope of application of provisions.

(1) The provisions of this Part apply where the seat of the arbitration is in England and Wales or Northern Ireland.

(2) The following sections apply even if the seat of the arbitration is outside England and Wales or Northern Ireland or no seat has been designated or determined--

(a) sections 9 to 11 (stay of legal proceedings, etc.), and

(b) section 66 (enforcement of arbitral awards).

(3) The powers conferred by the following sections apply even if the seat of the arbitration is outside England and Wales or Northern Ireland or no seat has been designated or determined--

(a) section 43 (securing the attendance of witnesses), and

(b) section 44 (court powers exercisable in support of arbitral proceedings);

but the court may refuse to exercise any such power if, in the opinion of the court, the fact that the seat of the arbitration is outside England and Wales or Northern Ireland, or that when designated or determined the seat is likely to be outside England and Wales or Northern Ireland, makes it inappropriate to do so.

(4) The court may exercise a power conferred by any provision of this Part not mentioned in subsection (2) or (3) for the purpose of supporting the arbitral process where--

(a) no seat of the arbitration has been designated or determined, and

(b) by reason of a connection with England and Wales or Northern Ireland the court is satisfied that it is appropriate to do so.

(5) Section 7 (separability of arbitration agreement) and section 8 (death of a party) apply where the law applicable to the arbitration agreement is the law of England and Wales or Northern Ireland even if the seat of the arbitration is outside England and Wales or Northern Ireland or has not been designated or determined.

### s 3 The seat of the arbitration.

In this Part "the seat of the arbitration" means the juridical seat of the arbitration designated--

(a) by the parties to the arbitration agreement, or

(b) by any arbitral or other institution or person vested by the parties with powers in that regard, or

(c) by the arbitral tribunal if so authorised by the parties,

or determined, in the absence of any such designation, having regard to the parties' agreement and all the relevant circumstances.

## s 4 Mandatory and non-mandatory provisions.

(1) The mandatory provisions of this Part are listed in Schedule 1 and have effect notwithstanding any agreement to the contrary.

(2) The other provisions of this Part (the "non-mandatory provisions") allow the parties to make their own arrangements by agreement but provide rules which apply in the absence of such agreement.

(3) The parties may make such arrangements by agreeing to the application of institutional rules or providing any other means by which a matter may be decided.

(4) It is immaterial whether or not the law applicable to the parties' agreement is the law of England and Wales or, as the case may be, Northern Ireland.

(5) The choice of a law other than the law of England and Wales or Northern Ireland as the applicable law in respect of a matter provided for by a non-mandatory provision of this Part is equivalent to an agreement making provision about that matter.

For this purpose an applicable law determined in accordance with the parties' agreement, or which is objectively determined in the absence of any express or implied choice, shall be treated as chosen by the parties.

## s 5 Agreements to be in writing.

(1) The provisions of this Part apply only where the arbitration agreement is in writing, and any other agreement between the parties as to any matter is effective for the purposes of this Part only if in writing.

The expressions "agreement", "agree" and "agreed" shall be construed accordingly.

(2) There is an agreement in writing--

(a) if the agreement is made in writing (whether or not it is signed by the parties),

(b) if the agreement is made by exchange of communications in writing, or

(c) if the agreement is evidenced in writing.

(3) Where parties agree otherwise than in writing by reference to terms which are in writing, they make an agreement in writing.

(4) An agreement is evidenced in writing if an agreement made otherwise than in writing is recorded by one of the parties, or by a third party, with the authority of the parties to the agreement.

(5) An exchange of written submissions in arbitral or legal proceedings in which the existence of an agreement otherwise than in writing is alleged by one party against another party and not denied by the other party in his response constitutes as between those parties an agreement in writing to the effect alleged.

(6) References in this Part to anything being written or in writing include its being recorded by any means.

