LAWRENCE J. TEKER
**TEKER TORRES & TEKER, P.C.**
Suite 2-A, 130 Aspinall Avenue
Hagåtña 96910-5018, Guam
Telephone: (671) 477-9891
Facsimile: (671) 472-2601

JOHN E.D. POWELL, WSBA #12941
**CAIRNCROSS & HEMPELMANN, PS**
524 Second Avenue, Suite 500
Seattle WA 98104
Telephone:    (206) 587-0700
Facsimile:    (206) 587-2308

Attorneys for Defendants *Marwan Shipping*
*& Trading, Five Seas Shipping Co., LLC,*
*and Al-Buhaira National Insurance Co.*

**FILED**

DISTRICT COURT OF GUAM

MAR - 6 2007 *mba*

MARY L.M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT

## DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>MARWAN SHIPPING & TRADING CO., FIVE SEAS SHIPPING CO., LLC AND S.J. GARGRAVE SYNDICATE 2724, IN PERSONAM, NAVIGATORS PROTECTION & INDEMNITY, AND AL-BUHAIRA NATIONAL INSURANCE COMPANY,<br><br>                    Defendants<br><br>AND CROSS-CLAIMS, COUNTERCLAIMS, THIRD-PARTY COMPLAINT, AND CLAIM IN INTERVENTION. | NO.  CIV06-00011<br><br>**MOTION FOR LEAVE TO FILE FACSIMILE AFFIDAVIT OF JOHN E.D. POWELL IN OPPOSITION TO GARGRAVE SYNDICATE 2724'S MOTION TO DISMISS CROSS-CLAIM OR ALTERANTIVELY TO STAY THE CROSS-CLAIM**<br><br>Complaint Date:  April 19, 2006<br>Trial Date: Not set |

Defendants, Marwan Shipping & Trading, Five Seas Shipping Co., LLC, and Al-Buhaira

National Insurance Co., respectfully move the Court, pursuant to GR 5.1(a) of the Local Rules of

MOTION FOR FILE TO FILE FACSIMILE
AFFIDAVIT OF JOHN E.D. POWELL IN
OPPOSITION TO GARGRAVE SYNDICATE
2724'S MOTION TO DISMISS

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

ORIGINAL

Practice for the District Court of Guam, for leave to file herewith a facsimile copy of the *Affidavit of John E.D. Powell in Opposition to Gargrave Syndicate 2724's Motion to Dismiss Cross-Claim or Alternatively to Stay the Cross-Claim.* The Affiant is presently in London, England, and has executed his Affidavit in that country. The signed original of the Affidavit has been sent to counsel for the Defendants and will be filed with this Court immediately upon receipt.

DATED this 6th day of March, 2007.

**CAIRNCROSS & HEMPELMANN, PS**

**TEKER TORRES & TEKER, P.C.**

By _____
**LAWRENCE J. TEKER, ESQ.**
Attorneys for Defendants, ***Marwan Shipping & Trading Co., Sharjah, Five Seas Shipping Co., LLC, Sharjah, and Al-Buhaira National Insurance Co.***

MOTION FOR FILE TO FILE FACSIMILE
AFFIDAVIT OF JOHN E.D. POWELL IN
OPPOSITION TO GARGRAVE SYNDICATE
2724'S MOTION TO DISMISS

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

## CERTIFICATE OF SERVICE

The undersigned certifies under the penalty of perjury according to the laws of the United States and the State of Washington that on this date I caused to be served in the manner noted below a copy of this document entitled **MOTION FOR LEAVE TO FILE FACSIMILE AFFIDAVIT OF JOHN E.D. POWELL IN OPPOSITION TO GARGRAVE SYNDICATE 2724'S MOTION TO DISMISS CROSS-CLAIM OR ALTERANTIVELY TO STAY THE CROSS-CLAIM** on the following individuals:

| | |
|---|---|
| R. Michael Underhill,<br>Mimi Moon<br>Torts Branch, Civil Division<br>US Department of Justice<br>450 Golden Gate Avenue, Room 7-5395<br>PO Box 36028<br>San Francisco, CA 94102-3463 | Forrest Booth<br>Ryan Donlon<br>Severson & Werson<br>One Embarcadero Center, 26th Floor<br>San Francisco, CA 94111 |
| David Ledger<br>Carlsmith Ball LLP<br>Bank of Hawaii Building, Suite 401<br>134 West Soledad Avenue<br>PO Box BF<br>Hagåtña, Guam 96932-5027 | Thomas M. Tarpley Jr.<br>Tarpley & Moroni LLP<br>Bank of Hawaii Building<br>134 West Soledad Ave., Suite 402<br>Hagåtña, Guam 96910 |
| Office of the United States Attorney<br>108 Hernan Cortez Avenue, Suite 500<br>Hagåtña, Guam 96910 | |

[X] Via Messenger
[X] Via E-mail

DATED this 6th day of March, 2007, at Hagåtña, Guam.

_____
LAWRENCE J. TEKER

MOTION FOR FILE TO FILE FACSIMILE
AFFIDAVIT OF JOHN E.D. POWELL IN
OPPOSITION TO GARGRAVE SYNDICATE
2724'S MOTION TO DISMISS

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 ● Fax: 206-587-2308*

LAWRENCE J. TEKER
**TEKER TORRES & TEKER, P.C.**
Suite 2-A, 130 Aspinall Avenue
Hagatna 96910-5018, Guam
Telephone: (671) 477-9891
Facsimile: (671) 472-2601

John E.D. Powell, WSBA #12941
**CAIRNCROSS & HEMPELMANN, PS**
524 Second Avenue, Suite 500
Seattle WA 98104
Telephone: (206) 587-0700
Facsimile: (206) 587-2308

Attorneys for Defendants *Marwan Shipping
& Trading, Five Seas Shipping Co., LLC,
and Al-Buhaira National Insurance Co.*

UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARWAN SHIPPING & TRADING CO., FIVE SEAS SHIPPING CO., LLC AND S.J. GARGRAVE SYNDICATE 2724, IN PERSONAM, NAVIGATORS PROTECTION & INDEMNITY, AND AL-BUHAIRA NATIONAL INSURANCE COMPANY,<br><br>Defendants<br><br>AND CROSS-CLAIMS, COUNTERCLAIMS, THIRD-PARTY COMPLAINT, AND CLAIM IN INTERVENTION. | NO. CIV06-00011<br><br>AFFIDAVIT OF JOHN E.D. POWELL IN OPPOSITION TO GARGRAVE SYNDICATE 2724'S MOTION TO DISMISS CROSS-CLAIM OR ALTERNATIVELY TO STAY THE CROSS-CLAIM<br><br>Accompanying Documents: Opposition, Memorandum of Points and Authorities; Table of Foreign Authorities; Proposed Order<br><br>Complaint Date: April 19, 2006<br>Trial Date: Not set |

I, John E.D. Powell, affirm as follows:

1. I am counsel for Defendants and Cross-claimants Marwan Shipping & Trading Company and Five Seas Shipping Company, LLC (collectively, "Marwan") in the above-captioned matter. I am admitted *pro hac vice* to practice before this Court. I am over the age of

{00510240.DOC;1} AFFIDAVIT OF JOHN E.D. POWELL

CAUSE NO. CIV06-00011 - 1

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

1    18 years, have personal knowledge of the facts set forth in this affidavit, and otherwise am
2    competent to be a witness in this matter.

3          2.     Marwan does not contest the following facts as set forth in Gargrave's Motion to
4    Dismiss:

5                 a)     In August 2004, the Master of the M/V AJMAN 2, feigning to suffer
6    mechanical problems and running low on fuel, sought permission from the U.S. Coast Guard
7    to enter Apra Harbor, Guam, in order to seek protection from an oncoming typhoon.

8                 b)     Pursuant to regulations governing vessel access to U.S. waters, the Coast
9    Guard required Marwan, as the general agent and manager of the M/V AJMAN 2, to secure
10   oil pollution insurance and a certificate of financial responsibility ("COFR") demonstrating
11   an ability to reimburse the U.S. for any damages incurred as a result of actual or threatened
12   oil pollution.

13                c)     In compliance with the Coast Guard's request, Marwan contacted
14   Navigator's Protection & Indemnity ("Navigator's"), Gargrave's P&I coverholder, to arrange
15   for the required pollution insurance and COFR guaranty.  Navigator's instructed Ropner
16   Insurance Ltd. to broker an insurance policy through Environmental Protection Group, LLC
17   ("EPG"), a United States insurer of marine pollution risks, on behalf of Gargrave.

18                d)     The M/V AJMAN 2 was subsequently allowed to enter Apra Harbor,
19   Guam.  A few days later, the M/V AJMAN 2 dragged anchor and ran aground.

20                e)     The Coast Guard effected removal of the vessel from the beach.

21         3.     Gargrave issued Marwan London U.S. Vessel Policy, No. 04HV123X0005 on or
22   about August 19, 2004.  Attached here as <u>Exhibit A</u> and incorporated herein by this reference is a
23   true and correct copy of the insurance Policy inclusive of all forms and endorsements.

24         4.     Attached hereto as <u>Exhibit B</u> and incorporated herein by reference is a true and
25   correct copy of the COFR guaranty EPG submitted to the United States Coast Guard.

26

{00510240.DOC;1} AFFIDAVIT OF JOHN E.D.
POWELL

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
CAUSE NO. CIV06-00011 - 2
*Phone: 206-587-0700 • Fax: 206-587-2308*

1    5.   On April 19, 2006, the United States brought suit against my clients Marwan and

2    Five Seas, as well as Gargrave, in the United States District Court for the District of Guam,

3    alleging financial liability for costs incurred by the Coast Guard in connection with its removal

4    and pollution abatement operation following the grounding of the M/V AJMAN 2.

5    6.   My clients tendered the defense, indemnity, and guarantee obligations to

6    Gargrave pursuant to the terms of the OPA insurance and COFR guarantee, and Gargrave

7    rejected this tender.

8    7.   On July 12, 2006, Gargrave answered the United States complaint solely on its

9    own behalf, raised counterclaims against the United States and asserted seven cross-claims

10   against Marwan.

11   8.   Gargrave's cross-claims allege that Marwan made intentional or negligent

12   misrepresentations and omissions in connection with the negotiation and procurement of the

13   insurance policy and COFR guaranty.  Gargrave expressly seeks a declaration from this Court

14   that it has no obligations to honor the insurance contract.  Marwan has denied all such allegations

15   and has brought cross-claims of its own against Gargrave on January 24, 2007, alleging that

16   Gargrave's failure to honor the COFR guaranty and underlying insurance policy constitute a

17   breach of those agreements and that such refusals are made in bad faith.

18   9.   Gargrave has moved to dismiss Marwan's cross-claims.

19   //

20   //

21   //

22   Signed: ......................................................

23         John E.D. Powell
         WSBA #12941

24

25

26

{00510240.DOC;1} AFFIDAVIT OF JOHN E.D.                    *Cairncross & Hempelmann, P.S.*
POWELL                                                    Law Offices
                                                          524 Second Avenue, Suite 500
                                                          Seattle, Washington 98104-2323
CAUSE NO. CIV06-00011 - 3                                 Phone: 206-587-0700 • Fax: 206-587-2308

1    I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE

2    UNITED STATES, ENGLAND AND GUAM THAT THE FOREGOING IS TRUE AND

3    CORRECT.

4

5

6    Dated this 5 , day of March, 2007 in London, England.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

{00510240.DOC;1} AFFIDAVIT OF JOHN E.D.
POWELL

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 ● Fax: 206-587-2308*

CAUSE NO. CIV06-00011 - 4

Certificate of Service

The undersigned certifies under the penalty of perjury according to the laws of the United States and the State of Washington that on this date I caused to be served in the manner noted below a copy of this document entitled _____ on the following individual(s):

| | |
|---|---|
| R. Michael Underhill,<br>Mimi Moon<br>Torts Branch, Civil Division<br>US Department of Justice<br>450 Golden Gate Avenue, Room 7-5395<br>PO Box 36028<br>San Francisco, CA 94102-3463 | Forrest Booth<br>Ryan Donlon<br>Severson & Werson<br>One Embarcadero Center, 26th Floor<br>San Francisco, CA 94111 |
| David Ledger<br>Carlsmith Ball LLP<br>Bank of Hawaii Building, Suite 401<br>134 West Soledad Avenue<br>PO Box BF<br>Hagatna, Guam 96932-5027 | Thomas M. Tarpley Jr.<br>Tarpley & Moroni LLP<br>Bank of Hawaii Building<br>134 West Soledad Ave., Suite 402<br>Hagatna, Guam 96910 |
| Lawrence Teker<br>Teker Torres & Teker<br>Suite 2-A, 130 Aspinall Avenue<br>Hagatna, Guam 96932-5027 | Stanley L. Gibson<br>Gibson Ross & Lindh LLP<br>100 First Street, 27th Floor<br>San Francisco, CA 94105 |

[ ]  Via First Class Mail
[ ]  Via Messenger
[ ]  Via E-mail

DATED this _____ day of _____, 2007, at Seattle, Washington.

