

**FILED**
DISTRICT COURT OF GUAM
MAR 13 2007
MARY L.M. MORAN
CLERK OF COURT

LAW OFFICE
THOMAS MCKEE TARPLEY
A Professional Corporation
Bank of Hawaii Building
134 Soledad Avenue, Suite 402
Hagatna, Guam 96910
Telephone: (671) 472-1539
Facsimile: (671) 472-4526
Electronic mail: tarpley@guam.net

FORREST BOOTH (Cal. Bar No. 74166) (Admitted *pro hac vice*)
RYAN C. DONLON (Cal. Bar No. 229292) (Admitted *pro hac vice*)
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439
Electronic mail: fb@severson.com
Electronic mail: rcd@severson.com

Attorneys for Defendant, Cross-Claimant and
Counterclaimant S.J. GARGRAVE SYNDICATE 2724

## IN THE DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>INCHAPE SHIPPING SERVICES GUAM, LLC,<br><br>Plaintiff in Intervention,<br><br>vs.<br><br>MARWAN SHIPPING & TRADING CO., FIVE SEAS SHIPPING CO., LLC, and S.J. GARGRAVE SYNDICATE 2724, *in personam*,<br><br>Defendants.<br><br>AND CROSSCLAIMS, COUNTERCLAIMS, AND CLAIM IN INTERVENTION | Case No.: 1:06-CV-00011<br><br>**REPLY OF S.J. GARGRAVE SYNDICATE 2724 TO OPPOSITION OF MARWAN SHIPPING & TRADING CO., LLC AND FIVE SEAS SHIPPING CO., LLC RE: MOTION TO DISMISS/STAY CROSSCLAIM**<br><br>Accompanying Papers: Table of Additional Foreign Authorities<br><br>Date: May 14, 2007[1]<br>Time: 1:30 p.m.<br>Judge: Hon. Frances M. Tydingco-Gatewood<br><br>Complaint Filed: April 19, 2006<br>Trial Date: May 12, 2008 |

---

[1] Hearing date set pursuant to agreement of parties and subject to Court's approval.

11620/0002/618638.1

Case No. 1:06-CV-00011
REPLY BRIEF RE: MOTION TO DISMISS/STAY CROSSCLAI


## I. INTRODUCTION

Cross-defendant S.J. GARGRAVE SYNDICATE 2724 ("Gargrave") submits the following points and authorities in support of its motion to dismiss or stay the crossclaim of MARWAN SHIPPING & TRADING CO., LLC ("Marwan") and FIVE SEAS SHIPPING CO., LLC ("Five Seas"), and in reply to their opposition. Marwan's and Five Seas' opposition misconstrues the applicable policy terms, confuses Gargrave's insurance obligations with its Oil Pollution Act ("OPA 90") COFR financial guarantee, and relies on inapposite law. The Court should, Gargrave respectfully submits, dismiss or stay the crossclaim based on the unambiguous forum selection and arbitration clauses.

## II. POINTS & AUTHORITIES

### A. Contract Interpretation is a Question of Law for the Court.

Though it is not entirely clear, it appears that Marwan and Five Seas argue that interpretation of the contractual provisions now before the Court presents a factual determination. They state: "Discovery is ongoing with regard to the parties' negotiation and execution of the Cover Note, the OPA insurance policy, and the COFR guaranty; however, absent such relevant information, the cannons [sic] of contract law can still guide this Court's interpretation of the contract." (Opp'n, 9:6-9.) They have it backwards. Contract interpretation turns primarily on the objective manifestations of the parties, and ambiguity *vel non* of a contract is a question of law for the court. (*Reliance Marine Ins. Co. v. Duder* [1913] 1 KB 265, 273 (Court of Appeal); *International Brotherhood of Boilermakers v. Local Lodge D11*, 858 F.2d 1559, 1561 (11th Cir. 1988).) To the extent that facts outside the contract are pertinent, which here they are not, it requires but "an expeditious and summary hearing, with only restricted inquiry into factual issues." (*Moses H. Cone Mem. Hosp. v. Mercury Const. Corp*, 460 U.S. 1, 22 (1976).)

