LAWRENCE J. TEKER
**TEKER TORRES & TEKER, P.C.**
Suite 2-A, 130 Aspinall Avenue
Hagatna 96910-5018, Guam
Telephone: (671) 477-9891
Facsimile: (671) 472-2601

John E.D. Powell, WSBA #12941
**CAIRNCROSS & HEMPELMANN, PS**
524 Second Avenue, Suite 500
Seattle WA 98104
Telephone:  (206) 587-0700
Facsimile:  (206) 587-2308

Attorneys for Defendants *Marwan Shipping*
*& Trading, Five Seas Shipping Co., LLC,*
*and Al-Buhaira National Insurance Co.*

**FILED**
DISTRICT COURT OF GUAM
APR - 6 2007
MARY L.M. MORAN
CLERK OF COURT

UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

UNITED STATES OF AMERICA,

                    Plaintiff,

        v.

MARWAN SHIPPING & TRADING CO.,
FIVE SEAS SHIPPING CO., LLC AND S.J.
GARGRAVE SYNDICATE 2724, IN
PERSONAM, NAVIGATORS PROTECTION
& INDEMNITY, AND AL-BUHAIRA
NATIONAL INSURANCE COMPANY,

                    Defendants

AND CROSS-CLAIMS, COUNTERCLAIMS,
THIRD-PARTY COMPLAINT, AND CLAIM
IN INTERVENTION.

NO.  CIV06-00011

SUPPLEMENTAL DECLARATION OF
JOHN E.D. POWELL IN OPPOSITION TO
GARGRAVE SYNDICATE 2724'S MOTION
TO DISMISS CROSS-CLAIM OR
ALTERNATIVELY TO STAY THE CROSS-
CLAIM

Complaint Date:  April 19, 2006
Trial Date: Not set

I, John E.D. Powell, declare as follows:

1.  I am counsel for Defendants and Cross-claimants Marwan Shipping & Trading
Company and Five Seas Shipping Company, LLC (collectively, "Marwan") and Al-Buhaira
National Insurance Company in the above-captioned matter.  I am admitted *pro hac vice* to

DECLARATION OF JOHN E.D. POWELL
CAUSE NO. CIV06-00011 - 1

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

ORIGINAL

practice before this Court. I am over the age of 18 years and have personal knowledge of the facts set forth in this declaration.

2. I am submitting this declaration in an effort to correct several glaring mis-statements of law and fact that have been asserted by Gargrave in its Reply Memorandum in Support of its Motion to Dismiss. These misrepresentations and omissions present a false and misleading picture to this Court and, as a result, threaten the integrity of this Court's decision on the pending Motion to Dismiss.

3. I took the deposition of Stephen Gargrave in London, England on Wednesday, March 7 and Thursday, March 8, 2007. Mr. Gargrave was the lead underwriter of Gargrave Syndicate 2724 in August 2004 at the time Marwan obtained the OPA Insurance Policy and COFR guaranty at issue in this case. Gargrave Deposition, p. 14:16-15:20. Because this deposition was conducted after the filing deadline for Marwan's Response to Gargrave's Motion, I could not reference or append excerpts from the transcript of that deposition to my initial declaration. I have since obtained the transcript of Mr. Gargrave's examination. Attached hereto as Exhibit A is a true and correct copy of several relevant excerpts. It is urgent that these excerpts be considered by the Court because they contradict and undermine key representations made by Gargrave in its Motion to Dismiss and supporting Reply.

4. The transcript of Mr. Gargrave clearly establishes that despite the movant's assertions in its' Motion to Dismiss, the OPA Insurance Policy was not "a freely negotiated private international agreement." Given the urgency with which this insurance was required by the AJMAN 2, the OPA Insurance Coverage was procured over a period of just a few days. The OPA Insurance Policy (one of Lloyd's standard forms (LSW 1220)), and the Cover Note were never sent to, much less reviewed by, either the underwriter or the assured. According to testimony of the Ropner Brokers, the only terms of the insurance that were discussed by anyone, were discussed Ropner (the agent of the Underwriters ) and Navigators (the P&I insurer for the AJMAN 2 who was not the agent of anyone. The terms discussed by these two parties)

DECLARATION OF JOHN E.D. POWELL
CAUSE NO. CIV06-00011 - 2

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

Case 1:06-cv-00011    Document 122    Filed 04/06/2007    Page 2 of 28

regarding the OPA Insurance Coverage were the policy limits, the type of insurance needed, and the length of the insurance term.

At no time did any party negotiate, much less discuss, the provisions that are at issue in Gargrave's Motion to Dismiss:

- Mr. Gargrave testified that Ropner did not write the terms of the OPA Insurance Policy issued to Mawan. Rather, it was "a standard Market form." Gargrave Deposition, p.116:21-23.

- Mr. Gargrave testified that in general, the assured and the insurer never communicate directly when an assured seeks to procure insurance. He further confirmed that the same held true in the present case and that neither Marwan nor its agent, Geoffrey Woodcock, had any contact with Gargrave or Ropner at the time the insurance was obtained. Gargrave Deposition, p. 109:12-112:21.

