```
 1            UNITED STATES DISTRICT COURT

 2               DISTRICT OF GUAM                    COPY

 3

 4

 5   - - - - - - - - - - - - - - - - -)
                                      )
 6   UNITED STATES OF AMERICA,        )    Civil Case No.
                                      )    CIV06-00011
 7               Plaintiff,           )
                                      )
 8    INCHCAPE SHIPPING SERVICES GUAM, )
     LLC,                             )
 9                                    )
              Plaintiff-in-Intervention )
10                                    )
     vs.                              )
11                                    )
     MARWAN SHIPPING & TRADING CO.,   )
     FIVE SEAS SHIPPING CO., LLC, and )
12   S.J. GARGRAVE SYNDICATE 2724,    )
     in personam, NAVIGATORS          )
13   PROTECTION & INDEMNITY, and      )
     AL-BUHAIRA NATIONAL INSURANCE    )
14   COMPANY,                         )
                                      )
15               Defendants          )
                                      )
16   AND CROSS-CLAIMS, COUNTERCLAIMS, )
     THIRD-PARTY COMPLAINT, and       )
17   CLAIM-IN-INTERVENTION.           )
                                      )
18   - - - - - - - - - - - - - - - - -)

19

20

21              Oral videotaped deposition of
           MR GEOFFREY WOODCOCK held at the offices
22              of ReedSmith Richards Butler,
            Beaufort House, 15 St. Botolph Street,
23         London EC3A 7EE, England, United Kingdom
            at 10.26 a.m. on Friday, March 2, 2007
24             before Leah Willersdorf, Associate of
         the British Institute of Verbatim Reporters
25
```

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703



1      Q.   And usually if I want you to be precise,

2   I will ask you to be precise and if I want just a

3   ball park estimate, I will usually tell you that as

4   well, okay?

5      A.   (The witness nodded).

6      Q.   If at any time you don't understand any of my

7   questions which, the way I ask questions, could be a

8   lot, okay, you just tell me that you don't understand

9   it and I will be glad to try to rephrase it until you

10   can understand it. If you don't tell me you don't

11   understand, I am going to assume that you do.

12      And again, we want it to be clear testimony

13   so if at any time I am not making sense, you are not

14   going to offend me by telling me that you don't

15   understand it. Ask me to rephrase or to clarify and

16   I will do my best, and that goes for, I am sure, any

17   counsel at this table who might choose to ask you the

18   questions later.

19      A.   Okay.

20      Q.   Are you ready to go?

21      A.   Ready to go.

22      Q.   Let's do it. Who is your employer now?

23      A.   Crestmar Marine Insurance Services

24   Limited (U.K.)

25      Q.   Is that C-R-E-S-T-M-A-R?

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088     Fax: (011 44)  20 7265 1703

Website: www.aacr.com   Email: info@aacr.com

ANGLO-AMERICAN
COURT REPORTERS

Case 1:06-cv-00001m   Document 122-2   Filed 04/06/2007   Page 3 of 38

1      A.    That's right.

2      Q.    And is Crestmar an underwriter or a

3 marine insurance broker?

4      A.    It is neither. In this country, to be a

5 broker you have to be a member of the

6 Brokers' Association. We are an insurance services

7 company, therefore we would act as a consultant to

8 shipowners and charterers.

9      Q.    Before we find out more about what Crestmar

10 does, can you tell us whether you were employed by

11 Crestmar in August and September of 2004?

12      A.    I was.

13      Q.    How long have you been employed by Crestmar?

14      A.    Crestmar was formed in 1985. I can't remember

15 where it -- as Crestmar Insurance Services Limited.

16 Some time after that, it evolved into Crestmar Marine

17 because we stopped handling general insurance, if that

18 is sufficient.

19      Q.    Can you give -- this is one of those times

20 I would ask you for merely an estimate. Can you tell me

21 when Crestmar Insurance Services Limited went to be

22 Crestmar Marine?

23      A.    I would estimate around 1993.

24      Q.    In any event -- let's even take it further.

25 Would it be safe to assume that since 2000, the year

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**
Tel: (011 44) 20 7264 2088                    Fax: (011 44) 20 7265 1703
Website: www.a-acr.com

ANGLO-AMERICAN
COURT REPORTERS

Case 1:06-cv-00001   Document 122-2   Filed 04/06/2007   Page 4 of 38

1   I believe, was a direct relationship between the

2   ship management and Al-Buhaira.

3        Q.   With respect to the Navigators cover that you

4   insisted in placing with respect to Ajman 2, were the

5   services of a marine insurance broker employed, either

6   by you or by Navigators?

7        A.   No.

8        Q.   Was it a direct -- tell me how the lines

9   went; did it go directly from Marwan to Crestmar,

10  Crestmar directly to Navigators?

11       A.   It did.

12       Q.   There is another entity whose name appears in

13  this lawsuit called Ropners (R-O-P-N-E-R-S)?

14       A.   Right.

15       Q.   Was Ropners involved at any time, and if so

16  we will break it down, were they involved at any time

17  with respect to placement of P&I cover with Navigators

18  concerning Ajman 2?

19       A.   No, they weren't.

20       Q.   Just to put this in context: if at all, how

21  did Ropners become involved in the Ajman 2, to

22  your knowledge?

23       A.   Right. When I was contacted, there was a

24  panic because of the vessel that was going to have to

25  enter U.S. waters and that a COFR was urgently

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**
Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703
Website: www.a-acr.com          E-mail: info@a-acr.com


ANGLO-AMERICAN
COURT REPORTERS

Case: 1:06-cv-00011   Document 122-2   Filed 04/08/2007   Page 5 of 38

1 required. I contacted Navigators and they said, "We

2 don't cover pollution in U.S. waters, but we can help

3 you in facilitating the cover with EPG."