## s 6 Definition of arbitration agreement.

(1) In this Part an "arbitration agreement" means an agreement to submit to arbitration present or future disputes (whether they are contractual or not).

(2) The reference in an agreement to a written form of arbitration clause or to a document containing an arbitration clause constitutes an arbitration agreement if the reference is such as to make that clause part of the agreement.

## s 7 Separability of arbitration agreement.

Unless otherwise agreed by the parties, an arbitration agreement which forms or was intended to form part of another agreement (whether or not in writing) shall not be regarded as invalid, non-existent or ineffective because that other agreement is invalid, or did not come into existence or has become ineffective, and it shall for that purpose be treated as a distinct agreement.

**s 8 Whether agreement discharged by death of a party.**

(1) Unless otherwise agreed by the parties, an arbitration agreement is not discharged by the death of a party and may be enforced by or against the personal representatives of that party.

(2) Subsection (1) does not affect the operation of any enactment or rule of law by virtue of which a substantive right or obligation is extinguished by death.

**s 9 Stay of legal proceedings.**

(1) A party to an arbitration agreement against whom legal proceedings are brought (whether by way of claim or counterclaim) in respect of a matter which under the agreement is to be referred to arbitration may (upon notice to the other parties to the proceedings) apply to the court in which the proceedings have been brought to stay the proceedings so far as they concern that matter.

(2) An application may be made notwithstanding that the matter is to be referred to arbitration only after the exhaustion of other dispute resolution procedures.

(3) An application may not be made by a person before taking the appropriate procedural step (if any) to acknowledge the legal proceedings against him or after he has taken any step in those proceedings to answer the substantive claim.

(4) On an application under this section the court shall grant a stay unless satisfied that the arbitration agreement is null and void, inoperative, or incapable of being performed.

(5) If the court refuses to stay the legal proceedings, any provision that an award is a condition precedent to the bringing of legal proceedings in respect of any matter is of no effect in relation to those proceedings.

### SCHEDULE 1 MANDATORY PROVISIONS OF PART I

Para 1

sections 9 to 11 (stay of legal proceedings);

section 12 (power of court to extend agreed time limits);

section 13 (application of Limitation Acts);

section 24 (power of court to remove arbitrator);

section 26(1) (effect of death of arbitrator);

section 28 (liability of parties for fees and expenses of arbitrators);

section 29 (immunity of arbitrator);

section 31 (objection to substantive jurisdiction of tribunal);

section 32 (determination of preliminary point of jurisdiction);

section 33 (general duty of tribunal);

section 37(2) (items to be treated as expenses of arbitrators);

section 40 (general duty of parties);

section 43 (securing the attendance of witnesses);

section 56 (power to withhold award in case of non-payment);

section 60 (effectiveness of agreement for payment of costs in any event);

section 66 (enforcement of award);

sections 67 and 68 (challenging the award; substantive jurisdiction and
serious irregularity), and sections 70 and 71 (supplementary provisions;
effect of order of court) so far as relating to those sections;

section 72 (saving for rights of person who takes no part in proceedings);

section 73 (loss of right to object);

section 74 (immunity of arbitral institutions, etc.);

section 75 (charge to secure payment of solicitors' costs).

UK ST 1996 c 23 (Refs & Annos)
END OF DOCUMENT

# EXHIBIT 2

ORIGINAL

1 of 20 DOCUMENTS

Butterworths UK Statutes
Copyright 2006, Butterworths Tolley UK
a division of Reed Elsevier, Inc.
All rights reserved.

*** THIS DOCUMENT IS CURRENT THROUGH 16 NOVEMBER, 2006 ***

**CONTRACTS (APPLICABLE LAW) ACT 1990**
**1990 CHAPTER 36**

Royal Assent [26 July 1990]

**Contracts (Applicable Law) Act 1990, Ch. 36, Long Title (Eng.)**

**Long Title**

An Act to make provision as to the law applicable to contractual obligations in the
case of conflict of laws

2 of 20 DOCUMENTS

Butterworths UK Statutes
Copyright 2006, Butterworths Tolley UK
a division of Reed Elsevier, Inc.
All rights reserved.