_____/s/_____
Gina Volynsky

{00510240.DOC;1} AFFIDAVIT OF JOHN E.D. POWELL

CAUSE NO. CIV06-00011 - 5

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

# EXHIBIT "A"

# LONDON U.S. VESSEL POLLUTION INSURANCE POLICY

This Insurance (the "Insurance Policy") does not constitute evidence of financial responsibility under the Oil Pollution Act of 1990 (Pub.L.No. 101-380, 104 Stat 484 (1990)), as amended (the "Act") or any similar Federal or State Law, and it is a condition of this Insurance Policy that it shall not be submitted to the United States Coast Guard or any other Federal or State Agency as evidence of financial responsibility. The Underwriters do not consent to be Guarantors.

## I.    INSURING AGREEMENT

In consideration of the premium stated herein and subject to all of the terms, conditions and limitations contained herein, the Underwriters do hereby agree to indemnify the Assured for such amounts in excess of the deductible shown on Item 3 of the Declarations or the underlying limits shown on Item 3 of the Declarations (the "Underlying Limits") as the Assured shall, as owner or operator of the vessel(s) named in Item 10 of the Declarations, have become liable to pay, and shall pay, by reason of or with respect to:

FIRST: Liability under Section 1002 of the Act for a discharge of oil as defined in Section 1001 (23) of the Act, or the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone of the United States for the following specified removal costs or damages:

1.    Removal Costs:

   (a)  removal costs incurred by the United States of America, a State, or an Indian tribe under subsection (c), (d), (e), or (i) of Section 1321 of the Federal Water Pollution Control Act (33 U.S.C. § 1251 et seq.), as amended (the "FWPCA"), under the Intervention on the High Seas Act (33 U.S.C. § 1471 et seq.) (the "IHSA"), or under State law, insofar as such removal costs are recoverable under the Act;

   and

   (b)  removal costs incurred by any person for acts taken by the person which are consistent with the National Contingency Plan (as defined in Section 1001 (19) of the Act);

2.    Damages as specified in Section 1002(b)2 of the Act;

3.    Liability of the Assured for contribution under an action brought pursuant to Section 1009 of the Act;

4.    Advertising costs incurred in accordance with Section 1014(b) of the Act;

SECOND: Liability under Section 1005(a) of the Act to a claimant for interest on an amount paid in satisfaction of a claim under Section 1002 of the Act;

THIRD: Liability of the Assured as owner or operator pursuant to Section 9607(a) (1) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. § 9607 et seq.) ("CERCLA"), for the release or threatened release of a hazardous substance into or upon the navigable waters or adjoining shorelines or the exclusive economic zone of the United States of America, as well as liability of the Assured for contribution brought pursuant to CERCLA Section 9613(f)1.

FOURTH: Liability under the statute(s) or regulation(s) of the United States of America or any State or political subdivision thereof or under an action brought pursuant to common law that is consistent with and equivalent in nature or scope to liabilities imposed under the Act or CERCLA for removal costs or damages resulting from a discharge or substantial threat of discharge of oil or release or threatened release of hazardous substances into or upon the navigable waters or adjoining shorelines or the exclusive economic zone of the United States of America, but only if such removal costs or

damages would be recoverable under the Act or CERCLA for the same incident. In no event shall the coverage afforded under this Section FOURTH be broader in nature or scope than coverage provided under Section FIRST, Section SECOND or Section THIRD above;

FIFTH: Liability for the discharge of any other substance other than oil (as defined under the Act) or hazardous substances (as defined under CERCLA) into or upon the navigable waters or adjoining shorelines or the exclusive economic zone of the United States of America for which indemnity is neither specifically covered nor specifically excluded elsewhere in this Insurance Policy. This section FIFTH shall not cover costs, charges and expenses incurred for removal or for mitigation of costs unless done with the prior written consent of Underwriters. This Section FIFTH shall always be subject to the nuclear incident exclusion as specified in Section II.4 below.

SIXTH: Costs, charges and expenses incurred, with the prior written consent of Underwriters, in defending against or investigating or adjusting any liabilities insured against under Sections FIRST through FIFTH above, subject to all of the terms, conditions and limitations of this Insurance Policy.

PROVIDED ALWAYS THAT the Assured establishes that the discharge, substantial threat of discharge, or release, or threatened release giving rise to liability under Sections FIRST to SIXTH above meets all of the following conditions:

1. it was sudden and was unintended and unexpected by the Assured;

2. it first commenced at a specific time and date during the policy period;

3. it became known to the Assured within seventy-two (72) hours of its commencement;

    and

4. it was reported to Underwriters immediately in accordance with notice requirements set out in Section IV.10 below, and reported in writing not later than thirty (30) days after having become known to the Assured.

PROVIDED FURTHER ALWAYS THAT the Insurance provided herein and the stated Limits of Liability herein shall be subject to any deductible or excess of any Underlying Limits shown on Item 3 of the Declarations, and Underwriters' obligations hereunder shall not be affected by whether the Assured has obtained insurance for all or part of the exposure of the amount shown on Item 3 of the Declarations or whether any such insurance obtained is collectible.

LIMITS OF LIABILITY: The Limit of Liability of the Underwriters under this Insurance Policy with respect to each incident shall, in no event, exceed the amount shown on Item 2 of the Declarations.

Where Joint Assured(s) or Additional Assured(s) are included in this Insurance Policy, the Limits of Liability of the Underwriters under this Insurance Policy shall apply to all Assured(s), Joint Assured(s) and Additional Assured(s) collectively, and not separately, for all claims related to each incident.