The general canons of construction to which Marwan and Five Seas allude are unavailing. Initially, they rely exclusively on United States law, which does not apply because the parties chose English law to apply to this insurance. Marwan and Five Seas, United Arab Emiritian companies, meekly suggest that the English choice of law provision is "ill-defined," but provide

- 1 -

no elaboration for that bald conclusion. (Opp'n, 8:9-11.) As such, they do not seriously contend that anything but English law governs as between themselves and the English underwriters.

Even if the Court looks to American canons for guidance, which it need not, they do not advance Marwan's and Five Seas' argument. The general rule that coverage ambiguities are resolved in the insured's favor ("*contra proferentem*") is out of place here. (Opp'n, 8:16-22.) The arbitration and choice of law/forum provisions are not coverage determinative[2], which, as a matter of public policy, is the rationale for the aforesaid presumption. (*Alberto-Culver Co. v. Aon Corp.*, 351 Ill.App.3d 123, 132 (2004) ("*Alberto-Culver*"); *citing* 5 Corbin on Contracts (Lexis 1998) ("Corbin"), § 24.27.) Since they do not determine coverage, there is no favoritism to be presumed.[3] It is also a rule of "last resort," and it does not apply where the insured is endowed with comparable bargaining power and the contract is not one of adhesion. (Corbin, § 24.27 (2006 Suppl.); citing *Alberto-Culver*, 351 Ill.App. 123; see also *Eagle Leasing Corp. v. Hartford Ins. Co.*, 540 F.2d 1257, 1261, fn. 4, 1978 AMC 604 (5th Cir. 1976); citing *Canton Ins. Office, Ltd. v. Independent Transp. Co.*, 217 F. 213, 214 (9th Cir. 1914) ("*Canton*").) Here, the applicable provisions of the Cover Note were agreed upon by Ropner, a Lloyd's broker, and Navigator's, Marwan's and Five Seas' P&I hull insurer, acting on their behalf. (Cover Note, p. 1.) "In instances where the policy is most often prepared in accordance with a slip, the wording of which is devised initially by the broker (who is considered to be the agent of the assured), it would appear that the 'proferentes' should be the assured rather than the assurer." (Alex L. Parks, *The Law and Practice of Marine Insurance and Average* (Cornell Maritime Press, 1987), pp. 123-124.) Finally, a commercial contract is interpreted in accordance with a commercial understanding, not that of a "layperson." (*Canton Ins*, 217 F. at 214; *Polpen Shipping Co., Ltd. v.*

---

[2] Indeed, such provisions, as openly conceded in Marwan and Five Seas' opposition, are resolved by English and American courts in favor of arbitration. (Opp'n, 9:1.)

[3] Nor is there any evidence supporting counsel's improper assertion that the arbitration and jurisdiction provisions were "solely for Gargrave's benefit." (Opp'n, 10:14-17.) There are numerous reasons why the parties could have opted for English law and courts to preside, not the least of which is that Marwan and/or Five Seas have (or had) representatives in London, that England is the fountainhead of marine insurance, and that English courts are reliable, predictable well-versed in these issues (which cannot be said for courts or arbitrators in Sharjah, UAE).

- 2 -

11620/0002/618638.1

Case No. 1:06-CV-00011
REPLY BRIEF RE: MOTION TO DISMISS/STAY CROSSCLAIM
Case 1:06-cv-00011 Document 115 Filed 03/13/2007 Page 3 of 12

*Commercial Union Assur. Co. Ltd.* [1943] K.B. 161, 164.) Here, international shipowners from the UAE which own and operate numerous ships are at least equally sophisticated as their London insurers.

**B.     The Cover Note Clearly Provides for English Jurisdiction and Arbitration.**

The Cover Note manifests the parties' clear intent to arbitrate any dispute arising from the insurance relationship, and to submit to English jurisdiction. The Insurance Policy does not evidence a contrary intent.