- Mr. Gargrave explicitly agreed that "….**at no point in time, when the contract of insurance was being negotiated and in fact for what we have established three or four weeks thereafter, was a wording produced where someone could say Marwan or its agents had agreed to the jurisdiction clause**[.]" Gargrave Deposition, p. 125:16-24 (emphasis added).

- Mr. Gargrave testified that Ropner, not Gargrave, always prepares the Cover Note that accompanies an insurance policy. Generally, Gargrave never sees these Cover Notes. Gargrave Deposition, p.112: 25-113:6; see also p. 59:10-11 ("To be honest, we don't normally get to see Cover Notes, so we wouldn't know [what they contain].).".

5. Marwan's agent, Geoffrey Woodcock, testified that he did not negote of the OPA Insurance Policy or Cover Note terms. The parties deposed Mr. Woodcock on March 2, 2007 in London, England. The transcript for this deposition arrived in my office on March 27, 2006 and could not be submitted to the Court prior to that time. Attached hereto as Exhibit B is a true and

DECLARATION OF JOHN E.D. POWELL
CAUSE NO. CIV06-00011 - 3

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

correct copy of several relevant excerpts. Mr. Woodcock is employed by Crestmar Marine Services, an insurance services company that consults with shipowners and charterers. Crestmar has worked with Marwan for several years to arrange insurance coverage for its various vessels. When the M/V AJMAN 2 urgently needed to enter U.S. waters in August 2004, Mr. Woodcock approached Navigators Protection & Indemnity, the vessel's P&I insurer, about obtaining a COFR and OPA insurance coverage. Mr. Woodcock testified that although Navigators was unable to provide the OPA insurance coverage itself, it offered to work with a broker (Ropner) to arrange cover with another underwriter (Gargrave). Woodcock Deposition, p. 41:23-42:10. Mr. Woodcock had no further involvement with obtaining the OPA Pollution Insurance Policy, aside from forwarding the premium. Woodcock Deposition, p. 42:19-24; 60:14-62:10. "Navigators quite kindly just dealt with it." Woodcock Deposition, p. 62:4-5.

6. Consistent with the testimony of Mr. Gargrave and Mr. Woodcock, Paul Harcombe, a broker with Ropner, also confirmed that the terms of the OPA Pollution Insurance were not negotiated by the parties. Mr. Harcombe was deposed by the parties on March 6, 2007 in London, England. The transcript for this deposition arrived in my office on March 28, 2006 and could not be submitted to the Court prior to that time. Attached hereto as Exhibit C is a true and correct copy of several relevant excerpts. Mr. Harcombe was responsible for brokering the COFR cover at Navigators' request, as well as confirming that Gargrave would issue the underlying, prerequisite OPA Insurance Policy. Harcombe Deposition, p. 7:25-8:11; 10:2-8; 18:21-19:6. When Navigators issued a request for coverage to Ropner on August 18, 2004, the broker forwarded it to Gargrave the day it was received. Harcombe Deposition, p.20:11-21:24. He testified that Mr. Gargrave confirmed that Gargrave would issue the OPA Insurance coverage and the COFR guaranty the same day, and there is no evidence that anyone at Ropner negotiated the policy terms between Gargrave and Navigators during that process. Harcombe Deposition, p. 22:4-23:5. At no time during his involvement with the the COFR and OPA coverage

DECLARATION OF JOHN E.D. POWELL
CAUSE NO. CIV06-00011 - 4

Cairncross & Hempelmann, P.S.
Law Offices
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
Phone: 206-587-0700 • Fax: 206-587-2308

procurement process did Mr. Harcombe have any contact with Marwan.  Harcombe Deposition, p. 36:7-37:1

7.      In its Motion to Dismiss, Gargrave makes another misleading omission in its discussion of the Cover Note: it neglects to disclose that the Cover Note did not exist at the time Gargrave issued the OPA Insurance Policy and bound coverage pursuant to the terms of Form LSW 1220.  The Cover Note is dated **approximately four weeks later**, September 24, 2004.  This date is long after the AJMAN 2 ran aground in Apra Harbor, Guam.  Gargrave Deposition, p. 58:23-59:4.

8.  Rowland Dawe, Ropner's head of marine brokering, further confirmed that the Cover Note was not prepared concurrently with Gargrave's consent to provide OPA coverage to Marwan.  Mr. Dawe was deposed by the parties on March 6, 2007 in London, England.  The transcript for this deposition arrived in my office on March 28, 2006 and could not be submitted to the Court prior to that time.  Attached hereto as Exhibit D is a true and correct copy of several relevant excerpts.  Mr. Dawe testified that although he generally controlled Ropner's OPA insurance policy placement, he was out of the office at the time Navigators first contacted Ropner about the M/V AJMAN 2.  Consequently, Mr. Harcombe arranged for Gargrave to issue the COFR guaranty and related OPA coverage.  Dawe Deposition, p. 16:8-17:21; 96:21-97:8.  Mr. Dawe subsequently put together the placement documentation upon his return to the office.  Dawe Deposition, p. 15:3-16.  Mr. Dawe did not correspond with Navigators in connection with that process.  Dawe Deposition, p. 17:22-18:6.  He likewise had no communication with Marwan regarding the documentation.  Dawe Deposition, p. 78:22-79:22.  Not only was Mr. Dawe out of the office at the time Gargrave issued the OPA Insurance Policy to Marwan, he did not return until after the M/V AJMAN 2 had run aground in Apra Harbor, Guam.  Dawe Deposition, p. 43:21-25.  The Cover Note prepared by Ropner to memorialize the issuance of the OPA Insurance Policy was not prepared until after the Underwriters had already given Marwan 30 days' notice that the policy would be cancelled.  Dawe Deposition, p. 47:8-23.