4 I had contact with EPG. Navigators arranged

5 the pollution cover and they used Ropners, as I later

6 found out, I didn't know at the time. I believe that

7 Ropners were involved. I knew that they would have to

8 be using a Lloyd's broker because that is -- the only

9 way to place business in the Lloyd's insurance market

10 is through a Lloyd's broker.

11 Q. Is Ropners a Lloyd's broker?

12 A. Yes, Ropners is a Lloyd's broker.

13 Q. So maybe we can rule that part out of your

14 deposition. Did you have any direct dealings with

15 Ropner -----

16 A. No.

17 Q. I'm sorry. Let me finish.

18 A. Sorry.

19 Q. Did you have any direct dealings, "you" being

20 Crestmar or yourself as an individual for that matter,

21 have any direct dealings with Ropner concerning

22 placement of any type of cover, hull and machinery,

23 pollution, COFR or any other type of cover on Ajman 2?

24 A. No, I didn't.

25 Q. Did you even talk with any Ropner employees

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703

Website: www.aacr.com      Document 122-2      Filed 04/06/2007      Page 6 of 38

ANGLO-AMERICAN
COURT REPORTERS

1  Ahmed, based upon your business relationship with him

2  over the years, would have attempted to deceive you

3  with respect to whether the Ajman 2 was going to go

4  into, I think to use your words, the Iraq trade, or --

5  strike that, let me start all over.

6       Based upon your business relationship with

7  Ahmed over the years, do you have any reason to believe

8  that Ahmed would have attempted to deceive you or

9  Crestmar with respect to his statement that the Ajman 2

10  was intended for the Iraq trade?

11       A.   No, he wouldn't -- I have never, in all the

12  years of dealing with him, found that he has ever

13  misled me as to the trade of his vessels.

14       Q.   After you became aware by Yousif that the

15  vessel needed to go into U.S. waters, I would like to

16  have you take us through, and the Judge who may view

17  this tape, step by step, in as much detail as you

18  possibly can, and again feel free to look at documents,

19  and I may help you with those, tell us step by step

20  what you did from soup to nuts, A to Z, beginning to

21  end, concerning placement of the COFR cover.

22       So let's start with the step that you are

23  notified the vessel needs to go into U.S. waters.

24  What did you do next?

25       A.   The first thing I did was I contacted SIGCo

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703

Website: www.aacr.com


ANGLO-AMERICAN
COURT REPORTERS

Case 1:06-cv-00351    Document 122-2    Filed 04/06/2007    Page 7 of 38

in Bermuda.

MR POWELL: Can you spell that.

THE WITNESS: It is S-I-G-C-o. I think it stands for Shipowners' Indemnity Guarantee Company. They are a COFR provider. Because I had thought that Navigators would possibly agree to assist, as it was an emergency, in providing pollution cover for the vessel to go into Guam. Then I contacted Navigators. Navigators said, "No, no way." I said, "What am I going to do because I only deal with SIGCo and you're not going to do it." They said, "Don't panic. Don't worry. We have had this many times in the past and we tell people to contact EPG. If you haven't got the experience of then providing the pollution cover, say in Lloyd's, we can assist you in doing that."

And so I spoke to EPG. They said, "We need the form", the COFR form, which is 5568 I believe, completed. No, 5585 completed and -- so basically the form was com -- it was all done as a rush because -- and the form was completed, it was sent in. EPG got a copy of it. EPG immediately came back and said, "You cannot put us for the agents/agency under the COFR." I either spoke or communicated with Yousif. He informed me that the local agency was Inchcape in Guam. He, I think, sent me a communication with their full

1  details so I crossed out "EPG" and put their

2  details down.

3         I don't recollect about the pollution policy

4  side of it because I didn't get involved; Navigators

5  quite kindly just dealt with it. Afterwards, I found

6  out they had dealt with Ropners who dealt with the

7  Gargrave Syndicate. My only involvement was getting an

8  invoice for the cost of the pollution which I paid and

9  then I think got reimbursed by the managers of

10 the vessel.

11        The COFR number was issued. My understanding

12 is that once the COFR number is issued, it goes in

13 the computer, the U.S. Coast Guard then is comfortable.

14 I never saw a certificate, which is, I understand,

15 quite normal that you don't actually need the

16 COFR certificate, you actually just need the number.

17 And the vessel went in.

18        Is there anything you would like me to -----

19 BY MR UNDERHILL:

20     Q.   No, I appreciate it because you have given us

21 a sort of -- if you look at a map of the U.K., you see

22 the big map of the U.K., but we are going to start

23 zeroing in on London to get more street detail, okay?

24     A.   Okay. Yes. No, that is fine.

25     Q.   You have sketched it out -----

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703

Website: www.aacr.com


ANGLO-AMERICAN
COURT REPORTERS

Case 1:06-cv-00001   Document 122-2   Filed 05/04/2007   Page 9 of 38

```
 1                    C E R T I F I C A T E

 2

 3   I, LEAH WILLERSDORF, Accredited Verbatim Court

 4   Reporter, Associate of the British Institute of

 5   Verbatim Reporters, do hereby certify that the

 6   foregoing transcript taken of the deposition of

 7   MR GEOFFREY WOODCOCK on Friday, March 2, 2007 is true

 8   and accurate to the best of my knowledge, skill and

 9   ability; that the testimony of said witness was taken

10   and reduced to stenotype writing before me; that the

11   said deposition is a true and accurate record of the

12   testimony given by said witness; that I am neither

13   counsel for, related to, nor employed by any of the

14   parties to the action in which this deposition was

15   taken; and further, that I am not a relative or

16   employee of any attorney or counsel employed by the

17   parties thereto; nor financially or otherwise

18   interested in the outcome of the action.

19

20

21              L. M. Willersdorf

22              LEAH M WILLERSDORF

23              Accredited Court Reporter

24              Associate of the British Institute

25              of Verbatim Reporters
```