*** THIS DOCUMENT IS CURRENT THROUGH 16 NOVEMBER, 2006 ***

## CONTRACTS (APPLICABLE LAW) ACT 1990
### 1990 CHAPTER 36

Royal Assent [26 July 1990]

**Contracts (Applicable Law) Act 1990, Ch. 36, Enactment Clause (Eng.)**

**Enactment Clause**

BE IT ENACTED by the Queen's most Excellent Majesty, by and with the advice and
consent of the Lords Spiritual and Temporal, and Commons, in this present
Parliament assembled, and by the authority of the same, as follows:-

12 of 20 DOCUMENTS

Butterworths UK Statutes
Copyright 2006, Butterworths Tolley UK
a division of Reed Elsevier, Inc.
All rights reserved.

*** THIS DOCUMENT IS CURRENT THROUGH 16 NOVEMBER, 2006 ***

**CONTRACTS (APPLICABLE LAW) ACT 1990**
**1990 CHAPTER 36**

**SCHEDULE 1 THE ROME CONVENTION**
**Section 2**
Royal Assent [26 July 1990]

**Contracts (Applicable Law) Act 1990, Ch. 36, Sch. 1PROTOCOL (Eng.)**

**[PROTOCOL**

The High Contracting Parties to the Treaty establishing the European Economic Community,

Anxious to continue in the field of private international law the work of unification of law which has already been done within the Community, in particular in the field of jurisdiction and enforcement of judgments,

Wishing to establish uniform rules concerning the law applicable to contractual obligations,

Have agreed as follows:

TITLE I
SCOPE OF THE CONVENTION
Article 1
Scope of the Convention

1

The rules of this Convention shall apply to contractual obligations in any situation involving a choice between the laws of different countries.

2

They shall not apply to:

(a) questions involving the status or legal capacity of natural persons, without prejudice to Article 11;

(b) contractual obligations relating to:

--wills and succession,

--rights in property arising out of a matrimonial relationship,

--rights and duties arising out of a family relationship, parentage, marriage or affinity, including maintenance obligations in respect of children who are not legitimate;

(c) obligations arising under bills of exchange, cheques and promissory notes

and other negotiable instruments to the extent that the obligations under such other negotiable instruments arise out of their negotiable character;

(d) arbitration agreements and agreements on the choice of court;

(e) questions governed by the law of companies and other bodies corporate or unincorporate such as the creation, by registration or otherwise, legal capacity, internal organisation or winding up of companies and other bodies corporate or unincorporate and the personal liability of officers and members as such for the obligations of the company or body;

(f) the question whether an agent is able to bind a principal, or an organ to bind a company or body corporate or unincorporate, to a third party;

(g) the constitution of trusts and the relationship between settlors, trustees and beneficiaries;

(h) evidence and procedure, without prejudice to Article 14.

3

The rules of this Convention do not apply to contracts of insurance which cover risks situated in the territories of the Member States of the European Economic Community. In order to determine whether a risk is situated in these territories the court shall apply its internal law.

4

The preceding paragraph does not apply to contracts of re-insurance.
Article 2
Application of law of non-contracting States

Any law specified by this Convention shall be applied whether or not it is the law of a Contracting State.

TITLE II
UNIFORM RULES
Article 3
Freedom of choice

1

A contract shall be governed by the law chosen by the parties. The choice must be express or demonstrated with reasonable certainty by the terms of the contract or the circumstances of the case. By their choice the parties can select the law applicable to the whole or a part only of the contract.

2

The parties may at any time agree to subject the contract to a law other than that which previously governed it, whether as a result of an earlier choice under this Article or of other provisions of this Convention. Any variation by the parties of the law to be applied made after the conclusion of the contract shall not prejudice its formal validity under Article 9 or adversely affect the rights of third parties.