LIMITATION OF LIABILITY:

The Assured shall, at the option of the Underwriters hereon, permit Underwriters to conduct, with an attorney of Underwriters' selection at Underwriters' cost and expense and under their exclusive control, a proceeding in the Assured's name to limit the Assured's liability to the extent, and in the manner provided by the present and any future statutes relative to the limitation of a shipowner's liability, and it is specifically understood and agreed that in the event the Assured is entitled to limit its liability, Underwriters' liability shall not exceed the amount of such limitation.

## II.    EXCLUSIONS

THIS INSURANCE DOES NOT APPLY:

1.  To any liability which would otherwise be covered if the incident giving rise to the liability is the result of the wilful misconduct of the Assured as owner or operator of vessel(s) listed in Item 10 of the Declarations if within the privity or knowledge of the Assured.

2.  To any liability greater than that for which the Assured would have been liable had the Assured not failed or refused:

    (a)  to report the incident as required by law if the Responsible Party (as defined by the Act) knows or has reason to know of the incident;

    (b)  to provide all reasonable cooperation and assistance requested by a responsible public official in connection with removal activities or response activities under the National Contingency Plan;

        or

    (c)  without sufficient cause, to comply with an order issued under Subsection (c) or (e) of Section 1321 of the FWCPA or the IHSA.

3.  To any fine or penalty of any kind or nature whatsoever, any punitive damages, exemplary damages, or any additional damages resulting from the multiplication of compensatory damages, or any costs arising from or related to the criminal prosecution of the Assured.

4.  To any liability arising out of a nuclear incident in accordance with exclusion CL356, a copy of which is attached to this Insurance Policy.

5.  To any liability assumed by the Assured under any contract or agreement unless:

    (a)  prior agreement has been given by the Underwriters and the premium hereon adjusted as may be required by them,

        or

    (b)  such liability would have attached to the Assured even in the absence of such contract or agreement.

6.  To any liability for loss of life, bodily injury or illness of any person howsoever arising.

7.  To any liability for loss of or damage to cargo, equipment, or other property owned, leased or hired by the Assured.

8.  To Incineration vessels as defined in Section 9601 (38) of CERCLA.

9.  To any liability arising out of the carriage of Polychlorinated Biphenyl's (PCBs)

## III.    CERCLA WARRANTY

The Assured hereby warrants that the Assured does not select, within the meaning of CERCLA Section 9607(a)4, the site of disposal of any substance transported on the vessel(s) listed in Item 10 of the Declarations.

## IV. CONDITIONS

This Insurance Policy is subject to the following conditions:

1. Appeals

In the event the Assured elects not to appeal a judgement in excess of the Underlying Limits, Underwriters may elect to make such appeal at their own cost and expense and shall be liable for the taxable costs and disbursements or any additional interest incidental to such appeal; but in no event shall the liability of Underwriters exceed the relevant Limits of Liability set out in Item 2 of the Declarations plus the cost and expense of such Appeal plus any additional interest on the Underwriters' portion of the judgement only.

2. Application of Recoveries

All recoveries or payments recovered or received subsequent to a loss settlement under this Insurance Policy, after deduction of all recovery expenses, shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and Underwriters.

3. Assignment

Assignment of interest under this Insurance Policy shall not bind Underwriters unless and until their consent is endorsed hereon.

4. Attachment of Liability

Liability to pay under this Insurance Policy shall not attach unless and until the Assured has paid or has had paid on its behalf any sum set forth in Sections FIRST to SIXTH above in an amount which exceeds the Assured's Underlying Limits as set out in Item 3 of the Declarations.

5. Cancellation

This Insurance Policy may be cancelled by the Assured or by the Underwriters or their representatives as provided in Item 8 of the Declarations (the "Underwriters' Representatives" or "Representatives") by sending by registered mail, or facsimile, notice of cancellation to the other party stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. The mailing, or faxing of notice as aforesaid by Underwriters or their Representatives to the Assured at the address shown in Item 1 of the Declarations shall be sufficient proof of notice, and the coverage under this Insurance Policy with respect to the Assured shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice, or fax either by the Assured or by the Underwriters or their Representatives shall be equivalent to the sending of such notice by registered mail or facsimile

If this Insurance Policy shall be cancelled by the Assured, the Underwriters shall retain the customary short rate proportion of the premium for the period this Policy has been in force. If this Insurance Policy shall be cancelled by Underwriters, the Underwriters shall retain the pro-rata proportion of the premium for the period this Insurance Policy has been in force. Notice of cancellation by the Underwriters shall be effective whether or not the Underwriters have returned or tendered the return of any premium with such notice.

6. Defense

Underwriters shall not be called upon to assume the handling or control of the defense or settlement of any claim made against the Assured, but Underwriters shall have the right, but not the duty, to participate with the Assured in the defense and control of any claim which may be indemnifiable in whole or in part by the Insurance Policy.

7.  Insolvency

The insolvency, bankruptcy, receivership or any refusal or inability to pay of the Assured or any of its Insurers shall not operate to increase Underwriters' liability under this Insurance Policy.

In no event shall the Underwriters of this Insurance Policy assume any of the responsibilities or obligations of the Assured except as provided for in this Insurance Policy, or any of the responsibilities or obligations of any other insurer.

8.  Inspection and Investigation

Underwriters shall be permitted but are not obliged to inspect the Assured's property and operations at any time.

Neither Underwriters' right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Assured or others, to determine or warrant that such property or operations are adequate or safe.

Underwriters shall be permitted to investigate any discharge, release or threatened release reported to Underwriters or any claim made against the Assured. The Assured must advise the Underwriters or Underwriters' Representatives prior to incurring any sum set forth in Paragraph 13 of this Section.

Underwriters may examine and audit the Assured's books and records at any time as far as they relate to the subject matter of this Insurance Policy.

9.  Loss Payee

Any amount for which Underwriters are liable under this Insurance Policy shall be due and payable to the Assured as set out in Item 1 of the Declarations.

10. Notice to Underwriters

In the event of any incident which may result in a claim under this Insurance Policy the Assured shall immediately notify Underwriters and shall forward all information, communications, prices, pleadings or legal papers relating to such incident to Underwriters. Such notice must be reported to Underwriters in writing thirty (30) days after having become known to the Assured. All such notices, and all reports of discharge or substantial threat of discharge, release, or threatened release made to Underwriters, shall be by registered mail or facsimile to Underwriters' Representatives and shall state the date of receipt of such notices and reports by the Assured. A discharge, threat of discharge, release, or threatened release is deemed to be reported and a claim is deemed to be reported as of the date of receipt of such report or notice by said Representatives.