The Cover Note says that "[t]his insurance shall be governed by and construed in accordance with the laws of England and the exclusive jurisdiction of the English courts. The seat of arbitration shall be London." (Sunley Decl., Ex. D, p. 4.) Ignoring the express language of the Arbitration Act 1996 of England ("Arbitration Act") and the case law that is directly on point, Marwan and Five Seas contend that "[t]he English court would likely conclude that the reference to arbitration was simply a drafting error when examined in the context of the clause as a whole." (Opp'n, 11:16-17.) First, such conjecture is unnecessary because there is ample contrary authority on point. Second, pursuant to that authority, Marwan and Five Seas are plainly wrong.

In agreeing that "[t]he seat of arbitration shall be London," the parties parroted the Arbitration Act, which applies "where the seat of the arbitration is in England." (Arbitration Act, § 2.) "'Seat of arbitration' means the juridical seat of the arbitration designated (a) by the parties to the arbitration agreement." (Arbitration Act, § 3.) Thus, choosing the "seat of arbitration" is not merely a coincidental geographical reference, as Marwan and Five Seas now contend. (Opp'n, 11:12-16.) Rather, it directly invokes the English Arbitration Act.

Marwan and Five Seas do correctly express English law when they acknowledge that after a textual and contextual analysis of a contract, courts may consider "business commonsense," otherwise known as custom and usage. (Opp'n, 11:4-7.) But Marwan and Five Seas then forget, or purposefully omit, the inescapable English cases which found, on facts similar to the ones at bar, binding arbitration provisions. (*Mangistaumunaigaz Oil Prod. Ass'n v. United World Trade Inc.* [1995] 1 Lloyd's Rep. 617, 621 (Queen's Bench Div., Comm. Court)

- 3 -

("*Mangistaumunaigaz*") (and cases cited therein).) Instead, they rely on what they assert an English court would "likely conclude." (Opp'n, 11:16.) Published opinions of English appellate courts, which consider "commercial sense" and recognize that a contrary interpretation would "strain" it, offer more compelling authority than Marwan/Five Seas' supposition. (*Ibid.*) They dictate that this arbitration clause must be enforced.

Undeterred, Marwan and Five Seas argue that because the relevant clause "states that 'this insurance' shall be subject to the jurisdiction of the English courts, but does not make any reference to the parties or their disputes ... the scope of the provision [is left] undefined" and is therefore ambiguous (Opp'n, 7:10-12.) Again, Marwan and Five Seas' argument finds no comfort in the law, which provides that "[i]n English law, an agreement to arbitrate need be in no particular form; on the contrary, an arbitration agreement may be in a most summary form, tersely expressed. [Citation.]" (*Mangistaumunaigaz*, 1 Lloyd's Rep. at 620.) Besides, the Cover Note clearly defines the scope of arbitration: it is commensurate with the insurance. Thus, any insurance-based claim, such as the crossclaim herein, obviously implicates these provisions.

Marwan and Five Seas next contend that "the clause Gargrave cites is internally unclear. ... [It] purports to grant exclusive jurisdiction to the English courts while at the same time making reference to arbitration." (Opp'n, 6:11-14) This argument is a *non sequitur*. These provisions are perfectly consistent. First, there is no mention of full and complete "judicial resolution" by the English courts, as Marwan and Five Seas' tell the Court. (Opp'n, 9:13-14.) They made that up. Here is why: notwithstanding an agreement to arbitrate, there are numerous occasions in which arbitrating parties may require court intervention, including the appointment or removal of arbitrators, the collection of evidence, the enforcement of an award, appeal of a point of law, etc.[4]

---

[4] For a non-exhaustive list of situations in which English courts involve themselves in private arbitration, *see* Arbitration Act, §§ 12 ("Power of court to extend time for beginning arbitral proceedings"), 16 ("Procedure for appointment of arbitrators"), 17(3) ("Power in case of default to appoint sole arbitrator"), 18 ("Failure to appoint procedure"), 19 ("Court to have regard to agreed qualifications"), 42 ("Enforcement of peremptory orders of tribunal"), 43 ("Securing the attendance of witnesses"), 44 ("Court powers exercisable in support of arbitral proceedings"), 45 ("Determination of preliminary point of law"), 66 ("Enforcement of the award"), 67 ("Challenging the award: substantive jurisdiction"), 68 ("Challenging the award: serious irregularity"), 69 ("Appeal on point of law"), 71 ("Challenge or appeal: effect of order of court").