DECLARATION OF JOHN E.D. POWELL
CAUSE NO. CIV06-00011 - 5

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

Case 1:06-cv-00011    Document 122    Filed 04/06/2007    Page 5 of 28

9.  Because the terms of the OPA Insurance were part of a standard Lloyd's Form policy, and because the later-issued Cover Note was never negotiated by the parties, Gargrave's continued reliance on the Cover Note's reference to arbitration as a "negotiated" term is entirely without merit.  Mr. Gargrave, who has served as a Lloyd's underwriter for 27 years, testified that in his experience, when a Lloyd's Form contract intends to require arbitration, it always includes an explicit arbitration clause and does not reference the English courts.  He admitted that prior to viewing the at-issue Cover Note at his deposition, he had never in his career seen a provision worded like the English Law and Jurisdiction clause ("ELJ") in this case.  Gargrave Deposition, p. 122:18-123:6.  Despite Mr. Booth's valiant attempts, through the impermissible use of speaking objections, to coach the witness about how to answer questions of fact regarding his experience as a longtime Lloyd's underwriter, Mr. Gargrave testified that the arbitration language contained in the at issue Cover Note was a mistake:

> Q:…So you agree that this says "exclusive jurisdiction in English courts"
> meaning "the courts;" correct?
>
> A.  Yes, yes.
>
> ….
>
> **Q: It then says: "The seat of arbitration shall be London."  Do you see that?**
>
> **A:  I do.**
>
> **Q:  Do you admit and acknowledge that that's a mistake?**
>
> **A:  Yes.**
>
> Gargrave Deposition, p. 120:24-121:16.

10.  All of Mr. Booth's protestations notwithstanding, Mr. Gargrave still could not (and indeed would not) deny that 1) the standard Lloyd's Form OPA Insurance Policy has never contained an arbitration clause and 2) the ELJ Clause in the Cover Note did not resemble the standard arbitration clauses employed by Lloyd's of London in its insurance contracts.  Gargrave Deposition, p. 124:10-24.

DECLARATION OF JOHN E.D. POWELL
CAUSE NO. CIV06-00011 - 6

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

11. In addition to the deposition transcripts discussed above, it is imperative that this Court review <u>Exhibit E</u> to this declaration, an opinion by the venerable and respected London office of Reed Smith Richards Butler LLP. This exhibit squarely addresses the pervasive errors in Gargrave's analysis under English law. Drafted by English solicitors who routinely practice before the London courts, this opinion completely undermines Gargrave's conclusions regarding the enforceability of the ELJ Clause and the impact of Gargrave's own cross-claims against Marwan.

12. Just as it has misconstrued English law in order to reach the conclusion it seeks, Gargrave's Reply brief engages in a tortured and erroneous analysis of the Service of Suit Clause in an effort to justify its assertion that the Policy permits Gargrave to "transfer" the instant case to England. Gargrave builds its argument on an out-of-context fragment from paragraph 14 of the OPA Insurance policy. The full paragraph reads as follows:

> Notwithstanding any other provision elsewhere in this Insurance Policy relating to jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of Underwriter's rights to seek removal remand or transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.

Gargrave places its emphasis on the wrong portion of this clause. . . the portion that affirms the right of the Underwriter to seek removal, remand, or transfer of a case. The significant qualifier to this right, however, is that a case may only be transferred "as permitted by the laws of the United States of America or any state therein." This clarifies that the word "remove" is a specific reference to removal jurisdiction under 28 U.S.C. § 1441, which permits a party to move an existing case from state court to federal court. It also means that the word "remand" is a specific reference to 28 U.S.C. § 1447, which permits one party to move an existing case from federal court to state court. Finally, the clause clarifies that a party can seek to transfer venue from one court within a state to another or from federal court to federal court using the relevant venue transfer provisions in the initiating court's civil procedure rules. A

DECLARATION of JOHN E.D. POWELL
CAUSE NO. CIV06-00011 - 7

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

transfer, like a remand or removal action, is a mechanism that obligates the receiving court to continue an existing action, picking up the proceedings where the originating court left off. It can only be effectuated if the transferring court has the authority to instruct the transferee court to continue the litigation. These rules do not grant federal or state courts the authority to transfer an existing action from the United States to a foreign jurisdiction; there is simply no procedural mechanism for it. Courts of the United States lack the authority to instruct foreign courts to accept and preside over an existing action. Thus, paragraph 14 of the OPA Insurance Policy cannot be construed as Gargrave asserts.

13. Marwan would also like to take this opportunity to address Gargrave's deliberate attempt in its Reply to misinform the Court about the ripeness of Marwan's Cross-Claim. While it is true that the OPA Insurance Policy is an indemnity policy and that arguably nothing is owed by the underwriters until money is spent by the assured, the insurance agreement requires the underwriters to indemnify the assured for its defense and investigation costs. Marwan tendered these already incurred defense costs, as well as the attending obligations, to the underwriters and, in response, the underwriters attempted to rescind the policy. The indemnity obligation is mature. It has been triggered and refused, making the issue ripe for resolution by this Court. Additionally, the Marwan Cross-Claims are ripe because any judgment on the Gargrave Cross-Claims will likely constitute res judicata and collateral estoppel for many elements of the Marwan Cross-Claims.