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703

Website: www.a-acr.com          E-mail: info@a-acr.com



ANGLO-AMERICAN
COURT REPORTERS

```
 1            UNITED STATES DISTRICT COURT

 2               DISTRICT OF GUAM
```

COPY

```
 4    - - - - - - - - - - - - - - - - - -)
                                         )
 5   UNITED STATES OF AMERICA,           )    Civil Case No.
                                         )    CIV06-00011
 6              Plaintiff,               )
                                         )
 7   INCHCAPE SHIPPING SERVICES GUAM,    )
 8   LLC,                                )
                                         )
 9              Plaintiff-in-Intervention)
                                         )
10   vs.                                 )
                                         )
11   MARWAN SHIPPING & TRADING CO.,      )
     FIVE SEAS SHIPPING CO., LLC, and    )
12   S.J. GARGRAVE SYNDICATE 2724,       )
     in personam, NAVIGATORS             )
13   PROTECTION & INDEMNITY, and         )
     AL-BUHAIRA NATIONAL INSURANCE       )
14   COMPANY,                            )
                                         )
15              Defendants               )
                                         )
16   AND CROSS-CLAIMS, COUNTERCLAIMS,    )
     THIRD-PARTY COMPLAINT, and          )
17   CLAIM-IN-INTERVENTION.              )
                                         )
18    - - - - - - - - - - - - - - - - - -)

19

20

21              Oral videotaped deposition of
            MR PAUL HARCOMBE held at the offices
22               of ReedSmith Richards Butler,
           Beaufort House, 15 St. Botolph Street,
23          London EC3A 7EE, England, United Kingdom
            at 11.59 a.m. on Tuesday, March 6 2007
24            before Leah Willersdorf, Associate of
          the British Institute of Verbatim Reporters

25
```

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703

Website: www.aacrt.com          Email: info@aacrt.com



```
1    MR PAUL HARCOMBE, having been duly sworn, testified as
2    follows:
3                          DIRECT EXAMINATION:
4    BY MR POWELL:
5        Q.    Mr Harcombe, I'm Jed Powell.  I am
6    representing Marwan, Five Seas and Al-Buhaira. Who do
7    you work for?
8        A.    I work for Ropner Insurance Services.
9        Q.    Have you ever had your deposition
10   taken before?
11       A.    I have, once before, yes.
12       Q.    Have you ever had it videotaped?
13       A.    Yes.
14       Q.    Okay. Just for a little background, what you
15   and I are -- actually, what we are doing is we are
16   talking to the Judge is the way we are doing this.
17       A.    Mmm-hmm.
18       Q.    And so I am going to try to elicit
19   information from you that will help the Judge
20   understand our case; okay?
21       A.    Right, right.
22       Q.    You understand that you have to give
23   audio responses?
24       A.    Yes, I do.
25       Q.    Good. Can you tell us, were you the
```

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**
Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703
Website: www.aacr.com  Document 122-2    Filed 04/06/2007  Email info@aacr.com

ANGLO-AMERICAN
COURT REPORTERS

1   placing broker on the Ajman 2 for purposes of the

2   OPA cover and the COFR cover?

3           A.      Yes, I was.

4           Q.      Okay. You work with Rowland Dawe?

5           A.      Yes, I do.

6           Q.      But he was out of the country at the time

7   this came in to Ropners from Navigators; correct?

8           A.      That's correct.

9           Q.      And you were the broker responsible for

10  the placing?

11          A.      Correct.

12          Q.      Okay. I have -- I am covering all of -- or we

13  are covering all of the Ropner claims and placing

14  today. So if I present you with exhibits that pertain

15  to claims and you don't know anything about it, say --

16  tell me that and we've move on, okay?

17          A.      Right, okay.

18          Q.      A couple of background questions. On the

19  insurance policy that issued for the pollution cover

20  from Gargrave -----

21          A.      Yes.

22          Q.      ----- was a warranty on the policy specifying

23  that known or reported losses had to be disclosed?

24          A.      No, there wasn't.

25          Q.      In the normal course of your business, is

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088              Fax: (011 44)  20 7265 1703

Website: www.a-acr.com                  Email: info@a-acr.com



ANGLO-AMERICAN
COURT REPORTERS

Case 1:00-cv-00011   Document 122-2   Filed 04/06/2007   Page 14 of 38

1    A.    Absolutely.

2    Q.    Okay. So the COFR was applied for and the

3 COFR required an underlying OPA cover; correct?

4    A.    Correct.

5    Q.    Did the insured in this case,

6 Marwan/Five Seas, did they seek the OPA cover?

7    A.    Navigators came to us for the declaration and

8 for the OPA coverage.

9    Q.    Okay. Sorry for taking so long, I just wanted

10 to make sure I understood that. When you brokered the

11 placement of the OPA cover to Gargrave, you personally

12 went to the box to do that?

13    A.    Yes, I did.

14    Q.    And you met with Stephen Gargrave?

15    A.    Not at the time the order was given to us.

16 I called the Box when the order was given and the Slip

17 was taken in subsequently.

18    Q.    Did you take the Slip in subsequently?

19    A.    Yes, I did.

20    Q.    And you met with Stephen Gargrave?

21    A.    I can't recall whether it was

22 Stephen Gargrave or Philip Sandle, but I think it was

23 Stephen Gargrave.

24    Q.    And Philip was his deputy?

25    A.    Yes, correct.

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**
Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703
Website: www.aacrt.com          Email: info@aacr.com

Case 1:06-cv-00601          Document 122-2          Filed 04/06/2007          Page 15 of 38


ANGLO-AMERICAN
COURT REPORTERS

1  been before the 19th August or on 19th August?