3

The fact that the parties have chosen a foreign law, whether or not accompanied by the notice of a foreign tribunal, shall not, where all the other elements relevant to the situation at the time of the choice are connected with one country only, prejudice the application of rules of the law of that country which cannot be

derogated from by contract, hereinafter called "mandatory rules".

**4**

The existence and validity of the consent of the parties as to the choice of the applicable law shall be determined in accordance with the provisions of Articles 8, 9 and 11.
Article 4
Applicable law in the absence of choice

**1**

To the extent that the law applicable to the contract has not been chosen in accordance with Article 3, the contract shall be governed by the law of the country with which it is most closely connected. Nevertheless, a severable part of the contract which has a closer connection with another country may by way of exception be governed by the law of that other country.

**2**

Subject to the provisions of paragraph 5 of this Article, it shall be presumed that the contract is most closely connected with the country where the party who is to effect the performance which is characteristic of the contract has, at the time of conclusion of the contract, his habitual residence, or, in the case of a body corporate or unincorporate, its central administration. However, if the contract is entered into in the course of that party's trade or profession, that country shall be the country in which the principal place of business is situated or, where under the terms of the contract the performance is to be effected through a place of business other than the principal place of business, the country in which that other place of business is situated.

**3**

Notwithstanding the provisions of paragraph 2 of this Article, to the extent that the subject matter of the contract is a right in immovable property or a right to use immovable property it shall be presumed that the contract is most closely connected with the country where the immovable property is situated.

**4**

A contract for the carriage of goods shall not be subject to the presumption in paragraph 2. In such a contract if the country in which, at the time the contract is concluded, the carrier has his principal place of business is also the country in which the place of loading or the place of discharge or the principal place of business of the consignor is situated, it shall be presumed that the contract is most closely connected with that country. In applying this paragraph single voyage charter-parties and other contracts the main purpose of which is the carriage of goods shall be treated as contracts for the carriage of goods.

**5**

Paragraph 2 shall not apply if the characteristic performance cannot be determined, and the presumptions in paragraphs 2, 3 and 4 shall be disregarded if it appears from the circumstances as a whole that the contract is more closely connected with another country.
Article 5
Certain consumer contracts

**1**

This Article applies to a contract the object of which is the supply of goods or services to a person ("the consumer") for a purpose which can be regarded as being

outside his trade or profession, or a contract for the provision of credit for that object.

2

Notwithstanding the provisions of Article 3, a choice of law made by the parties shall not have the result of depriving the consumer of the protection afforded to him by the mandatory rules of the law of the country in which he has his habitual residence:

--if in that country the conclusion of the contract was preceded by a specific invitation addressed to him or by advertising, and he had taken in that country all the steps necessary on his part for the conclusion of the contract, or

--if the other party or his agent received the consumer's order in that country, or

--if the contract is for the sale of goods and the consumer travelled from that country to another country and there gave his order, provided that the consumer's journey was arranged by the seller for the purpose of inducing the consumer to buy.

3

Notwithstanding the provisions of Article 4, a contract to which this Article applies shall, in the absence of choice in accordance with Article 3, be governed by the law of the country in which the consumer has his habitual residence if it is entered into in the circumstances described in paragraph 2 of this Article.

4

This Article shall not apply to:

(a) a contract of carriage;

(b) a contract for the supply of services where the services are to be supplied to the consumer exclusively in a country other than that in which he has his habitual residence.

5

Notwithstanding the provisions of paragraph 4, this Article shall apply to a contract which, for an inclusive price, provides for a combination of travel and accommodation.
Article 6
Individual employment contracts

1

Notwithstanding the provisions of Article 3, in a contract of employment a choice of law made by the parties shall not have the result of depriving the employee of the protection afforded to him by the mandatory rules of the law which would be applicable under paragraph 2 in the absence of choice.