11. Other Insurance

In the event that there is other insurance which inures to the benefit of the Assured covering any loss, liability, cost or expense set forth in Sections FIRST to SIXTH, this Insurance Policy shall not respond until such other insurance is exhausted.

Nothing contained in this Insurance Policy shall be construed to make this Insurance Policy subject to the terms, conditions and limitations of any other insurance.

12. Premium

The premiums and losses under this Insurance Policy are payable in the currency stated in Item 5 of the Declarations. Payment of premium shall be made as stated in Item 6 of the Declarations.

13. Prevention of Claims

As soon as the Assured becomes aware of a discharge, or substantial threat of discharge, or release, or threatened release or receives a claim, the Assured shall promptly take all reasonable steps to prevent liability for any sum set forth in Sections FIRST through SIXTH. Underwriters agree to indemnify the Assured for all reasonable expenses incurred and agreed by Underwriters or Underwriters Representatives which are otherwise recoverable under this Policy.

14. Service of Suit (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

Notwithstanding any provision elsewhere in this Insurance Policy relating to jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of Underwriters' rights to seek removal remand or transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.

It is further agreed that the Assured may serve process upon Underwriters' representatives as provided in Item 7 of the Declarations and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

The right of the Assured to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account. For the purpose of suit as herein provided, the word "Assured" includes any mortgagee under a ship mortgage and any person succeeding to the rights of any such mortgagee.

The Underwriters' representative listed in Item 7 of the Declarations are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that subject to the right to seek removal remand or transfer of such suit to any other court of competent jurisdiction, they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office (the Officer), as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom said Officer is authorized to mail such process or a true copy thereof.

15. Subrogation

Where an amount is paid under this Insurance Policy, the Assured's rights of recovery against any other person or entity in respect of such amount, including but not limited to the Assured's rights under Sections 1008 and 1013 of the Act to recover from the Oil Spill Liability Trust Fund as defined in Section 1001(11) of the Act, shall be exclusively subrogated to Underwriters. Underwriters shall be relieved of liability under this Insurance Policy to the extent that this right of subrogation is impaired by any act of the Assured, unless such act is agreed to by Underwriters. In the event that the Assured commits any such act, Underwriters right to retain or collect any premium paid or due under this Insurance Policy shall not be affected.

Underwriters shall have full rights of subrogation against the Assured to the extent that liability is imposed on the Assured as a result of any act (of omission or commission) committed in it's capacity as owner or operator of any vessel not listed in Item 10 of the Declarations.

At Underwriters request the Assured will assist and cooperate in the exercise of Underwriters' rights for subrogation. Expenses necessary to the recovery of such amounts shall be apportioned between the interests concerned (including the Assured) in the ratio of their respective recoveries as finally settled.

## V. DEFINITIONS

1. Where the words "the act" are used in this Insurance Policy they shall mean the Oil Pollution Act of 1990, (Pub.L.No. 101-380, 104 Stat.484 (1990)) as amended, and all other terms and phrases used herein shall, unless otherwise stated, have the meaning given to them in the Act.

2. Where the word "CERCLA" is used in this Insurance Policy it shall mean the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. § 9601 **et seq.**).

3. Each of the following is an Assured under this Insurance Policy to the extent set forth below:

   (a) if the named Assured is designated in the Declarations as an individual, the person so designated;

   (b) if the named Assured is designated in the Declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

   (c) if the named Assured is designated in the Declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

4. The word "claim(s)" shall mean that part of any written demand received by the Assured for payment pursuant to Sections FIRST to FIFTH above.

03/99
LSW1220

## ENDORSEMENT NO. 1 TO THE LONDON U.S. VESSEL POLLUTION INSURANCE POLICY

Notwithstanding Section II of the Insurance Policy, for and in consideration of premium charged it is understood and agreed that with effect from inception, this Insurance Policy is amended to provide indemnity for:

Administrative Penalties arising under Section 1321(b)(6)(A)(i) of the FWPCA, imposed pursuant to Section 1321(b)(6)(B) of the FWPCA ("Administrative Penalty" or "Administrative Penalties"). Penalties imposed under any other Section of FWPCA, any other Federal Statute, or the laws of any state or subdivision thereof remain specifically excluded. Indemnification for defense costs incurred with the prior written consent of Underwriters in connection with this endorsement is also included hereunder, subject to the limits provided below.

Coverage is limited to 80% of any Administrative Penalties levied against the Assured. Underwriters maximum liability shall be $150,000 each and every incident or series of incidents arising out of one event, provided that in no event shall Underwriters indemnify the Assured for more than $150,000 during the term of this Insurance Policy, and provided further that each Administrative Penalty is subject always to the Assured's deductible or the Underlying Limits shown in Item 3 of the Declarations in respect of each incident, and the limitation that in the event that there is any other insurance which inures to the benefit of the Assured covering any Administrative Penalty as described above, this Insurance Policy shall not respond until such other insurance is exhausted.

03/99
LSW1220A

## ENDORSEMENT NO. 2 TO THE LONDON U.S. VESSEL POLLUTION INSURANCE POLICY

In consideration of premium charged, coverage under Sections THIRD through SIXTH of the policy is hereby extended to a discharge or substantial threat of discharge or release or threatened release into or upon waters other than U.S. waters.

All other terms, conditions, and limits of the policy remain in full force and effect and apply to the coverage provided by this endorsement.

03/99
LSW1220B

## ENDORSEMENT NO. 3 TO THE LONDON U.S. VESSEL POLLUTION INSURANCE POLICY

For and in consideration of additional premium charged, the Underwriters do hereby agree to indemnify the Assured for such amounts as the Assured shall (as owner or operator of the vessel(s) named in Item 10 of the Declarations) have become legally liable to pay and shall pay, by reason of or with respect to loss of life of, or bodily injury to, or illness of, any person other than the Assured or an employee of the Assured, provided such loss, injury, illness, damage or expense results directly from a discharge of oil or hazardous substance for which indemnification of liability is provided under the policy to which this endorsement is attached, or under any other endorsement thereto.

The limit of liability of the Underwriters under all insurances afforded by the policy, shall not be increased by this endorsement.