- 4 -

There is absolutely no inconsistency or ambiguity in contemporaneously opting for both English court jurisdiction and English arbitration; each have a defined role.

C. **The Insurance Policy Does Not Alter the Provisions of the Cover Note.**

Marwan and Five Seas erroneously posit that the Cover Note and Insurance Policy form are inconsistent due to the "service of suit" provision in the latter, thus creating an ambiguity. But the service of suit provision is immaterial to the arbitration and choice of forum provisions. First, it only applies "in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder." (Insurance Policy, § 14.) Gargrave's policy is one of indemnity, not liability. Gargrave's "[l]iability to pay under this Insurance Policy shall not attach unless and until the Assured has paid or has had paid on its behalf any sum set forth in" the Insuring Agreement section." (Insurance Policy, § 4.) "Underwriters shall not be called upon to assume the handling or control of the defense or settlement of any claim made against the Assured." (Insurance Policy, § 6.) This is a pure indemnity policy, under which Gargrave must indemnify Marwan only after Marwan has paid something. (*See Weeks v. Beryl Shipping, Inc.*, 845 F.2d 304, 306 (11th Cir. 1988) (distinguishing "indemnity" and "liability" insurance policies).) Because the service of suit clause is predicated upon Marwan's actual payment of monies in satisfaction of liability for insured risks, which they have not done as yet, the condition precedent of the service of suit clause is not met.

Second, even if the service of suit provision was material, there is no tension between it and the parties' agreement to arbitrate in London under the watch of English courts. Accepting service of suit within the United States does not mean that Gargrave submitted to the exclusive jurisdiction of any particular United States court for all purposes. This reading is confirmed by the second clause of the service of suit section. "Notwithstanding any provision elsewhere in this Insurance Policy relating to jurisdiction ... nothing in this clause constitutes or should be understood to constitute a waiver of Underwriters' rights to seek removal remand or transfer of any suit *to any other court of competent jurisdiction* as permitted by the laws of the United States of America or any state therein." (Insurance Policy, § 14 (italics added).) Similarly, Gargrave's duty to make a "general appearance" is specifically "subject to the right to seek removal remand

- 5 -

or transfer." In sum, even if Gargrave agreed to accept service in the United States, it specifically retained the right to remove, remand or transfer the action to England, etc., as United States law would permit. (*Volt Information Sciences, Inc. v. Board of Trustees of Stanford*, 489 U.S. 468, 476 (1989) ("*Volt*").)

Marwan and Five Seas also argue that because the risks against which the policy insures are OPA 90-based, Gargrave must have contemplated and accepted that it would have to defend itself in a United States court. Marwan and Five Seas are confusing Gargrave's statutory amenability to direct suit by the United States pursuant to its COFR guarantee (33 U.S.C. § 2716(f)), which it has already answered, with Gargrave's position as Marwan's insurer. Gargrave undertook two separate obligations, supported by the payment of separate premiums: the COFR guarantee and the policy of pollution insurance. A suit based on the insurance policy (i.e., this crossclaim), need not necessarily be prosecuted in the United States. It is a simple breach of marine insurance contract/bad faith claim, with which English courts have generations, even centuries, of experience. Notwithstanding Marwan and Five Seas' "unvarying assumptions," which unlike the choice of arbitration/forum provisions are not part of any contract, the fact that OPA 90 liability can arise only in United States territorial waters is of no moment whatsoever to the proper venue of any insurance litigation. (Opp'n, 10:6-8.) Parties can chose another venue that suits them better, regardless of the provenance of the action. The Insurance Policy admits to no ambiguity.