14. I also want to bring to the Court's attention Gargrave's attempt, in footnote Footnote 5 of the Reply, to manufacture some significance from the fact that Marwan referenced the Cover Note rather than the Policy in its Cross-Claim. Gargrave's recitation of this circumstance is flagrantly misleading: Marwan was unable to make a specific reference to the OPA Insurance Policy language at the time it filed the Marwan Cross-Claim because Gargrave had yet to provide Marwan with a complete copy of the policy. Consequently, I did not have a copy of the policy at the time the Marwan Cross-Claim was filed. Only recently was I able to obtain a copy

DECLARATION OF JOHN E.D. POWELL
CAUSE NO. CIV06-00011 - 8

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

Case 1:06-cv-00011    Document 122    Filed 04/06/2007    Page 8 of 28

of Lloyd's Form LSW 1220 from a third party source. The fact that Gargrave not only withheld the policy from the parties in discovery but also from the Court when it filed the instant motion evidences the lack of integrity inherent in its Motion to Dismiss.

15. Finally, I cannot remain silent in the face of Gargrave's audacious claims about the nature of its own Cross-Claims against Marwan.It is a matter of record that Gargrave seeks declaratory relief from this Court that it does not have an obligation to <u>insure</u> Marwan. Gargrave sought this declaratory relief first. It was this claim that brought the Marwan Cross-Claims squarely within the jurisdiction of this Court.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES AND GUAM THAT THE FOREGOING IS TRUE AND CORRECT.

Dated this 29, day of March, 2007 in Seattle, Washington.

John E.D. Powell

DECLARATIONOF JOHN E.D. POWELL
CAUSE NO. CIV06-00011 - 9

*Cairncross & Hempelmann, P.S.*
*Law Offices*
*524 Second Avenue, Suite 500*
*Seattle, Washington 98104-2323*
*Phone: 206-587-0700 • Fax: 206-587-2308*

Case 1:06-cv-00011     Document 122     Filed 04/06/2007     Page 9 of 28

1  UNITED STATES DISTRICT COURT

2  DISTRICT OF GUAM

3  COPY

4

- - - - - - - - - - - - - - - - -)
5                                 )
UNITED STATES OF AMERICA,        )    Civil Case No.
6                                 )    CIV06-00011
           Plaintiff,            )
7                                 )
INCHCAPE SHIPPING SERVICES GUAM, )
8  LLC,                          )
                                 )
9        Plaintiff-in-Intervention)
                                 )
10 vs.                           )
                                 )
11 MARWAN SHIPPING & TRADING CO.,)
FIVE SEAS SHIPPING CO., LLC, and )
12 S.J. GARGRAVE SYNDICATE 2724, )
in personam, NAVIGATORS          )
13 PROTECTION & INDEMNITY, and    )
AL-BUHAIRA NATIONAL INSURANCE    )
14 COMPANY,                      )
                                 )
15       Defendants             )
                                 )
16 AND CROSS-CLAIMS, COUNTERCLAIMS,)
THIRD-PARTY COMPLAINT, and       )
17 CLAIM-IN-INTERVENTION.        )
                                 )
18 - - - - - - - - - - - - - - - -)

19

20            Oral videotaped deposition of
         **MR STEPHEN GARGRAVE** held at the offices
21            of ReedSmith Richards Butler,
         Beaufort House, 15 St. Botolph Street,
22       London EC3A 7EE, England, United Kingdom
         at 9.21 a.m. on Wednesday March 7, 2007
23       before Leah Willersdorf, Associate of
     the British Institute of Verbatim Reporters

24

25            V O L U M E   1
         (pages 1 to 137 inclusive)

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703

Website: www.a-acr.com   Document 122   Filed 04/00/2007   Page 1 of 28   Email: info@a-acr.com



ANGLO-AMERICAN
COURT REPORTERS

1  underwriter with respect to whatever insurances were

2  provided in this case -- and I'm not assuming that

3  there's coverage there. We will leave aside the issue

4  of coverage, defenses and things like that.

5       A.    Thank you.

6       Q.    Is that what Gargrave did; that is,

7  underwrite insurances in this case?

8       A.    Gargrave underwrote insurances, yes.

9       Q.    And the Gargrave Syndicate 2724 in this case,

10  were you personally one of the capital investors?  And

11  I'm distinguishing now your role as -----

12      A.    No.

13      Q.    ----- as the manager of the underwriters?

14      A.    No, I wasn't a capital investor. I was

15  an employee.

16      Q.    You were an employee of Lloyd's or

17  specifically Lloyd's Syndicate 2724?

18      A.    Of the managing agency, Limit, who operate

19  the Syndicate 2724.