2      A.    It would have been in the morning of

3  19th August, the day that the fax was sent to me.

4      Q.    And it is correct, then, that 19th August

5  2004 was the first date of your involvement with

6  the Ajman 2?

7      A.    Yes.

8      Q.    And that involvement was commenced with the

9  phone call from Andrew Barker?

10     A.    Yes, correct.

11     Q.    And in that phone call, he didn't disclose to

12  you anything about the vessel?

13     A.    No.

14     Q.    Okay. And you didn't ask?

15     A.    No.

16     Q.    Are you aware that in this case, a question

17  has been raised as to whether or not the Notice of

18  Federal Interest issued by the Coast Guard preceded the

19  issuance of the COFR?

20     A.    No, I wasn't.

21     Q.    As you sit here today, are you aware of

22  that issue?

23     A.    No, I'm not.

24     Q.    Gargraves has had no dialogue with you about

25  that issue?

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**
Tel: (011 44) 20 7264 2088                  Fax: (011 44) 20 7265 1703


ANGLO–AMERICAN
COURT REPORTERS

1      A.    Absolutely not.

2      Q.    Okay. You don't even know what I'm

3  talking about?

4      A.    No, I don't, to be honest.

5      Q.    Okay, great.

6            MR UNDERHILL: I don't either!

7            MR POWELL: Seriously?

8            MR BOOTH: Selective amnesia!

9            MR POWELL: I'll have to educate you!

10 BY MR POWELL:

11     Q.    Would you look, please, at Exhibit 55? Do you

12 recall receiving this fax from Andrew Barker?

13     A.    I don't specifically.

14     Q.    Can you -- I want to direct your attention to

15 the last paragraph, just above the "Best Regards".

16     A.    Mmm-hmm.

17     Q.    And you can see that Andrew Barker has said:

18           "Bearing in mind the tonnage....I believe it

19 necessary to apply a Limit of Liability of $5m."

20           Do you see that?

21     A.    Yes, I do.

22     Q.    "...and for a period of not exceeding

23 60 days..."

24           Right?

25     A.    Yes.

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703

Website: www.aacr.com          Email: info@aacr.com



```
 1        Q.    The limit terms and the period terms, were
 2   those specified to you by your principal, Navigators?
 3        A.    Yes.
 4        Q.    You didn't have anything to do with coming up
 5   with that?
 6        A.    No.
 7        Q.    Okay. And did you take this to
 8   Stephen Gargrave?
 9        A.    I don't recall whether it was myself
10   or Rowland.
11        Q.    Okay. And I apologize, I don't remember his
12   response to that, but okay. The second page of this is
13   a Guarantee Request Form. Have you seen that before?
14        A.    Yes.
15        Q.    Is that a normal document that is produced in
16   the application for COFRs?
17        A.    That is what Navigators will send us when
18   they request a COFR.
19        Q.    And it specifies the limit on that of
20   $5 million?
21        A.    Yes.
22        Q.    Is that limit being specified for the
23   pollution insurance or the COFR?
24        A.    The pollution insurance.
25        Q.    Okay, okay. So explain to me -- well, I will
```

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44)  20 7265 1703
Website: www.aacrt.com                    Email: info@aacr.com

Case: 06-cv-00011          Document 122-2          Filed 04/06/2007          Page 19 of 38


ANGLO-AMERICAN
COURT REPORTERS

1  sit here and tell you what I think it means, but that
2  doesn't do us much good. Tell me why does this come to
3  you and what happens to it?
4      A.   As we are the brokers for the pollution
5  contract and Navigators, as one of our clients, would
6  approach us when they are quoting or writing a P&I risk
7  that requires OPA coverage. We would then declare that
8  risk to our pollution contract on their behalf.
9      Q.   And it is applicable, it is really germane to
10 your application for the pollution coverage?
11      A.   That's correct.
12      Q.   Is this Guarantee Request Form then provided
13 to Stephen Gargrave?
14      A.   This is what would be taken into
15 Stephen Gargrave, yes.
16      Q.   So presumably a copy of this would be in his
17 file or do you just show it to him?
18      A.   No, they would normally take a copy of it.
19      Q.   Okay. And is that Guarantee Request Form
20 intended to provide the information that would be
21 relevant to Stephen Gargrave for underwriting this?
22      A.   Yes.
23      Q.   And if there were questions that
24 Stephen Gargrave had, wanting to know information
25 that's not provided in the Guarantee Request Form, he

1  would have asked you?

2       A.   Yes, he would have done.

3       Q.   And he didn't?

4       A.   He didn't.

5       Q.   Okay. Would you look at Exhibit 56, please?

6            MR WALSH: Do you see it there?

7            THE WITNESS: No.

8            MR POWELL: It is a Navigators, one-pager,

9  Exhibit 56.

10            MR WALSH: It should be right here.

11            MR POWELL: There you go, that's it

12  (same handed).

13  BY MR POWELL:

14       Q.   Take a second to look at this, but my

15  question is going to be: have you ever seen this?

16       A.   Subsequently, yes.

17       Q.   When?

18       A.   At some point, after the request for

19  cancellation, it was shown to me.

20       Q.   Okay. And this is a document Michael Newbery

21  writes to Geoffrey Woodcock who is the broker for

22  Marwan/Five Seas?

23       A.   I assume so.

24       Q.   He is, I am telling you.

25       A.   Yes, fine.

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**
Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703
Website: www.aacr.com   Document 122-2   Filed 04/06/2007   Email: info@aacr.com   Page 20 of 38


ANGLO-AMERICAN
COURT REPORTERS

1    passed them over to the client.

2        Q.    But since that was not requested of you by

3    the Gargrave Syndicate or anybody acting on its behalf,

4    you did not, in fact, put that in the pollution cover

5    as a warranty of insurance?