2

Notwithstanding the provisions of Article 4, a contract of employment shall, in the absence of choice in accordance with Article 3, be governed:

(a) by the law of the country in which the employee habitually carries out his work in performance of the contract, even if he is temporarily employed in another country; or

(b) if the employee does not habitually carry out his work in any one country,

by the law of the country in which the place of business through which he was engaged is situated;

unless it appears from the circumstances as a whole that the contract is more closely connected with another country, in which case the contract shall be governed by the law of that country.
Article 7
Mandatory rules

**1**

When applying under this Convention the law of a country, effect may be given to the mandatory rules of the law of another country with which the situation has a close connection, if and in so far as, under the law of the latter country, those rules must be applied whatever the law applicable to the contract. In considering whether to give effect to these mandatory rules, regard shall be had to their nature and purpose and to the consequences of their application or non-application.

**2**

Nothing in this Convention shall restrict the application of the rules of the law of the forum in a situation where they are mandatory irrespective of the law otherwise applicable to the contract.
Article 8
Material validity

**1**

The existence and validity of a contract, or of any term of a contract, shall be determined by the law which would govern it under this Convention if the contract or term were valid.

**2**

Nevertheless a party may rely upon the law of the country in which he has his habitual residence to establish that he did not consent if it appears from the circumstances that it would not be reasonable to determine the effect of his conduct in accordance with the law specified in the preceding paragraph.
Article 9
Formal validity

**1**

A contract concluded between persons who are in the same country is formally valid if it satisfies the formal requirements of the law which governs it under this Convention or of the law of the country where it is concluded.

**2**

A contract concluded between persons who are in different countries is formally valid if it satisfies the formal requirements of the law which governs it under this Convention or of the law of one of those countries.

**3**

Where a contract is concluded by an agent, the country in which the agent acts is the relevant country for the purposes of paragraphs 1 and 2.

**4**

An act intended to have legal effect relating to an existing or contemplated contract is formally valid if it satisfies the formal requirements of the law which

under this Convention governs or would govern the contract or of the law of the country where the act was done.

**5**

The provisions of the preceding paragraphs shall not apply to a contract to which Article 5 applies, concluded in the circumstances described in paragraph 2 of Article 5. The formal validity of such a contract is governed by the law of the country in which the consumer has his habitual residence.

**6**

Notwithstanding paragraphs 1 to 4 of this Article, a contract the subject matter of which is a right in immovable property or a right to use immovable property shall be subject to the mandatory requirements of form of the law of the country where the property is situated if by that law those requirements are imposed irrespective of the country where the contract is concluded and irrespective of the law governing the contract.
Article 10
Scope of the applicable law

**1**

The law applicable to a contract by virtue of Articles 3 to 6 and 12 of this Convention shall govern in particular:

(a) interpretation;

(b) performance;

(c) within the limits of the powers conferred on the court by its procedural law, the consequences of breach, including the assessment of damages in so far as it is governed by rules of law;

(d) the various ways of extinguishing obligations, and prescription and limitation of actions;

(e) the consequences of nullity of the contract.

**2**

In relation to the manner of performance and the steps to be taken in the event of defective performance regard shall be had to the law of the country in which performance takes place.
Article 11
Incapacity

In a contract concluded between persons who are in the same country, a natural person who would have capacity under the law of that country may invoke his incapacity resulting from another law only if the other party to the contract was aware of this incapacity at the time of the conclusion of the contract or was not aware thereof as a result of negligence.
Article 12
Voluntary assignment

**1**

The mutual obligations of assignor and assignee under a voluntary assignment of a right against another person ("the debtor") shall be governed by the law which under this Convention applies to the contract between the assignor and assignee.