Except as expressly modified by the terms and conditions of this endorsement, all terms, conditions, and limits of the policy remain in full force and effect and apply to the coverage provided by this endorsement.

03/99
LSW1220C

## INSTITUTE RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith**

1.  In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

    1.1 ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

    1.2 the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

    1.3 any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

1/10/90
CL356 © Copyright The Institute of London Underwriters

# LONDON U.S. VESSEL POLLUTION INSURANCE POLICY
## DECLARATIONS

**Item 1.**   **Name and Address of Assured:**

   {Response}

**Item 2.**   **Limits of Liability:**

   **Limit in respect of each incident:**

   {Response}

**Item 3.**   **(a)  Deductible:**

   **in respect of each incident:**

   {Response}

   or

   **(b)  Underlying Limits:**

   {Response}

**Item 4.**   **Policy Period:**

   {Response}

**Item 5.**   **Currency:**

   {Response}

**Item 6.**   **Premium:**

   {Response}

**Item 7.**   **Service of Suit upon:**

   {Response}

**Item 8.**   **Notice of Loss to:**

   {Response}

**Item 9.**   **Operations:**

   {Response}

**Item 10.    Vessels:**

{Response}

# INSTITUTE PROTECTION AND INDEMNITY CLAUSES
## HULLS - TIME

This insurance is subject to English law and practice

## 1    PROTECTION AND INDEMNITY

1.1 The Underwriters agree to indemnify the Assured for any sum or sums paid by the Assured to any other person or persons by reason of the Assured becoming legally liable, as owner of the Vessel, for any claim, demand, damages and/or expenses, where such liability is in consequence of any of the following matters or things and arises from an accident or occurrence during the period of this insurance:

1.1.1    loss of or damage to any fixed or movable object or property or other thing or interest whatsoever, other than the Vessel, arising from any cause whatsoever in so far as such loss or damage is not covered by Clause 8 of the Institute Time Clauses Hulls 1/10/83 with 4/4ths substituted for 3/4ths.

1.1.2    any attempted or actual raising, removal or destruction of any fixed or movable object or property or other thing, including the wreck of the Vessel, or any neglect or failure to raise, remove or destroy the same

1.1.3    liability assumed by the Assured under contracts of customary towage for the purpose of entering or leaving port or manoeuvring within the port during the ordinary course of trading

1.1.4    loss of life, personal injury, illness or payments made for life salvage

1.1.5    liability under Clause 1(a) of the current Lloyd's Standard Form of Salvage Agreement in respect of unsuccessful, partially successful, or uncompleted services if and to the extent that the salvor's expenses plus the increment exceed any amount otherwise recoverable under the Agreement.

1.2 The Underwriters agree to indemnify the Assured for any of the following arising from an accident or occurrence during the period of this insurance:

1.2.1    the additional cost of fuel, insurance, wages, stores, provisions and port charges reasonably incurred solely for the purpose of landing from the Vessel sick or injured persons or stowaways, refugees, or persons saved at sea

1.2.2    additional expenses brought about by the outbreak of infectious disease on board the Vessel or ashore

1.2.3    fines imposed on the Vessel, on the Assured, or on any Master Officer crew member or agent of the Vessel who is reimbursed by the Assured, for any act or neglect or breach of any statute or regulation relating to the operation of the Vessel, provided that the Underwriters shall not be liable to indemnify the Assured for any fines which result from any act neglect failure or default of the Assured their agents or servants other than Master Officer or crew member

1.2.4    the expenses of the removal of the wreck of the Vessel from any place owned, leased or occupied by the Assured

1.2.5    legal costs incurred by the Assured, or which the Assured may be compelled to pay, in avoiding, minimising or contesting liability with the prior written consent of the Underwriters.

## EXCLUSIONS

1.3 Notwithstanding the provisions of Clauses 1.1 and 1.2 this Clause 1 does not cover any liability cost or expense arising in respect of:

1.3.1 any direct or indirect payment by the Assured under workmen's compensation or employers' liability acts and any other statutory or common law, general maritime law or other liability whatsoever in respect of accidents to or illness of workmen or any other persons employed in any capacity whatsoever by the Assured or others in on or about or in connection with the Vessel or her cargo materials or repairs

1.3.2 liability assumed by the Assured under agreement expressed or implied in respect of death or illness of or injury to any persons employed under a contract of service or apprenticeship by the other party to such agreement

1.3.3 punitive or exemplary damages, however described

1.3.4 cargo or other property carried, to be carried or which has been carried on board the Vessel but this Clause 1.3.4 shall not exclude any claim in respect of the extra cost of removing cargo from the wreck of the Vessel

1.3.5 property, owned by builders or repairers or for which they are responsible, which is on board the Vessel

1.3.6 liability arising under a contract or indemnity in respect of containers, equipment, fuel or other property on board the Vessel and which is owned or leased by the Assured

1.3.7 cash, negotiable instruments, precious metals or stones, valuables or objects of a rare or precious nature, belonging to persons on board the Vessel, or non-essential personal effects of any Master, Officer or crew member

1.3.8 fuel, insurance, wages, stores, provisions and port charges arising from delay to the Vessel while awaiting a substitute for any Master, Officer or crew member

1.3.9 fines or penalties arising from overloading or illegal fishing

1.3.10 pollution or contamination of any real or personal property or thing whatsoever (This Clause 1.3.10 shall not exclude any amount recoverable under Clause 1.1.5).

1.3.11 general average, sue and labour and salvage charges, salvage, and/or collision liability to any extent that they are not recoverable by reason of the agreed value and/or the amount insured in respect of the Vessel being inadequate

1.3.12 earthquake or volcanic eruption.

1.4 PROVIDED ALWAYS THAT

1.4.1 prompt notice must be given to the Underwriters of every casualty event or claim upon the Assured which may give rise to a claim hereunder and of every event or matter which may cause the Assured to incur liability costs or expense for which he may be insured hereunder

1.4.2 the Assured shall not admit liability for or settle any claim for which he may be insured hereunder without the prior written consent of the Underwriters.

## 2    LIMITS

2.1 Where the Assured or the Underwriters may or could have limited their liability the indemnity under this insurance in respect of such liability shall not exceed Underwriters' proportionate part of the amount of such limitation.

2.2 In no case shall the Underwriters' liability under this insurance exceed their proportionate part of the

amount insured hereunder in respect of each separate accident or occurrence or series of accidents arising out of the same event.