Even if the Insurance Policy did conflict with the choice of forum and arbitration provisions, which it does not, the ambiguity must be resolved in favor of arbitration. The strong public policy favoring arbitration has already been discussed, and will not be restated here. More than that, the American and English canons of construction dictate that typewritten modifications to a marine insurance agreement, such as those appearing in the Cover Note, prevail over a form policy.[5]

---

[5] Notably, in pleading the existence of the insurance, Marwan and Five Seas' refer to the Cover Note (which contains the arbitration provision), not the Insurance Policy. (Crossclaim, ¶¶ 6-7.)

- 6 -

11620/0002/618638.1
Case No. 1:06-CV-00011
REPLY BRIEF RE: MOTION TO DISMISS/STAY CROSSCLAIM
Case 1:06-cv-00011    Document 115    Filed 03/13/2007    Page 7 of 12

The Insurance Policy is EPG's form pollution insurance policy, which anyone can print off of EPG's website.[6] English and United States law recognize that such contracts of adhesion yield to typewritten modifications where there is a conflict. "[T]he practice of mercantile men of writing into their printed forms the particular terms by which they desire to describe and limit the risk intended to be insured against, without striking out the printed words which may be applicable to a larger or different contract, is too well known, and has been too constantly recognised in Courts of Law, to permit of any such [contrary] conclusion." (*Dudgeon v. Pembroke* (1876-1877) L.R. 2 App. Cas. 284, 293 (House of Lords).) American admiralty courts are in accord. "If there be any inconsistency between the written provision of the policy and the printed portions thereof, the written language must prevail." (*Fireman's Fund Ins. Co. v. Globe Nav. Co.*, 236 F. 618, 633 (9th Cir. 1916).) "In this situation the familiar rule is that the typewritten portion of the policy controls the printed form." (*Independence Indem. Co. v. W.J. Jones & Son, Inc.*, 64 F.2d 312, 316 (9th Cir. 1933) ("*W.J. Jones*"); citing *Bluefields Fruit & S.S. Co. v. Western Assurance Co. of Toronto*, 265 F. 221 (5th Cir. 1920); *Marine Ins. Co., Ltd. v. McLanahan*, 290 F. 685 (4th Cir. 1923).) Even where there exists "a flat contradiction between the two provisions of the policy," courts will apply the rule "giving dominant effect to the typewritten provisions of the policy." (*W.J. Jones*, 64 F.2d at 316.) "It is most unusual to find that the superfluous or inapplicable words have been struck out of the printed form." (*Western Assur. Co. of Toronto v. Poole* [1903] 1 K.B. 376; citing *Cunard S.S. v. Marten* [1903] 2 K.B.511; see also *Connors Marine v. Northwestern Fire*, 88 F.2d 637, 638 (2nd Cir. 1937).) "Superfluity does not vitiate." (20 Guam Code, § 15129; Cal. Civ. Code, § 3537). Here, the manuscripted English law and arbitration provisions must trump the printed form's service of suit clause.

**D.    The Arbitration and Choice of Forum/Law Provisions Are Separable.**

Marwan and Five Seas parenthetically argue that since "Gargrave itself challenges the validity and enforceability of the insurance policy that contains the English jurisdiction clause it

---

[6] *See* http://opainsurance.com/POLICYFORM.PDF; http://opainsurance.com/products.htm.

now replies upon," "it cannot ... seek to selectively enforce a provisions [sic] contained within these agreements." (Opp'n, 7:3-4 and fn. 2.) In support, Marwan and Five Seas refer this Court to an entirely inapposite case.[7] But the English Crown and the United States Supreme Court have resolved that an arbitration clause is separable from the rest of a contract, and Gargrave's challenge to the enforceability of the latter does not vitiate the former. "Unless otherwise agreed by the parties, an arbitration agreement which forms or was intended to form part of another agreement (whether or not in writing) shall not be regarded as invalid, or did not come into existence or has become ineffective, and it shall for that purpose be treated as a distinct agreement." (Arbitration Act (England) of 1996, § 7 ("Separability of arbitration agreement"); see also *Habour Assurance Co. (UK) Ltd v. Kansa Gen. Int'l Ins. Co. Ltd.* [1993] 1 Lloyd's Rep. 455, 456, 459-461 (Court of Appeal, Civil Div).) The same rule of separability obtains under United States law. (*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967).) Gargrave disputes its obligation to pay a specific claim under the insuring agreement, not the enforceability of the separable arbitration clause. This crossclaim is amenable to arbitration. (*Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 214-215, 218 (5th Cir. 2003).)