20      Q.    What is the name of the managing agent, to

21  use your term -----

22      A.    Yes.

23      Q.    ----- that acted on behalf of Gargrave 2724?

24      A.    Limit Underwriting Ltd.

25            MR POWELL: Mike, was that true at all times?

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**
Tel: (011 44) 20 7264 2088            Fax: (011 44)  20 7265 1703
Website: www.a-acr.com            Email: info@acr.com

ANGLO-AMERICAN
COURT REPORTERS

Case 1:06-cv-00010    Document 122    Filed 04/06/2007    Page 12 of 28

1       MR UNDERHILL: I'm sorry.

2       MR POWELL: Was that true in 2004?

3       THE WITNESS: Yes.

4       MR POWELL: Okay, thanks.

5   BY MR UNDERHILL:

6       Q.   Limit Underwriting Limited, and let's focus

7   on the -- let's focus on the period August -- from

8   August 1 of 2004 through the end of that year.

9       A.   Mmm-hmm.

10      Q.   And the reason I choose that time is because

11  this incident arose some time in -- initially arose in

12  August of 2004. That's why I chose that time.

13      A.   Yes.

14      Q.   From that period, August 1, 2004 through the

15  end of 2004, was Limit Underwriting Ltd the managing

16  agent for Gargrave Syndicate 2724?

17      A.   Yes, it was.

18      Q.   And what is your title, if any, within

19  Limit Underwriting Ltd, or what was it at that time?

20      A.   It was Active Underwriter of Syndicate 2724.

21      Q.   Is that a job title? I mean, is it actually a

22  title that you carried with you at that time?

23      A.   Yes.

24      Q.   And I didn't write as fast as she did. Could

25  you give me the name again, Active...?

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703

Website: www.a-acr.com          E-mail: info@a-acr.com



ANGLO-AMERICAN
COURT REPORTERS

Case 1:06-cv-00011   Document 122   Filed 04/06/2007   Page 13 of 28

1  would not have taken on the Ajman 2 as a risk under the

2  pollution cover if we were under the impression that

3  there was already an incident that had occurred that

4  had -- or would give rise to a pollution, or a threat

5  of pollution under the pollution policy.

6            We would not have agreed to give cover if the

7  Ajman 2 was on a breakup voyage. We would not have

8  given pollution if we had understood that the vessel

9  was unseaworthy and would struggle to actually make

10  any, whether it was short or long, trip.

11            So therefore all those aspects have become

12  part of this case. But whether that particular

13  paragraph there that says Navigators had forwarded

14  information that was in fact erroneous, I'm not quite

15  sure where that statement came from because I wasn't

16  aware that Navigators knew that information at the time

17  that we were binding the pollution cover to our policy.

18      Q.    Okay. Thank you. Let's go back to -----

19      A.    Sorry, do you want that back in your pile?

20      Q.    Thank you. Back to Exhibit 97 which I --

21  do you still have 97 before you?

22      A.    Yes.

23      Q.    How was it that Ropners was issuing this

24  Cover Note in September 24 of 2004, despite the fact

25  the first notice of claim of any loss under the policy

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**
Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703
Website: www.a-acr.com          Email: info@a-acr.com


ANGLO-AMERICAN
COURT REPORTERS

Case 1:06-cv-00011     Document 122     Filed 04/06/2007     Page 14 of 28

1    or policies went back to somewhere in August 23,

2    August 24, around those dates?

3        A.    I'm afraid I can't comment on that. I didn't

4    -- I don't know.

5        Q.    Is -- strike that.

6            The fact that they did, in fact, appear to do

7    that in this case, would that be outside the bounds of

8    normal practice as respects Ropners' relationship with

9    Gargrave for pollution cover?

10       A.    To be honest, we don't normally get to see

11   Cover Notes so we wouldn't know. But in my own opinion,

12   that's longer than it would normally be for a

13   Cover Note to be issued.  But that's purely my

14   personal opinion.

15       Q.    Okay. Could you go to Exhibit 98, please?

16   Take a moment to review it, and this is MER-00181 and

17   00182. It is a two-page document. Have you ever seen

18   this document or these documents before?

19       A.    No.

20           MR POWELL: Can we take a short break?

21           MR UNDERHILL: Yes.

22           MR POWELL: Two minutes. I know you're in a

23   hurry, but I need a short break.

24           THE VIDEOGRAPHER: Going off the record

25   at 10.40 a.m.

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44)  20 7265 1703

Website: www.a-acr.com          E-mail: info@a-acr.com


**ANGLO-AMERICAN**
**COURT REPORTERS**

Case 1:06-cv-00011   Document 122   Filed 04/06/2007   Page 15 of 28

1   Q. Did you, at Gargrave, go directly to your

2 assured and query any of the concerns that had led to

3 the cancel of cover?

4   A. No.

5   Q. Because the P&I cancellation was the premise

6 upon which the Gargrave cancelled, not the actions of

7 the assured?

8   A. That would -- yes, yes. Actually that would

9 be absolutely correct because we only had the pollution

10 inquiry and the COFR inquiry through Navigators because

11 they were issuing the P&I, yes.

12   Q. Okay. Let me walk through the normal course

13 and make sure I have got this right. I think I know

14 this, but I want to lay a premise and lay a foundation.

15   A. Okay.

16   Q. The assured goes to the broker. The broker

17 goes to the underwriter asking for the cover. The

18 underwriter communicates, through the broker, back to

19 the assured. Okay, that is the line of communication?