6        A.    No, I did not.

7        Q.    I asked Mr Dawe these same questions and

8    I need to make sure just to cover my bases. Did you

9    at any time have any oral contacts (that is

10   face-to-face communications, telephone communications)

11   with anybody who you understood to be the vessel's

12   owner, operator or manager?

13       A.    No, I did not.

14       Q.    And at least to your knowledge, did anybody

15   at Ropners, with respect to placement of any insurance

16   covers (pollution, P&I, hull and machinery, COFR, any

17   type of cover) -- to your knowledge, did anybody at

18   Ropners ever have any direct oral communications with

19   somebody who you understood or now understand to be the

20   vessel's owner, operator or manager?

21       A.    Not that I'm aware of.

22       Q.    Have you seen anything in Ropners' files,

23   even as you sit here today, up to and including today,

24   whereby you have seen any direct written communications

25   by and between the vessel's owner, operator or manager

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44)  20 7265 1703

Website: www.aacr.com Document 122-2     Filed 04/06/2007 info@aacr.com Page 21 of 38



ANGLO-AMERICAN
COURT REPORTERS

```
 1                C E R T I F I C A T E

 2

 3    I, LEAH WILLERSDORF, Accredited Verbatim Court

 4    Reporter, Associate of the British Institute of

 5    Verbatim Reporters, do hereby certify that the

 6    foregoing transcript taken of the deposition of

 7    MR PAUL HARCOMBE on Tuesday, March 6, 2007 is true and

 8    accurate to the best of my knowledge, skill and

 9    ability; that the testimony of said witness was taken

10    and reduced to stenotype writing before me; that the

11    said deposition is a true and accurate record of the

12    testimony given by said witness; that I am neither

13    counsel for, related to, nor employed by any of the

14    parties to the action in which this deposition was

15    taken; and further, that I am not a relative or

16    employee of any attorney or counsel employed by the

17    parties thereto; nor financially or otherwise

18    interested in the outcome of the action.

19

20

21

22                     LEAH M WILLERSDORF

23                     Accredited Court Reporter

24                     Associate of the British Institute

25                     of Verbatim Reporters
```

ANGLO-AMERICAN COURT REPORTERS LTD
LONDON, ENGLAND

Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703
Website: www.aacrl.com          Email: info@aacrl.com

ANGLO-AMERICAN
COURT REPORTERS

```
 1            UNITED STATES DISTRICT COURT

 2                  DISTRICT OF GUAM
```

COPY

```
 4    - - - - - - - - - - - - - - - - - -)
                                         )
 5    UNITED STATES OF AMERICA,          )    Civil Case No.
                                         )    CIV06-00011
 6              Plaintiff,               )
                                         )
 7    INCHCAPE SHIPPING SERVICES GUAM,   )
 8    LLC,                               )
                                         )
 9              Plaintiff-in-Intervention)
                                         )
10    vs.                                )
                                         )
11    MARWAN SHIPPING & TRADING CO.,     )
      FIVE SEAS SHIPPING CO., LLC, and   )
12    S.J. GARGRAVE SYNDICATE 2724,      )
      in personam, NAVIGATORS            )
13    PROTECTION & INDEMNITY, and        )
      AL-BUHAIRA NATIONAL INSURANCE      )
14    COMPANY,                           )
                                         )
15              Defendants               )
                                         )
16    AND CROSS-CLAIMS, COUNTERCLAIMS,   )
      THIRD-PARTY COMPLAINT, and         )
17    CLAIM-IN-INTERVENTION.             )
                                         )
18    - - - - - - - - - - - - - - - - - -)
```

```
21              Oral videotaped deposition of
          MR ROWLAND DAWE held at the offices
22              of ReedSmith Richards Butler,
          Beaufort House, 15 St. Botolph Street,
23        London EC3A 7EE, England, United Kingdom
          at 9.21 a.m. on Tuesday, March 6, 2007
24          before Leah Willersdorf, Associate of
        the British Institute of Verbatim Reporters
```

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703

Website: www.aacrl.com          info@aacrl.com



1   essentially talking to the Judge is the way we are

2   presenting this, so I am doing -- we are doing our best

3   to get you the questions that allow you to inform the

4   Judge of what happened.

5          Who do you work for?

6   A.     Ropner insurance brokers.

7   Q.     And what is your responsibility there?  What

8   is your title?

9   A.     I am Head of Marine.

10  Q.     On the claims or broking?

11  A.     On the broking.

12  Q.     Okay. In August of Two Thousand -- or

13  actually in 2004, were you Head of Marine claims --

14  marine broking?

15  A.     Yes, I was.

16  Q.     Okay. At Ropners?

17  A.     Yes, I was.

18  Q.     Okay. And you have remained, since the

19  beginning of 2004 to the present, as the Head of Marine

20  broking at Ropners?

21  A.     Yes, I have.

22  Q.     Can you tell us -- I am going to ask you to

23  sort of do this in an overview and sort of go back and

24  parse it a bit because I know we have three people from

25  Ropners and I don't want to waste your time on issues

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44)  20 7265 1703

Website: www.aacr.com     Document 122-2     Filed 04/06/2007     info@aacr.com
Page 25 of 38


ANGLO-AMERICAN
COURT REPORTERS

1  that you have no experience or knowledge of.

2      A.    Thank you.

3      Q.    Okay. Can you tell us what your involvement

4  was in the -- in what took place leading up to

5  this lawsuit?

6      A.    I arranged the master contract on which

7  the declaration that is the base of the action, of the

8  issue that we are faced with today.  I arranged the

9  original contract on which that was declared.

10     Q.    What are you referring to when you say

11  "master contract"; the insurance contract?

12     A.    The cover.  The insurance cover, the

13  master cover, the -----

14     Q.    Okay. I think I know what you are saying. The

15  pollution cover with Gargrave?