**2**

The law governing the right to which the assignment relates shall determine its assignability, the relationship between the assignee and the debtor, the conditions under which the assignment can be invoked against the debtor and any question whether the debtor's obligations have been discharged.
Article 13
Subrogation

1

Where a person ("the creditor") has a contractual claim upon another ("the debtor"), and a third person has a duty to satisfy the creditor, or has in fact satisfied the creditor in discharge of that duty, the law which governs the third person's duty to satisfy the creditor shall determine whether the third person is entitled to exercise against the debtor the rights which the creditor had against the debtor under the law governing their relationship and, if so, whether he may do so in full or only to a limited extent.

2

The same rule applies where several persons are subject to the same contractual claim and one of them has satisfied the creditor.
Article 14
Burden of proof, etc.

1

The law governing the contract under this Convention applies to the extent that it contains, in the law of contract, rules which raise presumptions of law or determine the burden of proof.

2

A contract or an act intended to have legal effect may be proved by any mode of proof recognised by the law of the forum or by any of the laws referred to in Article 9 under which that contract or act is formally valid, provided that such mode of proof can be administered by the forum.
Article 15
Exclusion of renvoi

The application of the law of any country specified by this Convention means the application of the rules of law in force in that country other than its rules of private international law.
Article 16
"Ordre public"

The application of a rule of the law of any country specified by this Convention may be refused only if such application is manifestly incompatible with the public policy ("ordre public") of the forum.
Article 17
No retrospective effect

This Convention shall apply in a Contracting State to contracts made after the date on which this Convention has entered into force with respect to that State.
Article 18
Uniform interpretation

In the interpretation and application of the preceding uniform rules, regard shall be had to their international character and to the desirability of achieving uniformity in their interpretation and application.
Article 19
States with more than one legal system

1

Where a State comprises several territorial units each of which has its own
rules of law in respect of contractual obligations, each territorial unit shall be
considered as a country for the purposes of identifying the law applicable under
this Convention.

2

A State within which different territorial units have their own rules of law in
respect of contractual obligations shall not be bound to apply this Convention to
conflicts solely between the laws of such units.
Article 20
Precedence of Community Law

This Convention shall not affect the application of provisions which, in
relation to particular matters, lay down choice of law rules relating to
contractual obligations and which are or will be contained in acts of the
institutions of the European Communities or in national laws harmonised in
implementation of such acts.
Article 21
Relationship with other conventions

This Convention shall not prejudice the application of international conventions
to which a Contracting State is, or becomes, a party.
Article 22
Reservations

1

Any Contracting State may, at the time of signature, ratification, acceptance or
approval, reserve the right not to apply:

(a) the provisions of Article 7(1);

(b) the provisions of Article 10(1)(e);

2

. . .

3

Any Contracting State may at any time withdraw a reservation which it has made;
the reservation shall cease to have effect on the first day of the third calendar
month after notification of the withdrawal.

TITLE III
FINAL PROVISIONS
Article 23

1

If, after the date on which this Convention has entered into force for a
Contracting State, that State wishes to adopt any new choice of law rule in regard
to any particular category of contract within the scope of this Convention, it
shall communicate its intention to the other signatory States through the
Secretary-General of the Council of the European Communities.

2

Any signatory State may, within six months from the date of the communication made to the Secretary-General, request him to arrange consultations between signatory States in order to reach agreement.

**3**

If no signatory State has requested consultations within this period or if within two years following the communication made to the Secretary-General no agreement is reached in the course of consultations, the Contracting State concerned may amend its law in the manner indicated. The measures taken by that State shall be brought to the knowledge of the other signatory States through the Secretary-General of the Council of the European Communities.
Article 24

**1**

If, after the date on which this Convention has entered into force with respect to a Contracting State, that State wishes to become a party to a multilateral convention whose principal aim or one of whose principal aims is to lay down rules of private international law concerning any of the matters governed by this Convention, the procedure set out in Article 23 shall apply. However, the period of two years, referred to in paragraph 3 of that Article, shall be reduced to one year.