## 3  DEDUCTIBLE

3.1 Notwithstanding the provisions of Clause 1 no claim shall be payable under this insurance unless such claim, or the aggregate of all such claims arising out of each separate accident or occurrence, exceeds {Response} in which case this sum shall be deducted.

3.2 Excluding any interest comprised therein, recoveries against any claim which is subject to the above deductible shall be credited to the Underwriters in full to the extent of the sum by which the aggregate of the claim unreduced by any recoveries exceeds the above deductible.

3.3 Interest in recoveries shall be apportioned between the Assured and the Underwriters, taking into account the sums paid by the Underwriters and the dates when such payments were made, notwithstanding that by the addition of interest the Underwriters may receive a larger sum that they have paid.

## 4  NAVIGATION

The Vessel has leave to dock and undock, to go into graving dock, to sail or navigate with or without pilots, to go on trial trips and to assist and tow vessels or craft in distress, but it is warranted that the Vessel shall not be towed, except as is customary or when in need of assistance, or undertake towage or salvage services under a contract previously arranged by the Assured and/or Owners and/or Managers and/or Charterers without the prior written agreement of the Underwriters. This Clause 4 shall not exclude customary towage in connection with loading and discharging.

## 5  TERMINATION

This Clause 5 shall prevail notwithstanding any provision whether written typed or printed in this insurance inconsistent therewith.

Unless Underwriters agree to the contrary in writing, this insurance shall terminate automatically at the time of

5.1 change of the Classification Society of the Vessel, or change, suspension, discontinuance, withdrawal or expiry of her Class therein. However where such change, suspension, discontinuance or withdrawal of her Class has resulted from loss or damage covered by Clause 6 of the Institute Time Clauses - Hulls 1/10/83 or which would be covered by an insurance of the Vessel subject to current Institute War and Strikes Clauses Hulls - Time such automatic termination shall not operate

5.2 any change, voluntary or otherwise, in the ownership or flag, transfer to new management, or charter on a bareboat basis, or requisition for title or use of the Vessel. However, in the event of requisition for title or use without the prior execution of a written agreement by the Assured, such automatic termination shall occur fifteen days after such requisition whether the Vessel is in port or at sea.

## 6  BREACH OF WARRANTY

Held covered in case of any breach of warranty as to cargo, trade, locality, towage, salvage services or date of sailing, provided notice be given to the Underwriters immediately after receipt of advices and any amended terms of cover and any additional premium required by them be agreed.

## 7  ASSIGNMENT

No assignment of or interest in this insurance or in any moneys which may be or become payable thereunder is to be binding on or recognised by the Underwriters unless a dated notice of such assignment or interest signed by the Assured, and by the assignor in case of subsequent assignment, is endorsed on the Policy and the Policy with such endorsement is produced before payment of any claim or return of premium thereunder.

## 8   DUTY OF ASSURED

It is a condition of this insurance that the Assured and their servants and agents take such measures as may be reasonable for the purpose of averting or minimising a loss which would be recoverable under this insurance.

## 9   RETURNS FOR CANCELLATION

To return pro rata monthly net for each uncommenced month if this insurance be cancelled either by agreement or by the operation of Clause 5 provided that a total loss of the Vessel, whether by insured perils or otherwise, has not occurred during the period of this insurance or any extension thereof.

## 10   WAR, STRIKES, MALICIOUS ACTS AND NUCLEAR RISKS PARAMOUNT EXCLUSION

In no case shall this insurance cover liability cost or expense arising as a result of the operation of one or more of the following perils:

10.1    war civil war revolution rebellion insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power

10.2    capture seizure arrest restraint or detainment (barratry and piracy excepted), and the consequences thereof or any attempt thereat

10.3    derelict mines torpedoes bombs or other derelict weapons of war

10.4    strikers, locked-out workmen, or persons taking part in labour disturbances, riots or civil commotions

10.5    any terrorist or any person acting from a political motive

10.6    the use of any weapon of war, or the detonation of an explosive, by any person acting maliciously or from a political motive

10.7    any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

20/7/87
CL344  © Copyright The Institute of London Underwriters

# EXHIBIT "B"

DEPARTMENT OF TRANSPORTATION
U.S. COAST GUARD
CG-5586

## INSURANCE GUARANTY FURNISHED AS EVIDENCE OF FINANCIAL RESPONSIBILITY UNDER THE OIL POLLUTION ACT OF 1990 AND THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT, AS AMENDED

The undersigned insurer or insurers ("Insurer") hereby certifies that for purposes of complying with the financial responsibility provisions of the Oil Pollution Act of 1990 ("OPA 90") and the Comprehensive Environmental Response, Compensation, and Liability Act, as amended ("CERCLA"), (referred to collectively as the "Acts"), the vessel owners and operators ("Assured" or "Assureds") of each respective vessel named in the schedules below ("covered vessel") are insured by it against liability for costs and damages to which the Assureds may be subject under either section 1002 of OPA 90, as limited by section 1004(a), or section 107(a)(1) of CERCLA, as limited by sections 107(c)(1)(A) and (B), or both, in an amount equal to the total applicable amount determined in accordance with the Applicable Amount Table below, respecting each covered vessel.

The amount and scope of insurance coverage hereby provided by the Insurer is not conditioned or dependent in any way upon any contract, agreement, or understanding between an Assured and the Insurer. Coverage hereunder is for purposes of evidencing financial responsibility under each of the Acts, separately, at the levels in effect at the time of the incident(s), release(s) or threatened release(s) giving rise to claims.

_Mendes + Mount_, 
_____
(Name of Agent)

with offices at _750 Seventh Ave, NY, NY 10019_
_____,

is designated as the Insurer's agent in the United States for service of process for the purposes of this guaranty and for receipt of notices of designation and presentations of claims under the Acts. If the designated agent cannot be served due to death, disability, or unavailability, the Director, Coast Guard National Pollution Funds Center ("Center"), is the agent for these purposes.