E. **Gargrave Has Not Waived Its Right to Enforce Arbitration.**

Marwan and Five Seas argue that Gargrave waived its right under the arbitration provision by bringing crossclaims against them with regard to the claims of the U.S. government. They again confuse the Insurance Policy, on the one hand, and the COFR guarantee, on the other. As explained in Gargrave's moving papers, they are separate, and Gargrave's original crossclaims are based *solely* on its alleged position as COFR guarantor. The Insurance Policy is *not* a COFR guarantee. The very first sentence of the Insurance Policy reads:

> This Insurance (the "Insurance Policy") does not constitute evidence of financial responsibility under the Oil Pollution Act of 1990 (Pub.L.No. 101-380, 104 Stat. 484 (1990)), as amended (the "Act") or any similar Federal or State Law, and it is

---

[7] In *Evolution Online Sys., Inc. v. Koninklijke PTT Nederland NV*, 145 F.3d 505, 509 (2nd Cir. 1998), the issue was the very existence of the contract, not the enforceability of an arbitration clause in a contested, though existing contract.

- 8 -

a condition of this Insurance Policy that it shall not be submitted to the United
States Coast Guard or any other Federal or State Agency as evidence of financial
responsibility. The Underwriters do not [hereby] consent to be Guarantors.

Yet, perhaps due to this fundamental misconception, Marwan and Five Seas repeatedly contend that Gargrave originally instituted its part of the proceedings based on the Insurance Policy. That is simply and demonstrably untrue; it was the COFR guarantee.[8] (*See* Gargrave's Answer, Counterclaim, and Crossclaims (filed Jul. 12, 2006), ¶¶ 6-27.) Gargrave did not have a reason to invoke the arbitration provision or move for a stay until Marwan and Five Seas, for the first time in this action, implicated the Insurance Policy and Cover Note through their crossclaims, whereupon the first thing Gargrave did was make the present motion for dismissal or a stay, thus timely preserving its contractual rights. Heretofore, Gargrave has certainly not "taken any step in th[e]se proceedings to answer the substantive claim" of Marwan and Five Seas arising from the Insurance Policy which could have constituted a waiver of its right to arbitrate. (Arbitration Act, § 9(3).)

### F. There is No Reason to Ignore the Express Intent of the Parties to Arbitrate.

Marwan and Five Seas' fail to state any valid reason (or even the right country's law) in support for ignoring the contract to which they consented, much less make the "compelling," "countervailing," "strong showing" that is necessary to set aside an arbitration provision. (*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 15 (1972) ("*Bremen*").) "There are," on the other hand, "compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power ... should be given its full effect." (*Id.*, at 12-13.) Marwan and Five Seas complain that the "nature of the underlying litigation" militates against application of the London arbitration/forum selection clauses to which they freely assented. (Opp'n, 12:22-24.) But where the potential for litigating/arbitrating in the chosen forum was "foreseeable at the time of contracting," there is nothing "unfair, unjust, or

---

[8] Similarly untrue is Marwan and Five Seas' contention that Gargrave sought a "substantive declaration regarding the extent and nature of its obligations under the ... underlying insurance contract." (Opp'n, 12:11-13.) Gargrave's claim for declaratory relief is directed to the *United States*, not Marwan and Gargrave. (Gargrave Crossclaim, ¶¶ 26-27.) It would have no preclusive effect against them. (*See also* Opp'n, 4:6-7, 23-24.)