20   A. Yes.

21   MR BOOTH: In a normal case.

22 BY MR POWELL:

23   Q. In a normal case; right?

24   A. Yes.

25   Q. And as a result of that communication,

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088    Fax: (011 44) 20 7265 1703

Website: www.a-acr.com    Email: info@a-acr.com

Case 1:06-cv-00011 Document 122 Filed 04/06/2007 Page 16 of 28


ANGLO-AMERICAN
COURT REPORTERS

1   assuming it is a successful communication, an insurance

2   contract issues?

3       A.   Yes.

4       Q.   Okay. At no point in that conversation, in

5   that communication, does the assured and the

6   underwriter sit down and negotiate the terms of the

7   insurance contract?

8       A.   No, never.

9       Q.   Okay. Our case, it is a little bit more

10   convoluted but it is the same premise essentially,

11   I think. Marwan goes to -- tell me if I say anything

12   here and you are going, "I don't know that to be true",

13   but I think we probably know these things between us.

14       A.   Okay.

15       Q.   Marwan goes to Crestmar, Geoffrey Woodcock.

16   That is his -- their broker; okay?

17       A.   Okay.

18       Q.   Geoffrey -- goes to Geoffrey Woodcock and

19   says, "We need the Certificate of Financial

20   Responsibility" and Geoffrey goes to SIGCo.

21       A.   Right.

22       Q.   Do you know that?

23       A.   Yes, I know SIGCo.

24       Q.   Okay. SIGCo requires pollution cover for

25   issuing a COFR; correct?

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703

Website: www.aacrt.com        Email: info@aacrt.com



ANGLO-AMERICAN
COURT REPORTERS

Case 1:06-cv-00011-PM    Document 122     Filed 04/06/2007    Page 17 of 28

1    A.    Yes.

2    Q.    So Geoffrey goes to Navigators which is his

3 P&I, or is the P&I cover for Marwan, already

4 existing; okay?

5    A.    Okay.

6    Q.    For the Ajman 2. And he knows that Navigators

7 has a pollution cover but excluding U.S. waters on the

8 P&I policy.

9    A.    Okay.

10    Q.    Okay?

11    A.    Yes.

12    Q.    He asks them if they will waive the

13 provisions to allow this vessel to enter into Guam so

14 that they can have -- it can represent to SIGCo that

15 they have the pollution cover that is required for the

16 issuance of the COFR; okay?

17    A.    Okay.

18    Q.    Navigators refuses: (1) they don't want to

19 work with SIGCo. I haven't talked to him yet, I don't

20 know why, but -- because they want to work with EPG is

21 what it is. And Navigators says, "Look, I'll take care

22 of this" and Geoffrey Woodcock, who knows nothing about

23 COFRs, goes, "Great". Okay so far?

24    A.    Yes.

25    Q.    Navigators goes to Ropners and Ropners goes

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088            Fax: (011 44) 20 7265 1703

Website: www.a-acr.com    Email: info@a-acr.com


ANGLO-AMERICAN
COURT REPORTERS

Case 1:06-cv-00011    Document 122    Filed 04/06/2007    Page 18 of 28

1    to -- for purposes of obtaining the pollution

2    insurance, Ropners goes to Gargrave, Gargrave confirms

3    to Ropners the pollution cover?

4         A.    Yes.

5         Q.    And that is communicated back to Navigators

6    and to EPG?

7         A.    Yes.

8         Q.    Okay. In that chain, there is not one time

9    when Marwan or its agent, Geoffrey Woodcock, have any

10   communication directly with Gargrave; correct?

11        A.    Correct.

12        Q.    In fact, neither of them have any

13   communication directly with Ropners; correct?

14        A.    Correct.

15        Q.    Okay. So at no time does the assured

16   negotiate the terms of an insurance contract with

17   Gargrave; correct?

18        A.    Correct.

19        Q.    Okay. Through that whole process,

20   pollution coverage is bound; right?

21        A.    Yes.

22        Q.    And that all happens on or about

23   August 19, 2004; correct?

24        A.    Yes, correct.

25        Q.    Subsequently an Insurance Cover Note issues

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**
Tel: (011 44) 20 7264 2088          Fax: (011 44)  20 7265 1703
Website: www.a-acr.com          Email: info@a-acr.com



ANGLO–AMERICA
COURT REPORTERS

Case 1:06-cv-00011   Document 122   Filed 04/00/2007   Page 19 of 28

1   from Ropners; correct?

2       A.    Correct.

3       Q.    Do they prepare that or do you?

4       A.    They do.

5       Q.    Okay. Do you see it?

6       A.    No.

7       Q.    Are you familiar with the terms of it?

8       A.    Well, it should represent exactly what

9   we have agreed.

10      Q.    Agreed with who, Ropners?

11      A.    It should be what we, as the underwriters,

12  have agreed with Ropners for Ropner to issue a

13  Cover Note.

14      Q.    Okay, okay. And I want you to turn to

15  Exhibit 51, if you will; do you have that?

16      A.    Yes.

17      Q.    I am the one who doesn't have it. There we

18  go. We confirmed yesterday and earlier today that this

19  is the insurance policy; okay?

20      A.    Okay.

21      Q.    If you look at the first -- the second page

22  of Exhibit 51, it is the first page of the Cover Note;

23  is that correct?