16     A.    Correct.

17     Q.    Okay. Did you arrange the COFR?

18     A.    No.

19     Q.    Did you have anything to do with the COFR

20  application or issuing?

21     A.    No, nothing whatsoever.

22     Q.    Were you in the line of correspondents with

23  Navigators, EPG, Gargrave on the COFR?

24     A.    Only post the situation that arose.

25     Q.    Okay. But still talking pre, who at Ropners

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**
Tel: (011 44) 20 7264 2088          Fax: (011 44)  20 7265 1703
Website: www.a-acr.com          Email: info@a-acr.com

Case 1:06-cv-00001   Document 122-2    Filed 04/09/2007   Page 26 of 38


ANGLO–AMERICAN
COURT REPORTERS

1   was involved in the COFR, in the purchasing or

2   application for the COFR?

3        A.   The purchase and the application of the COFR

4   is not done at -- in London.

5        Q.   Did anybody at Ropners have anything to do

6   with the purchase, application, obtaining the

7   COFR cover?

8        A.   My colleague, Paul Harcombe, was present in

9   the office and he handled the initial communications

10  with Navigators and Environmental Pollution Group in

11  Danbury, Massachusetts. They arranged the actual

12  COFR itself.

13       Q.   Now, if possible, I will avoid Paul's

14  deposition by asking you a couple more questions.

15       A.   By all means.

16       Q.   So that is my objective here. Do you know

17  what Paul's role was, as limited as it might have been,

18  in that COFR application process, or in the

19  communications?

20       A.   His role would have been to advise -- sorry,

21  his role was to advise EPG that underwriters in London

22  had accepted the insurance on the Marwan and,

23  therefore, having accepted it, the COFR would have been

24  required, was required, and EPG were instructed,

25  therefore, to put that arrangement into effect.

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088                    Fax: (011 44)  20 7265 1703

Website: www.aacrg.com                        Email: info@aacrg.com

Case: 06-cv-08012   Document 122-2   Filed 04/08/2007   Page 27 of 38

ANGLO–AMERICAN
COURT REPORTERS

1      Q.    The insurance that he was advising EPG that

2  had been arranged, was that the Navigators P&I or

3  the Gargrave OPA?

4      A.    The Gargrave OPA.

5      Q.    Okay.

6      A.    We had nothing to do with the Navigators P&I.

7      Q.    I understood that but I was wondering

8  whether, what Paul was advising EPG, you said he had

9  advised them that the insurance that was required

10  underlying the COFR was in place. And were you

11  referring to the OPA cover?

12      A.    The pollution insurance.

13      Q.    Okay, okay. And then, if I heard you

14  correctly, he then instructed EPG to go ahead and

15  place the COFR?

16      A.    He would have to answer that.

17      Q.    Okay.

18      A.    What he actually said would be --

19  I wasn't -----

20      Q.    Fine.

21      A.    I wasn't in the country.

22      Q.    Okay, okay. Your role, then, in this was in

23  the placement of the OPA cover with Gargrave?

24      A.    Correct.

25      Q.    Did you have any correspondence with

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088        Fax: (011 44) 20 7265 1703

Website: www.aacrl.com        Email: info@aacrl.com

Case: 06-cv-00001 Document 122-2 Filed 04/06/2007 Page 28 of 38


ANGLO-AMERICAN
COURT REPORTERS

```
 1   Navigators in the process or as you went about putting

 2   together that insurance with OPA, or with Gargrave? Did

 3   that make sense?

 4        A.    In respect of this vessel, this declaration?

 5        Q.    Yes.

 6        A.    No, none.

 7        Q.    Did Navigators come to you and ask you to put

 8   together the cover for the OPA cover with Gargrave?

 9        A.    For this vessel or -----

10        Q.    For this Ajman vessel.

11        A.    I cannot recall to whom the letter or the fax

12   that came in was addressed. I'm sure it's on file.

13        Q.    And I will do that. I just -----

14        A.    But I didn't handle this.

15        Q.    Okay. Who was Ropners' principal in this

16   insurance placement?

17        A.    Navigators.

18        Q.    Okay. And who was Ropners' principal on the

19   COFR application and that process?

20        A.    Navigators.

21        Q.    In both instances it was Navigators?

22        A.    Correct.

23        Q.    Okay. I understand the insurance market and

24   I don't want you to go and re-create what we have spent

25   years learning. I do want you to tell me how the
```

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703

Website: www.aacr.com          Email: info@aacr.com



ANGLO-AMERICAN
COURT REPORTERS

1     Q.    Did you understand that they were not seeking
2  a surety bond?
3     A.    Correct, I did.
4     Q.    Okay. The next exhibit number is -----
5           MR WALSH: Fifty-six.
6           MR POWELL: Sorry?
7           MR WALSH: Fifty-six.
8           MR POWELL: Thank you.
9  BY MR POWELL:
10    Q.    Have you seen Exhibit 56 before?
11    A.    Yes, I have.
12    Q.    Did you see Exhibit -----
13    A.    Excuse me.
14    Q.    I am sorry.
15    A.    I picked up two.
16    Q.    Did you see Exhibit 56 in or about the time
17 when it was issued on August 24, 2004?
18    A.    I can't recall. Again, I was not -----
19    Q.    At that time.
20    A.    No.
21    Q.    When were you back in the country?
22    A.    I was back on the Monday following the
23 incident that occurred over the weekend. So that would
24 have been Monday, the whatever, 28th, something like
25 that of that region. I wonder if we can tell from this.