**2**

The procedure referred to in the preceding paragraph need not be followed if a Contracting State or one of the European Communities is already a party to the multilateral convention, or if its object is to revise a convention to which the State concerned is already a party, or if it is a convention concluded within the framework of the Treaties establishing the European Communities.
Article 25

If a Contracting State considers that the unification achieved by this Convention is prejudiced by the conclusion of agreements not covered by Article 24 (1), that State may request the Secretary-General of the Council of the European Communities to arrange consultations between the signatory States of this Convention.
Article 26

Any Contracting State may request the revision of this Convention. In this event a revision conference shall be convened by the President of the Council of the European Communities.
Article 27

. . .
Article 28

**1**

This Convention shall be open from 19 June 1980 for signature by the States party to the Treaty establishing the European Economic Community.

**2**

This Convention shall be subject to ratification, acceptance or approval by the signatory States. The instruments of ratification, acceptance or approval shall be deposited with the Secretary-General of the Council of the European Communities.
Article 29

**1**

This Convention shall enter into force on the first day of the third month following the deposit of the seventh instrument of ratification, acceptance or approval.

**2**

This Convention shall enter into force for each signatory State ratifying, accepting or approving at a later date on the first day of the third month following the deposit of its instrument of ratification, acceptance or approval. Article 30

**1**

This Convention shall remain in force for 10 years from the date of its entry into force in accordance with Article 29(1), even for States for which it enters into force at a later date.

**2**

If there has been no denunciation it shall be renewed tacitly every five years.

**3**

A Contracting State which wishes to denounce shall, not less than six months before the expiration of the period of 10 or five years, as the case may be, give notice to the Secretary-General of the Council of the European Communities. . . .

**4**

The denunciation shall have effect only in relation to the State which has notified it. The Convention will remain in force as between all other Contracting States.
Article 31

The Secretary-General of the Council of the European Communities shall notify the States party to the Treaty establishing the European Economic Community of:

(a) the signatures;

(b) the deposit of each instrument of ratification, acceptance or approval;

(c) the date of entry into force of this Convention;

[(d) communications made in pursuance of Articles 23, 24, 25, 26 and 30;]

(e) the reservations and withdrawals of reservations referred to in Article 22.
Article 32

The Protocol annexed to this Convention shall form an integral part thereof.
Article 33

This Convention, drawn up in a single original in the Danish, Dutch, English, French, German, Irish and Italian languages, these texts being equally authentic, shall be deposited in the archives of the Secretariat of the Council of the European Communities. The Secretary-General shall transmit a certified copy thereof to the Government of each signatory state.

The High Contracting Parties have agreed upon the following provision which shall be annexed to the Convention:

Notwithstanding the provisions of the Convention, Denmark, Sweden and Finland may retain national provisions concerning the law applicable to questions relating

to the carriage of goods by sea and may amend such provisions without following the procedure provided for in Article 23 of the Convention of Rome. The national provisions applicable in this respect are the following:

-- in Denmark, paragraphs 252 and 321(3) and (4) of the "Solov" (maritime law);

-- in Sweden, Chapter 13, Article 2(1) and (2), and Chapter 14, Article 1(3), of "sjolagen" (maritime law);

-- in Finland, Chapter 13, Article 2(1) and (2), and Chapter 14, Article 1(3) of "merilaki"/ "sjolagen" (maritime law).]

**NOTES:**

**Initial Commencement**

***To be appointed***

To be appointed: see s 7.

**Appointment**

Appointment: 1 April 1991: see SI 1991/707, art 2.

**Amendment**

Articles 22, 30: words omitted repealed by SI 1994/1900, art 7.

Article 27: repealed by SI 1994/1900, art 7.

Article 31: para (d) substituted by SI 1994/1900, art 7.

Protocol: substituted by SI 2000/1825, art 5.

Date in force: 1 January 2001: see SI 2000/1825, art 1, and the London Gazette, 24 November 2000.