The Insurer consents to be sued directly with respect to any claim, including any claim by right of subrogation, for costs and damages arising under section 1002 of OPA 90, as limited by section 1004(a), or section 107(a)(1) of CERCLA, as limited by sections 107(c)(1)(A) and (B), or both, against any Assured. However, in any direct action under OPA 90 the Insurer's liability per vessel per incident shall not exceed the amount determined under part I of the Applicable Amount Table below and, in any direct action under CERCLA, the Insurer's liability per vessel per release or threatened release

US000571

shall not exceed the amount determined under part II of the Applicable Amount Table below. The Insurer's obligation hereunder with respect to any one incident or release or threatened release shall be reduced by all payments or succession of payments for costs and damages, to one or more claimants, made by or on behalf of the Assured under OPA 90 or CERCLA or both, as applicable, for which the Assured is liable. The Insurer shall be entitled to invoke only the following rights and defenses in any direct action:

    (1) The incident, release, or threatened release was caused by the willful misconduct of the Assured.

    (2) Any defense that the Assured may raise under the Acts.

    (3) A defense relating to the amount of a claim or claims, filed in any action in any court or other proceeding, that exceeds the amount of this guaranty with respect to an incident or with respect to a release or threatened release.

    (4) A defense relating to the amount of a claim or claims that exceeds the amount of this guaranty, which amount is based on the gross tonnage of a covered vessel as entered on the vessel's International Tonnage Certificate or other official, applicable certificate of measurement, except where the guarantor knew or should have known that the applicable tonnage certificate was incorrect.

    (5) The claim is not one made under either of the Acts.

No more than four Insurers (including lead underwriters) may execute this guaranty. If more than one Insurer executes this guaranty, each Insurer binds itself jointly and severally for the purpose of allowing joint action or actions against any or all of the Insurers, and for all other purposes each Insurer is bound for the payment of sums only in accordance with the percentage of participation set forth opposite the name of the Insurer below. If no percentage of participation is indicated for an Insurer or Insurers, the liability of such Insurer or Insurers shall be joint and several for the total of the unspecified portions.

            S. J. Gargrave
           (Name of lead guarantor)

is designated as the lead guarantor having authority to bind all guarantors for actions of guarantors under the Acts, including but not limited to receipt of designation of source, advertisement of a designation, and receipt and settlement of claims (inapplicable if only one Insurer executes this guaranty).

The insurance evidenced by this guaranty shall be applicable only in relation to each incident, release, and threatened release occurring on or after the effective date and before the termination date of this guaranty and shall be applicable only in relation to each incident, release and threatened release giving rise to claims under section 1002 of OPA 90 or section 107(a)(1) of CERCLA, or both, with respect to any of the covered vessels.

CG-5586

2

US000572

The effective date of this guaranty for each covered vessel is the date the vessel is named in or added to the schedules below. For each covered vessel, the termination date of this guaranty is 30 days after the date of receipt by the Center of written notice that the Insurer has elected to terminate the insurance evidenced by this guaranty and has so notified the vessel operator identified on the schedule below.

Termination of this guaranty as to any covered vessel shall not affect the liability of the Insurer in connection with an incident, release, or threatened release occurring prior to the date the termination becomes effective.

If, during the currency of this guaranty, an Assured requests that an additional vessel be made subject to this guaranty and if the Insurer accedes to that request and so notifies the Center, then that vessel is considered included in the schedules below as a covered vessel.

Title 33 CFR part 138 governs this guaranty.

Effective date of coverage for vessels originally named in this guaranty: _23 October 2003 + after as declared_
(day/month/year)

_Lloyds of London_        _BTG # 2724_
(Name of Insurer)

_100%_
(Percentage of Participation)

_88 Leadenhall Street_
(Mailing Address)

_London   EC3A  3BP_

By: _(signature)_     _EPG, LLC_
_36 Mill Plain Road, Suite 410_
_Danbury CT 06811_
(Signature of Official Signing
On Behalf of Insurer)

_Lars Ø. Perkins. Vice President, EPG, LLC_
(Typed Name and Title of Signer)

[NOTE: For each additional Insurer, provide information in the same manner as for Insurer above.]

CG-5586

3

US000573



# APPLICABLE AMOUNT TABLE

(I)  Applicable Amount Under the Oil Pollution Act of 1990

| VESSEL TYPE | VESSEL'S GROSS TONS | APPLICABLE AMOUNT |
|---|---|---|
| **Tank vessel** (except a tank vessel on which no liquid hazardous material in bulk is being carried as cargo or cargo residue, and on which the only oil carried as cargo or cargo residue is an animal fat or vegetable oil, as those terms are used in section 2 of the Edible Oil Regulatory Reform Act (Pub. L. 104-55)) | Over 300 gross tons* but not to exceed 3,000 gross tons. | The greater of $2,000,000 or $1,200 per gross ton. |
| **Tank vessel** (except a tank vessel on which no liquid hazardous material in bulk is being carried as cargo or cargo residue, and on which the only oil carried as cargo or cargo residue is an animal fat or vegetable oil, as those terms are used in section 2 of the Edible Oil Regulatory Reform Act (Pub. L. 104-55)) | Over 3,000 gross tons. | The greater of $10,000,000 or $1,200 per gross ton. |
| **Vessel other than a tank vessel** (specified above) | Over 300 gross tons. * | The greater of $500,000 or $600 per gross ton. |

\* This minimum gross ton limit does not apply to any vessel using the waters of the U.S. Exclusive Economic Zone to transship or lighter oil destined for a place subject to the jurisdiction of the United States (as specified in 33 CFR 138.12(a)(1)).

CG-5586

4

US000574

(II) Applicable Amount Under the Comprehensive Environmental Response, Compensation, and Liability Act, as Amended.

| VESSEL TYPE | APPLICABLE AMOUNT |
|-------------|-------------------|
| Vessel over 300 gross tons carrying hazardous substance as cargo | The greater of $5,000,000 or $300 per gross ton. |
| Any other vessel over 300 gross tons | The greater of $500,000 or $300 per gross ton. |

(III)  Total Applicable Amount = Maximum applicable amount calculated under (I) plus maximum applicable amount calculated under (II).

US000575

# SCHEDULE OF VESSELS

| VESSEL | GROSS TONS | ASSURED OPERATOR |
|--------|------------|------------------|

As Declared

Insurance Guaranty Form CG-5586  No._____

6

US000576

# SCHEDULE OF VESSELS
## ADDED TO ABOVE VESSELS

| VESSEL | GROSS TONS | ASSURED OPERATOR | DATE ADDED |
|--------|-----------|------------------|------------|

As Declared

Insurance Guaranty Form CG-5586 No._____

7

US000577