- 9 -

11620/0002/618638.1

Case No. 1:06-CV-00011
REPLY BRIEF RE: MOTION TO DISMISS/STAY CROSSCLAIM
Case 1:06-cv-00011   Document 115   Filed 03/13/2007   Page 10 of 12

unreasonable to hold that party to his bargain." (*Bremen*, 407 U.S. at 18-19.) Indeed, London is geographically closer to the UAE than Guam and at least equally convenient.

Marwan and Five Seas' argument that having their crossclaim heard by an English arbitrator would put them in jeopardy of inconsistent judgments and deprive them of their day in court reveals, once again, their obfuscation of the Insurance Policy and the COFR obligations, as well as the fact that this is an indemnity policy. The two potential adjudicators (this Court, on the one hand, and English arbitrators, on the other) would be determining two different issues entirely. It would remain this Court's prerogative to determine under U.S. law all parties' rights and duties under the COFR guarantee and OPA 90. Only after the Court's determination of liability *vel non* and actual payment of monies owed will the issue of duties under the Insurance Policy and English law even ripen. The problem, really, is that Marwan and Five Seas' crossclaim is premature. Marwan and Five Seas' rights' to indemnity, if any, have not yet matured because they have yet to pay anything as a result of a determination of their liability. As such, their crossclaim is not compulsory, as they contend. (Fed.R.Civ.Pro., rule 13(a).)

Finally, the issue of judicial economy regarding the courts is not persuasive. The insurance issues would be put to an arbitrator, paid by the parties, not the taxpayers. The cases that Marwan and Five Seas cite do not, revealingly, even involve arbitration. Marwan and Five Seas knew, or should have known, at the time of contracting that an OPA 90 claim by the United States would necessary be brought in the United States, but that in order to enforce their alleged indemnity rights *under the Insurance Policy*, following a determination of liability and their payment of monies therefore, they will need to avail themselves of English arbitration.

### III. CONCLUSION

Marwan and Five Seas assert their claims in the wrong venue. Gargrave respectfully moves this Court to dismiss or stay this crossclaim in favor of arbitration in London.

DATED: March 13, 2007

THOMAS M. TARPLEY, JR., P.C.

By: _____
Thomas M. Tarpley, Jr.

Attorneys for S.J. GARGRAVE SYNDICATE

- 10 -

# CERTIFICATE OF SERVICE

I, Dorothea Quichocho, hereby certify pursuant to Rule 5(d) Fed. R. Civ. P. that on March 13, 2007, I caused to be served true and correct copies of the **REPLY OF S.J. GARGRAVE SYNDICATE 2724 TO OPPOSITION OF MARWAN SHIPPING & TRADING CO., LLC AND FIVE SEAS SHIPPING CO., LLC RE: MOTION TO DISMISS/STAY CROSSCLAIM** and the **TABLE OF ADDITIONAL FOREIGN AUTHORITIES IN SUPPORT OF REPLY TO OPPOSITION OF MARWAN SHIPPING & TRADING CO, LLC AND FIVE SEAS SHIPPING CO, LLC RE: MOTION TO DISMISS/STAY CROSSCLAIMS**, to the following:

R. Michael Underhill, Esq.
Attorney in Charge
c/o Mike W. Schwab, Esq.
OFFICE OF THE UNITED STATES ATTORNEY
108 Hernan Cortez Avenue, Suite 500
Hagatna, Guam 96910
*Attorneys for Plaintiff and Counterdefendant United States of America*

John E.D. Powell, Esq.
c/o Lawrence J. Teker, Esq.
TEKER TORRES & TEKER, P.C.
Suite 2-A, 130 Aspinall Avenue
Hagatna 96910-5018, Guam
*Attorneys for Defendants and Cross-Defendants Marwan Shipping & Trading Co. and Five Seas Shipping Co., LLC*

David P. Ledger, Esq.
Elyze J. McDonald, Esq.
CARLSMITH BALL LLP
Bank of Hawaii Building
Suite 401
134 West Soledad Avenue
Hagatna, Guam 96910
*Attorneys for Intervenor Inchcape Shipping Services Guam LLC*

Dated this 13 day of March, 2007.

DOROTHEA QUICHOCHO