24      A.    This actually isn't -- 51 isn't a Cover Note.

25  51 is the Slip Agreement between underwriters and

---

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088                    Fax: (011 44)  20 7265 1703

Website: www.a-acr.com                         E-mail: info@a-acr.com





```
 1              MR BOOTH: I certainly did not show it to
 2    you, no.
 3              THE WITNESS: Okay.  Then I haven't seen it.
 4    BY MR POWELL:
 5         Q.   Okay. Are you aware of the fact that Gargrave
 6    counter-claimed -- I mean cross-claimed against Marwan
 7    and Five Seas in the Guam action?
 8         A.   Am I aware of that? No.
 9         Q.   Okay. You didn't know that?
10         A.   Well, I'm not aware of it in that document.
11    Am I aware that why we are all sitting around the table
12    here that it involves you (referring to Mr Underhill)
13    as Coast Guard, Marwan and Lloyd's and we are all
14    inextricably linked in this particular issue, then yes.
15         Q.   Fair enough. I mean, you haven't sat down and
16    reviewed this -----
17         A.   I have not reviewed that.
18         Q.   That's fair enough. Look at the first
19    paragraph of the Service of Suit clause.
20         A.   Yes.
21         Q.   This is a document, is it not, this policy of
22    insurance, it is written by Ropners; correct?
23         A.   No, that is a standard Market form.
24         Q.   The standard Market form -----
25         A.   Yes.
```

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44)  20 7265 1703

Website: www.aacort.com          Email: info@aacort.com

Case 1:06-cv-00001   Document 122   Filed 04/06/2007   Page 21 of 28


ANGLO-AMERICAN
COURT REPORTERS

1    construed in accordance with... [English law]."

2          With the law; right?

3    A.    Yes.

4    Q.    "...and the exclusive jurisdiction of the

5    English courts..."

6    A.    Yes.

7    Q.    You understand that that means the exclusive

8    jurisdiction of the courts?

9          MR BOOTH: Well, hang on. You can ask him if

10   he has an understanding, but -----

11         MR POWELL: I am asking him.

12         MR BOOTH: ----- you are very, very close to

13   legal issues here, Jed, and I'm not going to let you

14   ask him legal issues.  And I'm not going to let you ask

15   him how he thinks this trumps the Service of Suit

16   clause or vice versa.

17         MR POWELL: I won't do that. I won't do that.

18         MR BOOTH: Yes. I'm not going to let you get

19   into that. So if that's where you're going....

20   BY MR POWELL:

21   Q.    We are going to talk about what I think is a

22   mistake in your wording; okay?

23   A.    Okay.

24   Q.    That's what I'm going to talk to you about.

25   So you agree that this says "exclusive jurisdiction in

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**
Tel: (011 44) 20 7264 2088          Fax: (011 44)  20 7265 1703
Website: www.a-acr.com          Email: info@a-acr.com


ANGLO-AMERICAN
COURT REPORTERS

Case 1:06-cv-00011   Document 122   Filed 04/06/2007   Page 22 of 28

```
 1   English courts" meaning "the courts"; correct?  It says
 2   "courts"?
 3        A.   Yes, yes.
 4        Q.   And the English are very precise in their
 5   language, much more so than the Americans, I must
 6   confess, but you guys are precise when you write these
 7   things and you intend to be; right? You do intend to
 8   be; correct?
 9        A.   We do intend to be precise.
10        Q.   It then says:
11             "The seat of arbitration shall be London."
12             Do you see that?
13        A.   I do.
14        Q.   Do you admit and acknowledge that that's
15   a mistake?
16        A.   Yes.
17        Q.   Okay.
18        A.   Well, I say it is a mistake; it is not
19   normal. It is not normal and I certainly wasn't aware
20   that we were choosing -----
21             THE COURT REPORTER: Sorry. I can't -----
22             THE WITNESS: I'm sorry. I'm talking too
23   quickly.
24             THE COURT REPORTER: "...and I certainly
25   wasn't aware that we were choosing..."?
```

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44)  20 7265 1703



ANGLO–AMERICAN
COURT REPORTERS

1        THE WITNESS: I certainly wouldn't have been

2   aware we were choosing to specifically state that we

3   were going to have an arbitration in London as another

4   way of dealing with any arguments or disagreements,

5   arbitrating this particular case.

6   BY MR POWELL:

7        Q.   Would you agree with me that it is

8   inconsistent to say that the exclusive jurisdiction

9   will be in the courts and the seat of arbitration will

10  be in London?

11       MR BOOTH: Hang on, hang on. That is a legal

12  issue and -- you're asking for a legal opinion.

13       MR POWELL: Let me establish a little

14  foundation here, okay.

15       MR BOOTH: You can try, but I don't think he

16  is going to answer that question.

17  BY MR POWELL:

18       Q.   How many years have you been an underwriter

19  in Lloyd's?