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**
Tel: (011 44) 20 7264 2088          Fax: (011 44)  20 7265 1703
Website: www.aacr.com

ANGLO-AMERICAN
COURT REPORTERS

Case 1:06-cv-00001 Document 122-2     Filed 04/06/2007     Page 30 of 38

1  Counting the cover page.

2          MR WALSH: No, it is -- that is it.

3  BY MR POWELL:

4      Q.    There you go. Under the period where the

5  period is specified, the policy was effected for

6  60 days; right?

7      A.    Correct.

8      Q.    It says underwriters gave 30 days' notice of

9  cancellation from 27 August 2004?

10     A.    Correct.

11     Q.    Did you write that? I mean, not type this but

12  is that your note?

13     A.    I can't recall who prepared this document,

14  whether it was in fact Paul Harcombe or myself.

15     Q.    But you can -- what I really want to know is

16  can you tell us what the story is? Is this -----

17     A.    No, I can't because I was not present at the

18  time when this contract was arranged.

19     Q.    But as I -- I am trying to understand because

20  this obviously wasn't written on 19th August 2004, was

21  it; this was prepared afterwards?

22     A.    Oh yes this document would have been prepared

23  afterwards.

24     Q.    Okay. And my understanding, then, when it

25  makes the note that underwriters gave 30 days' notice

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088            Fax: (011 44)  20 7265 1703


Website: www.aacr.com            Email: info@aacr.com


ANGLO-AMERICAN
COURT REPORTERS

Case 1:06-cv-00001 Document 122-2    Filed 04/06/2007 Page 31 of 38

CROSS-EXAMINATION:

BY MR UNDERHILL:

Q.   Good morning, sir.

A.   Good morning.

Q.   My name is Mike Underhill and I represent the
United States, the folks that filed this little lawsuit
we've got going here. The ball, as it has gone
downhill, we have added more parties but I confess that
we are the ones that started it.

A.   Right.

MR UNDERHILL: As a brief aside and as a
business matter, all counsel have kindly agreed that we
will stipulate that Ropner's files are admissible, at
least as to hearsay under the business records
exception.  And the parties, in making that
stipulation, do not deem that the truth of any of the
matters stated therein, but it would not be objected to
on the basis of hearsay evidence, at least as far as
the records, through the business records exception,
whatever that gives us.

BY MR UNDERHILL:

Q.   So now turning to you, sir, I don't have too
much. As an overall question, could you tell the Judge,
please, and all counsel today, whether, at least to
your knowledge, you have ever, up until you sit here

1  today, through today, whether you have had a

2  conversation (a face-to-face conversation, a telephone

3  conversation) anything like that with anybody whom you

4  understood to be the vessel's owner, manager or

5  operator?

6      A.   At no time have I had any such conversation

7  with any of those parties.

8      Q.   And to your knowledge, again as you sit here

9  today, have -- are you aware of anybody else in

10  Ropners, at Ropners who similarly has had a

11  conversation, whether telephone or face-to-face

12  meeting, with the vessel's owners, managers or

13  operators?

14      A.    No, I'm not aware of any such person or any

15  such conversation from any of my colleagues at Ropner.

16      Q.   And with respect to any of the Ropners

17  business files that you have reviewed up to and

18  including today, have you seen any communications

19  whereby somebody at Ropners, according to at least your

20  documents, state that "I, an individual at Ropners, at

21  some point had an oral communication with the vessel's

22  owners, managers or operators"?

23      A.   No, I have seen no such documents.

24      Q.   With respect to any of your review of

25  Ropners' business files, have you seen any written

Case 1:06-cv-00001 Document 122-2   Filed 04/06/2007   Page 33 of 38



```
 1              C E R T I F I C A T E

 2

 3   I, LEAH WILLERSDORF, Accredited Verbatim Court

 4   Reporter, Associate of the British Institute of

 5   Verbatim Reporters, do hereby certify that the

 6   foregoing transcript taken of the deposition of

 7   MR ROWLAND DAWE on Tuesday, March 6, 2007 is true and

 8   accurate to the best of my knowledge, skill and

 9   ability; that the testimony of said witness was taken

10   and reduced to stenotype writing before me; that the

11   said deposition is a true and accurate record of the

12   testimony given by said witness; that I am neither

13   counsel for, related to, nor employed by any of the

14   parties to the action in which this deposition was

15   taken; and further, that I am not a relative or

16   employee of any attorney or counsel employed by the

17   parties thereto; nor financially or otherwise

18   interested in the outcome of the action.

19

20

21

22                    LEAH M WILLERSDORF

23                    Accredited Court Reporter

24                    Associate of the British Institute

25                    of Verbatim Reporters
```

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088          Fax: (011 44) 20 7265 1703

Website: www.aacr.com          Email: info@aacr.com

**ANGLO-AMERICAN COURT REPORTERS**

# ReedSmith Richards Butler

Reed Smith Richards Butler LLP
Beaufort House
15 St Botolph Street
London EC3A 7EE
Phone: +44 (0) 20 7247 6555
Fax: +44 (0) 20 7247 5091
DX1066 City / DX18 London

**William Howard**
Direct Phone: +44 (0) 20 7772 5772
Direct Fax: +44 (0) 207 539 5376
Email: WHoward@reedsmith.com

23rd March 2007

Our Ref: WAH/LTE/765427.00001
Your Ref:

John E D Powell Esq.
Cairncross & Hempelmann, P.S.
524 Second Avenue
Suite 500
Seattle
Washington 98104-2323
USA

Dear Sirs,

**RE: MV "AJMAN 2"**
**United States of America -V- Marwan Shipping Trading Co.; Five Seas Shipping Co. LLC and**
**S J Gargrave Syndicate 2724,** *in Personam*

We refer to the above captioned action before the District Court of Guam proceeding under Civil Case No.06-00011 ("the Guam proceedings").