20       A.   For 27 years.

21       Q.   In your 27 years, have you ever,

22  before today, or in the context of this policy, seen a

23  "seat of arbitration shall be London" provision at the

24  back end of an "exclusive jurisdiction shall be in the

25  English courts" clause?

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703

Website: www.a-acr.com          E-mail: info@a-acr.com


**ANGLO-AMERICAN**
**COURT REPORTERS**

Case 1:06-cv-00011   Document 122   Filed 04/06/2007   Page 24 of 28

1     A.     I don't remember seeing one.

2     Q.     Okay. Fair to say that where you have, in the

3     norm, seen "The seat of arbitration shall be in

4     London", it is preceded by an arbitration clause in

5     that agreement?

6     A.     Yes, agreed.

7     Q.     Okay.  And there is no arbitration clause in

8     this agreement, is there?

9     A.     I -----

10          MR BOOTH: Hang on, hang on. I object to that.

11    That misstates the document. I mean, it is there. You

12    may not like it, but it is there. It does say, "The

13    seat of arbitration shall be London."

14          MR POWELL: Excuse me, Forrest, that is

15    totally inappropriate. I'm asking this witness -----

16          MR BOOTH: Well, you're arguing with him.

17          MR POWELL: I'm not.  I think I'm arguing with

18    you now.

19          MR BOOTH: Okay. You're arguing with me. Well,

20    you're going to have to argue with me because I'm not

21    going to allow him to give a legal interpretation of

22    that if you want -- it is already before the court

23    in Guam.

24          MR POWELL: You got -- actually, I think we

25    can clear this up very quickly.

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44)  20 7265 1703

Website: www.aacrltd.com          info@aacrltd.com

Case 1:06-cv-00011          Document 122          Filed 04/06/2007          Page 25 of 28

ANGLO–AMERICAN
COURT REPORTERS

1          MR BOOTH: It is our position that that is an

2    arbitration clause.

3          MR POWELL: Now you're arguing for the record

4    and steering the witness and I object strongly to that.

5          MR BOOTH: No, I'm not. I'm just saying that

6    is my position.

7          MR POWELL: I am going to ask Steve Gargrave

8    my question.

9    BY MR POWELL:

10        Q.   Specifically point to me in this contract

11   where there is an arbitration clause, as you understand

12   it in the London Market. Show me.

13        A.   I don't think there will be one in here.

14   I certainly -- I certainly know there is not an

15   arbitration clause in the U.S. Vessel Pollution

16   Insurance Policy, but the Choice of Law & Jurisdiction

17   does say, "The seat of arbitration shall be London."

18        Q.   You know what I mean, though, when I ask you

19   to show me an arbitration clause, don't you?

20        A.   I am aware that arbitration clauses normally

21   have a heading "Arbitration Clause", yes.

22        Q.   Thanks. And there is not such a thing here,

23   is there?

24        A.   No, there isn't.

25        Q.   Okay.

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703

Website: www.a-aco.com          Email: info@a-aco.com

ANGLO-AMERICAN
COURT REPORTERS

Case 1:06-cv-00457          Document 122          Filed 04/06/2007          Page 26 of 28

```
1                        (Pause)
2        Q.    Would you agree with me that no one can ever
3    say that Marwan and Gargrave agreed to the terms of
4    their insurance policy?
5              MR BOOTH: I have a standing objection to that
6    and to the sense that obviously you have agents acting
7    on your behalf who are negotiating.  With that
8    understanding, I mean we stipulate there is no
9    direct negotiation.
10             THE WITNESS: Agreed. There was no direct
11   agreement, but one has to presume, from what we have
12   issued through the chain of the agents of both the
13   underwriter and the assured, that something has been
14   finally agreed.
15   BY MR POWELL:
16       Q.    Fair enough and I think Forrest's point is
17   well taken. Let me backtrack off of that question and
18   ask this: at no point in time, when the contract of
19   insurance was being negotiated and in fact for what we
20   have established three or four weeks thereafter, was a
21   wording produced where someone could say Marwan or its
22   agents had agreed to the jurisdiction clause?
23       A.    It would appear not, from the documents that
24   I have seen.
25       Q.    Okay. What time do you need to go?
```

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088                     Fax: (011 44)  20 7265 1703

Website: www.aacourt.com

Case 1:06-cv-00001   Document 122   Filed 04/06/2007   Page 27 of 28


ANGLO-AMERICA
COURT REPORTERS

```
 1              C E R T I F I C A T E

 2

 3  I, LEAH WILLERSDORF, Accredited Verbatim Court

 4  Reporter, Associate of the British Institute of

 5  Verbatim Reporters, do hereby certify that the

 6  foregoing transcript taken of the deposition of

 7  MR STEPHEN GARGRAVE on Wednesday, March 7, 2007 is true

 8  and accurate to the best of my knowledge, skill and

 9  ability; that the testimony of said witness was taken

10  and reduced to stenotype writing before me; that the

11  said deposition is a true and accurate record of the

12  testimony given by said witness; that I am neither

13  counsel for, related to, nor employed by any of the

14  parties to the action in which this deposition was

15  taken; and further, that I am not a relative or

16  employee of any attorney or counsel employed by the

17  parties thereto; nor financially or otherwise

18  interested in the outcome of the action.

19

20

21

22            LEAH M WILLERSDORF

23            Accredited Court Reporter

24            Associate of the British Institute

25            of Verbatim Reporters
```

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44)  20 7265 1703

Website: www.a-acr.com          E-mail: info@a-acr.com



ANGLO-AMERICAN
COURT REPORTERS