We have been advised by you that issues have arisen between the parties to the Guam proceedings concerning terms of insurance contained in a Marine Oil Pollution Insurance Contract with policy No. 04HV123X0005 ("the Policy"), issued on or about 19th August 2004 for the benefit of Marwan Shipping and Trading Company LLC ("Marwan") and others as the assureds and underwritten by Gargrave Syndicate 2724 ("Gargrave"). In this regard we have been provided with, and have considered, the following documents:

1   the Policy terms and conditions;

2   an Answer, Counterclaim and Cross-claim of Gargrave to the verified complaint of the United States of America, filed 12th July 2006;

3   a Cross-claim of Marwan and others against Gargrave, filed 24th January 2007;

4   a Memorandum of Points and Authorities in support of Gargrave's motion to dismiss the cross- claim of Marwan and others, filed 20th February 2007;

EC3A 7EE   Reed Smith Richards Butler LLP is regulated by the Law Society. A list of the members of Reed Smith Richards Butler LLP, and their professional qualifications, is available at the registered office. The term partner is used to refer to a member of Reed Smith Richards Butler LLP.

Reed Smith Richards Butler LLP is associated with Reed Smith LLP of Delaware, USA and the offices referred to below are offices of either Reed Smith Richards Butler LLP or Reed Smith LLP.

NEW YORK ♦ LONDON ♦ CHICAGO ♦PARIS ♦ LOS ANGELES ♦ SAN FRANCISCO ♦ WASHINGTON, D.C. ♦ PHILADELPHIA ♦ PITTSBURGH ♦ OAKLAND

MUNICH ♦ ABU DHABI ♦ PRINCETON ♦ NORTHERN VIRGINIA ♦ WILMINGTON ♦ BIRMINGHAM ♦ DUBAI ♦ CENTURY CITY ♦ RICHMOND ♦ GREECE

LONDON-4300194.2-WAHoward 3/23/07 11:19 AM

5      a Memorandum of Points and Authorities in opposition to Gargrave's motion to dismiss or alternatively to stay the cross-claim of Marwan and others, filed 6th March 2007; and

6      a Reply of Gargrave; filed 13th March 2007.

In the light of this exchange of submissions in the Guam proceedings, you have asked us to provide our opinion on the following question: whether, as a matter of English law, the cross-claims of Marwan and others remain subject to the exclusive jurisdiction of the court and/or an arbitration tribunal in England and Wales, as the case may be, given that the Policy contains (i) an exclusive law and jurisdiction clause ("ELJ clause"), (ii) a Service of Suit clause (USA) ("SOS clause") and (iii) that, on Marwan's case, Gargrave have sought substantive relief before the Guam court.

We note that submissions exchanged between the parties in the Guam proceedings contain a considerable amount of discussion and analysis of how the ELJ clause in the policy should be properly construed. It is our view that the exchanges between the parties as to a proper construction of the ELJ clause are superfluous; any such enquiry must necessarily proceed on an assumption that the ELJ clause continues to have effect as being determinative of the appropriate forum for the resolution of disputes under and in relation to the Policy, as between Gargrave and Marwan. In our view it does not, for the following reasons.

Both the ELJ clause and the SOS clause are incorporated as terms of the policy. They have to be construed together. The contrary is not argued. As to the SOS clause, it contains two distinct and severable provisions:

1      that the underwriters (Gargrave) will submit to the jurisdiction of a US court in the event of a failure to pay any amount claimed to be due under the policy; and

2      that notwithstanding anything else contained in the policy relating to jurisdiction (i.e. the ELJ clause) the underwriters have, at their election, a right to commence an action in any court of competent jurisdiction in the US.

It is in the context of these subsisting policy conditions that Gargrave has sought from the Guam court declaratory relief in the following terms:

> *"Gargrave is also entitled to, and hereby seeks from this court, a declaration that it is not obligated to, and indeed is not allowed to insure and/or indemnify for any obligations of the "Ajman 2" and/or her owners, operators, charterers, crew or agents, because the vessel flies the flag of North Korea, and for Gargrave to do so would violate certain regulations issued by the US Treasury, as well as other federal statutes and regulations."*

This application for declaratory relief from its insurance obligations self-evidently pertains to the insurers' substantive obligations under the policy. Gargrave has invoked before the Guam court the operation of US federal law and/or regulations: and if its application succeeds on this basis it will dispose of a liability which might otherwise attach to the insurer were issues of liability to be determined under English law, as the proper law of the contract. Gargrave is entitled to advance this substantive application before the Guam court by virtue of the operation of the second limb of the SOS clause, to which we refer above. By making its application, Gargrave must implicitly have

made an election to exercise its power under the second limb of the SOS clause. Its cross-claim necessarily has the effect in joining issue between Marwan and Gargrave for the first time with regard to the extent of Gargrave's insurance obligations.

On the basis that Gargrave have elected to exercise their power under the second limb of the SOS clause, and as a matter of English law, it is our view that the Guam court will have jurisdiction over all aspects of the dispute because the parties will not have contemplated a multiplicity of proceedings in resolving any disputes between them under or in relation to the Policy. The English court will not allow parallel proceedings in all but the most exceptional circumstances: see the speech of Lord Justice Waller in *Sabah -v- Pakistan* [2003] 2 LLR. 57 at pages 579-580, who said, in considering the operation of an English Service of Suit clause:

> *"It seems to me that it cannot have been the intention of the parties that if proceedings were commenced in England, parallel proceedings could be pursued elsewhere unless there were some exceptional reasons for doing so."*

Accordingly, because proceedings have been commenced in the United States under the SOS clause, then as a matter of construction of that clause and the ELJ clause together, the ELJ clause does not in our opinion govern, or allow for, parallel proceedings in England. Gargrave has, in effect, waived its right to insist on a determination of the dispute in England.

Yours faithfully,

*[signature]*

**Reed Smith Richards Butler LLP**